# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## JOINT STIPULATION AND AGREED ORDER
## BETWEEN THE FEDERAL TRADE COMMISSION AND THE
## DEBTORS TO ENTER INTO STIPULATED ORDER IN THE DISTRICT COURT

This stipulation (this "Stipulation and Agreed Order") is entered into by and among the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the U.S. Federal Trade Commission (the "FTC" and, together with the Debtors, the "Parties").

**WHEREAS,** on July 13, 2022, each of the Initial Debtors filed a voluntary petition for relief with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code");

**WHEREAS**, the Parties have entered into, and the Bankruptcy Court has approved, four stipulations to extend the deadline for the FTC to file a nondischargeability complaint, through and including August 14, 2023 [Docket Nos. 1296, 2485, 2705, 2976];

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956) (collectively, the "Initial Debtors"); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**WHEREAS**, on January 10, 2023, the FTC timely filed an unliquidated, contingent proof of claim for monetary relief arising from Debtors' alleged violations of the Federal Trade Commission Act and the Gramm-Leach-Bliley Act, Claim No. 21697;

**WHEREAS**, on July 13, 2023, the FTC commenced an action (the "FTC Action")[2] against Debtors Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US Holding LLC (collectively the "Debtor Defendants"), and non-Debtors Celsius US LLC and Celsius Management Corp. (collectively the "Non-Debtor Defendants," and together with the Debtor Defendants, the "Corporate Defendants," as that term is defined in **Exhibit 1**, attached hereto), and Alex Mashinsky, Shlomi Daniel Leon, and Hanoch "Nuke" Goldstein (together with the Corporate Defendants, the "FTC Defendants") for a permanent injunction, monetary relief, and other relief pursuant to the Federal Trade Commission Act and the Gramm-Leach-Bliley Act in the United States District Court for the Southern District of New York (the "District Court");

**WHEREAS**, on July 13, 2023, the Parties filed the *Joint Motion for Stay as to Corporate Defendants* [FTC Action Docket No. 3] (the "Stay Motion"), representing that the FTC and the Corporate Defendants have reached a settlement resolving the FTC Action vis-à-vis the Corporate Defendants and requesting that the District Court stay the FTC Action as to the Corporate Defendants until the earlier of (i) 45 days or (ii) the approval by the Bankruptcy Court for the Corporate Defendants to enter into the *Stipulated Order for Permanent Injunction, Monetary Judgment and Other Relief Against Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, Celsius Us Holding*

---

[2]  *Federal Trade Commission v. Celsius Network Inc. et al*, Case No. 1:23-cv-06009-DLC (S.D.N.Y July 13, 2023) (the "FTC Action Docket").

*LLC, Celsius Us LLC, and Celsius Management Corp*, attached to the Stay Motion as <u>Exhibit A</u> and attached hereto as **<u>Exhibit 1</u>** (the "<u>Stipulated Order</u>");[3]

**WHEREAS**, on July 20, 2023, the District Court granted the Stay Motion and directed the FTC and the Corporate Defendants to file, on or before August 28, 2023, a motion in the District Court seeking entry of the Stipulated Order or otherwise notify the District Court of the status of the effort to seek the Bankruptcy Court's approval for the Debtor Defendants to enter into the Stipulated Order [FTC Action Docket No. 18];

**WHEREAS**, pursuant to the Stipulated Order, the Corporate Defendants are permanently restrained and enjoined from advertising, marketing, promoting, offering, or distributing, or assisting in the advertising, marketing, promoting, offering, or distributing of any product or service that can be used to deposit, exchange, invest, or withdraw assets, whether directly or through an intermediary;

**WHEREAS**, pursuant to the Stipulated Order, the Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of the Stipulated Order, whether acting directly or indirectly and in connection with promoting or offering for sale any product or service, are permanently restrained and enjoined from (i) misrepresenting the benefits or other material facts about the FTC Defendants' products or services, (ii) obtaining customer financial information by false, fictitious, or fraudulent representations, (iii) violating the Gramm-Leach-Bliley Act, and (iv) disclosing

---

[3]  The following description of the Stipulated Order in the recitals is provided for illustrative purpose only and is qualified in its entirety by reference to the Stipulated Order. In the event of any inconsistency between these recitals and the Stipulated Order, the Stipulated Order controls in all respects. Furthermore, these recitals shall not be used to construe or interpret the terms of the Stipulated Order or intent of the Parties.

Nonpublic Personal Information about a consumer without the consumer's Express Informed Consent;[4]

WHEREAS, pursuant to the Stipulated Order, judgment in the amount of $4,720,000,000 (the "Monetary Judgment") is (i) entered in favor of the FTC against Corporate Defendants, jointly and severally among the Corporate Defendants and with any other FTC Defendants to the extent subsequently ordered, and (ii) suspended as to the Debtors unless these chapter 11 cases are closed, dismissed, or otherwise concluded without the Debtors' estates being fully administered, including any distributions to creditors, in accordance with the Bankruptcy Code, as more fully set forth in the Stipulated Order;

WHEREAS, pursuant to the Stipulated Order, the Debtor Defendants agree that the Monetary Judgment is not dischargeable in these chapter 11 cases and will not object to the allowance of a general unsecured claim by the FTC in these chapter 11 cases in the amount of the Monetary Judgment ($4,720,000,000), which claim shall not be allowed unless and until the conditions for lifting the suspension of the Monetary Judgment, as set forth herein and in the Stipulated Order, have been met;

WHEREAS, pursuant to the Stipulated Order, the Corporate Defendants, Corporate Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of the Stipulated Order, shall comply with certain obligations with respect to (i) customer information, (ii) cooperation with the FTC, (iii) acknowledgement of the Stipulated Order, (iv) compliance reporting, (v) recordkeeping, and (vi) compliance monitoring;

---

[4] "Nonpublic Personal Information" and "Express Informed Consent" shall have the meaning ascribed to them in the Stipulated Order.

**WHEREAS**, upon entry of the Stipulated Order, and only if the suspension of the Monetary Judgment is lifted, the Corporate Defendants will relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to the Stipulated Order and may not seek the return of any assets;

**WHEREAS**, the Stipulated Order does not (i) restrain or enjoin the deposit, exchange, distribution, investment, or withdrawal of assets owned or held by the Debtor Defendants and being administered in accordance with the Bankruptcy Code and orders of the Bankruptcy Court, (ii) create a contingent liability against the Debtor Defendants, or (iii) preclude the full distribution of assets held by the Debtor Defendants in these chapter 11 cases to allowed claims;

**WHEREAS**, the Debtors, in the sound exercise of their business judgment, have determined that the consensual resolution of the FTC Action with respect to the Debtor Defendants via the Stipulated Order reduces ongoing litigation and regulatory uncertainties, maximizes return for all stakeholders, and is in the best interest of the estates; and

**WHEREAS**, in light of the agreement set forth in the Stipulated Order, the Parties now jointly submit this Stipulation and Agreed Order and respectfully request the Court's approval.

**IT IS THEREFORE STIPULATED AND AGREED, AND UPON BANKRUPTCY COURT APPROVAL HEREOF, IT IS HEREBY ORDERED THAT**:

1.      The Debtors are authorized and directed to enter into the Stipulated Order, attached hereto as **<u>Exhibit 1</u>**, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the settlement embodied in the Stipulated Order in accordance with the terms, conditions, and agreements set forth or provided for therein. The Stipulated Order addresses and extinguishes the FTC claim described in Claim No. 21697.

2.      The FTC's Monetary Judgment in the amount of $4,720,000,000 shall constitute a general unsecured claim against the Debtors that is nondischargeable pursuant to sections 523 and 1141 of the Bankruptcy Code; *provided* that the Monetary Judgment shall be suspended against the Debtors and will not be an allowed claim and shall not receive any distributions in these chapter 11 cases, in each case, so long as the Debtors comply with the applicable requirements set forth in the Stipulated Order for such suspended Monetary Judgment.

3.      Notwithstanding anything to the contrary in the Stipulated Order, the Monetary Judgment shall be suspended against the Debtors and shall not be an allowed claim or paid by the Debtors so long as the Debtors comply with the requirements set forth in the Stipulated Order. The FTC shall be entitled to enforce collection of the Monetary Judgment against the Corporate Defendants if the suspension is lifted pursuant to the conditions set forth in the Stipulated Order.

4.      Notwithstanding anything to the contrary in the Stipulated Order, nothing in this Order constitutes a finding that any claim asserted against the Debtors by the FTC, other than the general unsecured claim arising from the Monetary Judgment in the amount of $4,720,000,000, is nondischargeable pursuant to sections 523 and 1141 of the Bankruptcy Code.

5.      For the avoidance of doubt and as stated in the Stipulated Order, the Monetary Judgment and other terms of the Stipulated Order apply only to Corporate Defendants.

6.      With respect to the Monetary Judgment, the notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation and Agreed Order are immediately effective and enforceable upon its entry.

8.      This Stipulation and Agreed Order shall bind the Debtor Defendants, their estates, and any successors or assigns, including without limitation any trustee, liquidating trustee, litigation administrator, or other estate representative.

9.      The Bankruptcy Court retains jurisdiction with respect to any disputes arising from or any other actions to interpret, administer, or enforce the terms and provisions of this Stipulation and Agreed Order, and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to the implementation of this Stipulation and Agreed Order; *provided* that any disputes or controversies arising from or related to the implementation of the Stipulated Order should be submitted to the District Court.


**IT IS SO ORDERED.**

Dated:  August 14, 2023
          New York, New York


_____/s/ Martin Glenn_____
MARTIN GLENN
Chief United States Bankruptcy Judge

**IN WITNESS WHEREOF**, the Parties, by their respective authorized counsel, have executed this Stipulation and Agreed Order as of the date written below:

New York, New York
Dated: July 26, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

*/s/ Katherine Aizpuru*

**FEDERAL TRADE COMMISSION**
Katherine Johnson (admitted *pro hac vice*)
Katherine Aizpuru
Stephanie Liebner
600 Pennsylvania Ave., N.W.
Mail Stop CC-9528
Washington, District of Columbia 20580
Telephone:     (202) 326-2185 (Johnson)
Telephone:     (202) 326-2870 (Aizpuru)
Facsimile:      (202) 326-3197
Email:          kjohnson3@ftc.gov
                kaizpuru@ftc.gov

*Counsel for the Federal Trade Commission*

8

## Exhibit 1

**Stipulated Order**

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>     v.<br><br>CELSIUS NETWORK INC., a corporation, CELSIUS NETWORK LLC, a limited liability company, CELSIUS NETWORKS LENDING LLC, a limited liability company, CELSIUS LENDING LLC, a limited liability company, CELSIUS KEYFI LLC, a limited liability company, CELSIUS MINING LLC, a limited liability company, CELSIUS US HOLDING LLC, a limited liability company; CELSIUS US LLC, a limited liability company; CELSIUS MANAGEMENT CORP., a corporation;<br><br>ALEXANDER MASHINSKY, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US Holding LLC;<br><br>SHLOMI DANIEL LEON, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, Celsius US Holding LLC; and<br><br>HANOCH "NUKE" GOLDSTEIN, individually and as an officer of Celsius Network LLC and Celsius Lending LLC,<br><br>   Defendants. | Case No. 1:23-cv-6009<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT AND OTHER RELIEF AGAINST CELSIUS NETWORK INC., CELSIUS NETWORK LLC, CELSIUS NETWORKS LENDING LLC, CELSIUS LENDING LLC, CELSIUS KEYFI LLC, CELSIUS MINING LLC, CELSIUS US HOLDING LLC, CELSIUS US LLC, and CELSIUS MANAGEMENT CORP.** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Monetary Relief, and Other Relief ("Complaint"), for a permanent injunction, monetary relief, and other relief in this matter, pursuant to Sections 13(b), 19, and

16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and 57b, and

the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6821 *et seq.* Corporate Defendants

have waived service of the summons and the Complaint.

Defendants Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending

LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US LLC

(collectively, "Debtor Defendants") have filed petitions for relief under Chapter 11 of the

Bankruptcy Code. *See In re Celsius Network LLC et al.*, No. 22-10964(MG) (Bankr. S.D.N.Y.)

("Bankruptcy Case").[1]

The Commission and Corporate Defendants stipulate to the entry of this Stipulated Order

for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters

in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

### FINDINGS

1.  This Court has jurisdiction over this matter.

2.  The Complaint charges that Defendants participated in deceptive and unfair acts

or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in the marketing and sale of

cryptocurrency lending and custody services. The Complaint further charges that Defendants

obtained customer information of a financial institution relating to another person by making

---

[1] On July 13, 2022, the Debtor Defendants each filed a Chapter 11 voluntary petition. *See In re Celsius KeyFi LLC*, Case No. 22-10967; *In re Celsius Lending LLC*, Case No. 22-10970; *In re Celsius Mining LLC*, Case No. 22-10968; *In re Celsius Network Inc.*, Case No. 22-10965; *In re Celsius Networks Lending LLC*, Case No. 10969; and *In re Celsius US Holding LLC*, Case No. 22-10971. The Bankruptcy Court entered an order on July 19, 2022, jointly administering these cases under the main case for Celsius Network, LLC, Case No. 22-10964. Dkt. 53. Accordingly, "Bankruptcy Case" refers to the jointly administered cases for all Debtor Defendants, as well as each case for each Debtor Defendant.

false, fictitious, or fraudulent statements, in violation of Section 521 of the GLB Act, 15 U.S.C. § 6821.

3.     Only for purposes of this action, Corporate Defendants admit the facts necessary to establish jurisdiction and as otherwise specifically stated in this Order. Corporate Defendants further admit the facts set forth on pages 107-109 of the Debtors' Disclosure Statement filed on June 27, 2023 in the Bankruptcy Case, Dkt. 2902.

4.     Corporate Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Corporate Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6.     Entry of this Order is in the public interest.

7.     The Commission's prosecution of this action, including entry of a money judgment and the enforcement of a judgment (other than a money judgment) obtained in this action are actions to enforce the Commission's police or regulatory powers. As a result, if the Debtor Defendants' bankruptcies are pending as of the date of entry of this Order, these actions are excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4).

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     **"Clear(ly) and conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure

must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable

members of that group.

B.   "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

     1.   "**Corporate Defendants**" means Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius Keyfi LLC, and Celsius Mining LLC, Celsius US Holding LLC, Celsius US LLC, Celsius Management Corp., and their successors and assigns.

     2.   "**Debtor Defendants**" means Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US Holding LLC.

     3.   "**Non-Debtor Defendants**" means Celsius US LLC and Celsius Management Corp.

     4.   "**Individual Defendants**" means Alexander Mashinsky, Shlomi Daniel Leon, and Hanoch "Nuke" Goldstein.

C.   "**Express Informed Consent**" means an affirmative act communicating unambiguous assent made after receiving and in close proximity to a Clear and Conspicuous disclosure of all information material to the provision of consent. Assent obtained through any practice or user interface that has the effect of subverting or impairing consumer autonomy, decision-making, or choice, including using text that is not easily legible or disclosing material terms behind a hyperlink, dropdown icon, tooltip, or other similar interface, does not constitute Express Informed Consent.  Acceptance of a general or broad terms of use or similar document that contains descriptions of agreement by the individual along with other, unrelated information, does not constitute Express Informed Consent.

4

D.      **"Nonpublic Personal Information"** means:

      1.     Any information that Defendants obtain about a consumer in connection with providing a product or service to that consumer; or

      2.     Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any Nonpublic Personal Information that is not publicly available.

## ORDER

### I.      BAN

IT IS ORDERED that Corporate Defendants are permanently restrained and enjoined from advertising, marketing, promoting, offering, or distributing, or assisting in the advertising, marketing, promoting, offering, or distributing of any product or service that can be used to deposit, exchange, invest, or withdraw assets, whether directly or through an intermediary.

### II.      PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Corporate Defendants, Corporate Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any product or service are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      the benefits of Defendants' products or services, including the existence or amount of any rewards that consumers can expect to earn; or

B.      any other material fact about Defendants' products or services, such as the total costs; any material restrictions, limitations, or conditions; or any material aspect of its

performance, efficacy, nature, or central characteristics.

### III. INJUNCTION RELATING TO OBTAINING CUSTOMER FINANCIAL INFORMATION

IT IS FURTHER ORDERED that Corporate Defendants and Corporate Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly are hereby permanently restrained and enjoined from:

A.      Obtaining or attempting to obtain customer information of a financial institution (including bank account routing number, account number, log-in credentials, private keys, or other cryptocurrency wallet information) from a consumer by making false, fictitious, or fraudulent representations to any consumer or financial institution; or

B.      Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, §§ 6821-6827, a copy of which is attached as **ATTACHMENT A.**

### IV. PROHIBITION AGAINST IMPROPER DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

IT IS FURTHER ORDERED that Corporate Defendants, Corporate Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from disclosing to any other person any Nonpublic Personal Information about a consumer unless Corporate Defendants have obtained the consumer's Express Informed Consent to disclose that Nonpublic Personal Information to that person.

### V. ORDERS OF BANKRUPTCY COURT

IT IS FURTHER ORDERED that this Order does not restrain or enjoin the deposit, exchange, distribution, investment, or withdrawal of assets owned or held by the Debtor

Defendants and being administered in accordance with the United States Bankruptcy Code and orders of the court in the Bankruptcy Case. For the avoidance of doubt, Part VI.C-D, below, does not create a contingent liability against the Debtor Defendants and does not preclude the full distribution of assets held by the Debtor Defendants in the Bankruptcy Case.

## VI.    JUDGMENT FOR MONETARY RELIEF AND ITS SUSPENSION

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of $4,720,000,000 is entered in favor of the Commission against Corporate Defendants, jointly and severally, as monetary relief. The liability of Corporate Defendants shall be joint and several with any other Defendants to the extent subsequently ordered.

B.    The judgment is suspended as to Corporate Defendants subject to the subsections below.

C.    The suspension of the judgment as to the Non-Debtor Defendants is expressly premised upon the truthfulness, accuracy, and completeness of:

1.    The Financial Statement of Corporate Defendant Celsius Management Corp. signed on July 7, 2023, including attachments;

2.    The Financial Statement of Corporate Defendant Celsius US LLC signed on July 7, 2023, including attachments; and

3.    The Declaration of Christopher Ferraro signed on July 6, 2023, and sent by email from Corporate Debtors' counsel, Rich Cunningham, to Commission counsel Katherine Aizpuru on July 6, 2023.

D.    The suspension will be lifted as to Non-Debtor Defendants if, upon motion by the Commission or the Commission, the Court finds that a Non-Debtor Defendant failed to disclose

any material asset, materially misstated the value of any asset, or made any other material

misstatement or omission in the financial representations identified above. The suspension will

be lifted as to Corporate Defendants if the Bankruptcy Case is closed, dismissed, or otherwise

concluded, in each case, without the estate(s) being fully administered, including any

distributions to creditors, in accordance with the Bankruptcy Code.

E.      If the suspension of the judgment is lifted, the judgment becomes immediately

due as to Corporate Defendants in the amount specified in Subsection A above (which the parties

stipulate only for purposes of this Section represents the consumer injury), less any payment

previously made pursuant to this Section, plus interest computed from the date of entry of this

Order.

## VII.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Corporate Defendants relinquish dominion and all legal and equitable right, title,

and interest in all assets transferred pursuant to this Order and may not seek the return of any

assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in

any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to

enforce its rights to any payment or monetary judgment pursuant to this Order, such as a

nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an

action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.

§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Corporate Defendants acknowledge that their Taxpayer Identification Numbers

8

(Social Security Numbers or Employer Identification Numbers), which Corporate Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      Payment must be made by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

F.      All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Corporate Defendants' practices alleged in the Complaint. Any money not used for relief is to be deposited to the U.S. Treasury.  Corporate Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

G.      The Debtor Defendants agree that the monetary judgment ordered by Section VI.A is not dischargeable in the Bankruptcy Case.

H.      The Debtor Defendants will not object to allowance of the FTC claim in the Bankruptcy Case as a general unsecured claim in the amount of $4,720,000,000.

## VIII.   CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Corporate Defendants, Corporate Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any

of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly:

      A.      failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Corporate Defendants must provide it, in the form prescribed by the Commission, within 14 days;

      B.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing and sale of cryptocurrency services; and

      C.      failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

      Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.    COOPERATION

      IT IS FURTHER ORDERED that Corporate Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or occurrences that are the subject of the Complaint. Corporate Defendants must provide truthful and complete information, evidence, and testimony. Corporate Defendants must cause Corporate Defendants' officers, employees, representatives, or agents to appear for

interviews, discovery, hearings, trials, and any other proceedings that a Commission

representative may reasonably request upon 5 days' written notice, or other reasonable notice, at

such places and times as a Commission representative may designate, without the service of a

subpoena.

## X.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Corporate Defendants obtain acknowledgments of

receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the

Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 20 years after entry of this Order, each Corporate Defendant must deliver a

copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2)

all employees having managerial responsibilities for conduct related to the subject matter of the

Order and all agents and representatives who participate in conduct related to the subject matter

of the Order; and (3) any business entity resulting from any change in structure as set forth in the

Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order

for current personnel.  For all others, delivery must occur before they assume their

responsibilities.

C.      From each individual or entity to which a Corporate Defendant delivered a copy

of this Order, that Corporate Defendant must obtain, within 30 days, a signed and dated

acknowledgment of receipt of this Order.

## XI.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Corporate Defendants make timely submissions to the

Commission:

A.      One year after entry of this Order, each Corporate Defendant must submit a

11

compliance report, sworn under penalty of perjury, that: (1) identifies the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Corporate Defendant; (2) identifies all of that Corporate Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (3) describes the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (4) describes in detail whether and how that Corporate Defendant is in compliance with each Section of this Order; and (5) provides a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 20 years after entry of this Order, each Corporate Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (1) any designated point of contact; or (2) the structure of any Corporate Defendant or any entity that Corporate Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; *provided, however,* that Corporate Defendants need not submit a compliance notice associated with the administration of the Debtor Defendants' bankruptcy estates in the Bankruptcy Case.

C.      Each Corporate Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Corporate Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under

penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by

concluding: "I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's

full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or

sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement,

Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC  20580.  The subject line must begin:  FTC v. Celsius Network Inc., *et al.*, No.

2223137.

## XII.   RECORDKEEPING

IT IS FURTHER ORDERED that Corporate Defendants must create certain records for

20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate

Defendants  must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an

employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position;

dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly

or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this

Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

13

# XIII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Corporate Defendants' compliance with this Order:

A.       Within 14 days of receipt of a written request from a representative of the Commission, each Corporate Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Corporate Defendant.  Each Corporate Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Corporate Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.       The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Corporate Defendants or any individual or entity affiliated with Corporate Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIV.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this ___ day of _____, 2023.**

_____

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:** FEDERAL TRADE COMMISSION


*Katherine M. Aizpuru*                              Date: July 12, 2023

Katherine M. Aizpuru
Stephanie E. Liebner
Katherine Worthman
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop: CC 6316
Washington, D.C. 20580
202-876-5673
kaizpuru@ftc.gov;
sliebner@ftc.gov;
kworthman@ftc.gov

16

**FOR CORPORATE DEFENDANTS:** CELSIUS NETWORK INC.; CELSIUS NETWORK LLC; CELSIUS NETWORKS LENDING LLC; CELSIUS LENDING LLC; CELSIUS KEYFI LLC; CELSIUS MINING LLC; CELSIUS US HOLDING LLC; CELSIUS US LLC; and CELSIUS MANAGEMENT CORP.

_____          Date: _____

Richard H. Cunningham
Robert W. Allen
Hanaa Kaloti
Kirkland & Ellis LLP
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
202-389-5000
rich.cunningham@kirkland.com;
bob.allen@kirkland.com;
hanna.kaloti@kirkland.com

COUNSEL

_____          Date: _____

Christopher Ferraro, as an officer of Celsius
Network LLC, on behalf of Celsius Network
LLC and the other Corporate Defendants

# Attachment A

lines broker or agent, insurance consultant, limited insurance representative, and any other individual or entity that sells, solicits, or negotiates policies of insurance or offers advice, counsel, opinions or services related to insurance.

**(6) Insurer**

The term ''insurer'' has the meaning as in section 313(e)(2)(B) of title 31.

**(7) Principal place of business**

The term ''principal place of business'' means the State in which an insurance producer maintains the headquarters of the insurance producer and, in the case of a business entity, where high-level officers of the entity direct, control, and coordinate the business activities of the business entity.

**(8) Principal place of residence**

The term ''principal place of residence'' means the State in which an insurance producer resides for the greatest number of days during a calendar year.

**(9) State**

The term ''State'' includes any State, the District of Columbia, any territory of the United States, and Puerto Rico, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Virgin Islands, and the Northern Mariana Islands.

**(10) State law**

**(A) In general**

The term ''State law'' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.

**(B) Laws applicable in the District of Columbia**

A law of the United States applicable only to or within the District of Columbia shall be treated as a State law rather than a law of the United States.

(Pub. L. 106–102, title III, §334, as added Pub. L. 114–1, title II, §202(a), Jan. 12, 2015, 129 Stat. 27.)

### Editorial Notes

#### PRIOR PROVISIONS

Provisions similar to this section were contained in section 6766 of this title, prior to the general amendment of this subchapter by Pub. L. 114–1.

A prior section 6764, Pub. L. 106–102, title III, §334, Nov. 12, 1999, 113 Stat. 1433, related to coordination with other regulators, prior to the general amendment of this subchapter by Pub. L. 114–1. See section 6761 of this title.

A prior section 6765, Pub. L. 106–102, title III, §335, Nov. 12, 1999, 113 Stat. 1433, which related to judicial review, was omitted in the general amendment of this subchapter by Pub. L. 114–1. See section 6762 of this title.

A prior section 6766, Pub. L. 106–102, title III, §336, Nov. 12, 1999, 113 Stat. 1433, which related to definitions, was omitted in the general amendment of this subchapter by Pub. L. 114–1.

## SUBCHAPTER IV—RENTAL CAR AGENCY INSURANCE ACTIVITIES

### § 6781. Standard of regulation for motor vehicle rentals

**(a) Protection against retroactive application of regulatory and legal action**

Except as provided in subsection (b), during the 3-year period beginning on November 12, 1999, it shall be a presumption that no State law imposes any licensing, appointment, or education requirements on any person who solicits the purchase of or sells insurance connected with, and incidental to, the lease or rental of a motor vehicle.

**(b) Preeminence of State insurance law**

No provision of this section shall be construed as altering the validity, interpretation, construction, or effect of—

(1) any State statute;

(2) the prospective application of any court judgment interpreting or applying any State statute; or

(3) the prospective application of any final State regulation, order, bulletin, or other statutorily authorized interpretation or action,

which, by its specific terms, expressly regulates or exempts from regulation any person who solicits the purchase of or sells insurance connected with, and incidental to, the short-term lease or rental of a motor vehicle.

**(c) Scope of application**

This section shall apply with respect to—

(1) the lease or rental of a motor vehicle for a total period of 90 consecutive days or less; and

(2) insurance which is provided in connection with, and incidentally to, such lease or rental for a period of consecutive days not exceeding the lease or rental period.

**(d) Motor vehicle defined**

For purposes of this section, the term ''motor vehicle'' has the same meaning as in section 13102 of title 49.

(Pub. L. 106–102, title III, §341, Nov. 12, 1999, 113 Stat. 1434.)

## CHAPTER 94—PRIVACY

### SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

Sec.
6801. Protection of nonpublic personal information.
6802. Obligations with respect to disclosures of personal information.
6803. Disclosure of institution privacy policy.
6804. Rulemaking.
6805. Enforcement.
6806. Relation to other provisions.
6807. Relation to State laws.
6808. Study of information sharing among financial affiliates.
6809. Definitions.

### SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

6821. Privacy protection for customer information of financial institutions.
6822. Administrative enforcement.

Sec.
6823.     Criminal penalty.
6824.     Relation to State laws.
6825.     Agency guidance.
6826.     Reports.
6827.     Definitions.

SUBCHAPTER I—DISCLOSURE OF
NONPUBLIC PERSONAL INFORMATION

## § 6801. Protection of nonpublic personal information

### (a) Privacy obligation policy

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

### (b) Financial institutions safeguards

In furtherance of the policy in subsection (a), each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards—

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

(Pub. L. 106–102, title V, § 501, Nov. 12, 1999, 113 Stat. 1436; Pub. L. 111–203, title X, § 1093(1), July 21, 2010, 124 Stat. 2095.)

#### Editorial Notes

##### Amendments

2010—Subsec. (b). Pub. L. 111–203 inserted '', other than the Bureau of Consumer Financial Protection,'' after ''section 6805(a) of this title'' in introductory provisions.

#### Statutory Notes and Related Subsidiaries

##### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

##### Effective Date

Pub. L. 106–102, title V, § 510, Nov. 12, 1999, 113 Stat. 1445, provided that: ''This subtitle [subtitle A (§§ 501–510) of title V of Pub. L. 106–102, enacting this subchapter and amending section 1681s of this title] shall take effect 6 months after the date on which rules are required to be prescribed under section 504(a)(3) [15 U.S.C. 6804(a)(3)], except—

''(1) to the extent that a later date is specified in the rules prescribed under section 504; and

''(2) that sections 504 [15 U.S.C. 6804] and 506 [enacting section 6806 of this title and amending section 1681s of this title] shall be effective upon enactment [Nov. 12, 1999].''

## § 6802. Obligations with respect to disclosures of personal information

### (a) Notice requirements

Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

### (b) Opt out

#### (1) In general

A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—

(A) such financial institution clearly and conspicuously discloses to the consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, that such information may be disclosed to such third party;

(B) the consumer is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and

(C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

#### (2) Exception

This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information.

### (c) Limits on reuse of information

Except as otherwise provided in this subchapter, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

### (d) Limitations on the sharing of account number information for marketing purposes

A financial institution shall not disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a credit card account, deposit account, or transaction account of a consumer to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other

marketing through electronic mail to the consumer.

**(e) General exceptions**

Subsections (a) and (b) shall not prohibit the disclosure of nonpublic personal information—

(1) as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with—

(A) servicing or processing a financial product or service requested or authorized by the consumer;

(B) maintaining or servicing the consumer's account with the financial institution, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;

(2) with the consent or at the direction of the consumer;

(3)(A) to protect the confidentiality or security of the financial institution's records pertaining to the consumer, the service or product, or the transaction therein; (B) to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability; (C) for required institutional risk control, or for resolving customer disputes or inquiries; (D) to persons holding a legal or beneficial interest relating to the consumer; or (E) to persons acting in a fiduciary or representative capacity on behalf of the consumer;

(4) to provide information to insurance rate advisory organizations, guaranty funds or agencies, applicable rating agencies of the financial institution, persons assessing the institution's compliance with industry standards, and the institution's attorneys, accountants, and auditors;

(5) to the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401 et seq.], to law enforcement agencies (including the Bureau of Consumer Financial Protection[1] a Federal functional regulator, the Secretary of the Treasury with respect to subchapter II of chapter 53 of title 31, and chapter 2 of title I of Public Law 91–508 (12 U.S.C. 1951–1959), a State insurance authority, or the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(6)(A) to a consumer reporting agency in accordance with the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], or (B) from a consumer report reported by a consumer reporting agency;

(7) in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business or unit; or

(8) to comply with Federal, State, or local laws, rules, and other applicable legal require-

ments; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

(Pub. L. 106–102, title V, §502, Nov. 12, 1999, 113 Stat. 1437; Pub. L. 111–203, title X, §1093(2), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

#### REFERENCES IN TEXT

This subchapter, referred to in subsecs. (a) and (c), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Right to Financial Privacy Act of 1978, referred to in subsec. (e)(5), is title XI of Pub. L. 95–630, Nov. 10, 1978, 92 Stat. 3697, which is classified generally to chapter 35 (§3401 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 3401 of Title 12 and Tables.

Chapter 2 of title I of Public Law 91–508, referred to in subsec. (e)(5), is chapter 2 (§§121–129) of title I of Pub. L. 91–508, Oct. 26, 1970, 84 Stat. 1116, which is classified generally to chapter 21 (§1951 et seq.) of Title 12, Banks and Banking. For complete classification of chapter 2 to the Code, see Tables.

The Fair Credit Reporting Act, referred to in subsec. (e)(6)(A), is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

#### AMENDMENTS

2010—Subsec. (e)(5). Pub. L. 111–203 inserted "the Bureau of Consumer Financial Protection" after "(including".

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## § 6803. Disclosure of institution privacy policy

**(a) Disclosure required**

At the time of establishing a customer relationship with a consumer and not less than annually during the continuation of such relationship, a financial institution shall provide a clear and conspicuous disclosure to such consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, of such financial institution's policies and practices with respect to—

(1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties, consistent with section 6802 of this title, including the categories of information that may be disclosed;

(2) disclosing nonpublic personal information of persons who have ceased to be customers of the financial institution; and

---

[1] So in original. Probably should be followed by a comma.

(3) protecting the nonpublic personal information of consumers.

**(b) Regulations**

Disclosures required by subsection (a) shall be made in accordance with the regulations prescribed under section 6804 of this title.

**(c) Information to be included**

The disclosure required by subsection (a) shall include—

(1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties, other than agents of the institution, consistent with section 6802 of this title, and including—

(A) the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided pursuant to section 6802(e) of this title; and

(B) the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution;

(2) the categories of nonpublic personal information that are collected by the financial institution;

(3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information in accordance with section 6801 of this title; and

(4) the disclosures required, if any, under section 1681a(d)(2)(A)(iii) of this title.

**(d) Exemption for certified public accountants**

**(1) In general**

The disclosure requirements of subsection (a) do not apply to any person, to the extent that the person is—

(A) a certified public accountant;

(B) certified or licensed for such purpose by a State; and

(C) subject to any provision of law, rule, or regulation issued by a legislative or regulatory body of the State, including rules of professional conduct or ethics, that prohibits disclosure of nonpublic personal information without the knowing and expressed consent of the consumer.

**(2) Limitation**

Nothing in this subsection shall be construed to exempt or otherwise exclude any financial institution that is affiliated or becomes affiliated with a certified public accountant described in paragraph (1) from any provision of this section.

**(3) Definitions**

For purposes of this subsection, the term "State" means any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Virgin Islands, or the Northern Mariana Islands.

**(e) Model forms**

**(1) In general**

The agencies referred to in section 6804(a)(1) of this title shall jointly develop a model form

which may be used, at the option of the financial institution, for the provision of disclosures under this section.

**(2) Format**

A model form developed under paragraph (1) shall—

(A) be comprehensible to consumers, with a clear format and design;

(B) provide for clear and conspicuous disclosures;

(C) enable consumers easily to identify the sharing practices of a financial institution and to compare privacy practices among financial institutions; and

(D) be succinct, and use an easily readable type font.

**(3) Timing**

A model form required to be developed by this subsection shall be issued in proposed form for public comment not later than 180 days after October 13, 2006.

**(4) Safe harbor**

Any financial institution that elects to provide the model form developed by the agencies under this subsection shall be deemed to be in compliance with the disclosures required under this section.

**(f) Exception to annual notice requirement**

A financial institution that—

(1) provides nonpublic personal information only in accordance with the provisions of subsection (b)(2) or (e) of section 6802 of this title or regulations prescribed under section 6804(b) of this title, and

(2) has not changed its policies and practices with regard to disclosing nonpublic personal information from the policies and practices that were disclosed in the most recent disclosure sent to consumers in accordance with this section,

shall not be required to provide an annual disclosure under this section until such time as the financial institution fails to comply with any criteria described in paragraph (1) or (2).

(Pub. L. 106–102, title V, §503, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 109–351, title VI, §609, title VII, §728, Oct. 13, 2006, 120 Stat. 1983, 2003; Pub. L. 114–94, div. G, title LXXV, §75001, Dec. 4, 2015, 129 Stat. 1787.)

**Editorial Notes**

Amendments

2015—Subsec. (f). Pub. L. 114–94 added subsec. (f).

2006—Pub. L. 109–351 designated concluding provisions of subsec. (a) as (b), inserted heading, substituted "Disclosures required by subsection (a)" for "Such disclosures", redesignated former subsec. (b) as (c), and added subsecs. (d) and (e).

**Executive Documents**

Termination of Trust Territory of the Pacific Islands

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

## § 6804. Rulemaking

### (a) Regulatory authority

#### (1) Rulemaking

##### (A) In general

Except as provided in subparagraph (C), the Bureau of Consumer Financial Protection and the Securities and Exchange Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to their respective jurisdiction under section 6805 of this title (and notwithstanding subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]), except that the Bureau of Consumer Financial Protection shall not have authority to prescribe regulations with respect to the standards under section 6801 of this title.

##### (B) CFTC

The Commodity Futures Trading Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to the jurisdiction of the Commodity Futures Trading Commission under section 7b–2 of title 7.

##### (C) Federal Trade Commission authority

Notwithstanding the authority of the Bureau of Consumer Financial Protection under subparagraph (A), the Federal Trade Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to any financial institution that is a person described in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)].

##### (D) Rule of construction

Nothing in this paragraph shall be construed to alter, affect, or otherwise limit the authority of a State insurance authority to adopt regulations to carry out this subchapter.

#### (2) Coordination, consistency, and comparability

Each of the agencies authorized under paragraph (1) to prescribe regulations shall consult and coordinate with the other such agencies and, as appropriate, and with[1] representatives of State insurance authorities designated by the National Association of Insurance Commissioners, for the purpose of assuring, to the extent possible, that the regulations prescribed by each such agency are consistent and comparable with the regulations prescribed by the other such agencies.

#### (3) Procedures and deadline

Such regulations shall be prescribed in accordance with applicable requirements of title 5.

---

[1] So in original. Probably should be ''and, as appropriate, with''.

### (b) Authority to grant exceptions

The regulations prescribed under subsection (a) may include such additional exceptions to subsections (a) through (d) of section 6802 of this title as are deemed consistent with the purposes of this subchapter.

(Pub. L. 106–102, title V, § 504, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 111–203, title X, § 1093(3), July 21, 2010, 124 Stat. 2095.)

#### Editorial Notes

##### References in Text

This subchapter, referred to in subsecs. (a)(1) and (b), was in the original ''this subtitle'', meaning subtitle A (§§ 501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Consumer Financial Protection Act of 2010, referred to in subsec. (a)(1)(A), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitle B (§§ 1021–1029A) of the Act is classified generally to part B (§ 5511 et seq.) of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitle B to the Code, see Tables.

##### Amendments

2010—Subsec. (a)(1), (2). Pub. L. 111–203, § 1093(3)(A), added pars. (1) and (2) and struck out former pars. (1) and (2) which related, respectively, to rulemaking by the Federal banking agencies, the National Credit Union Administration, the Secretary of the Treasury, the Securities and Exchange Commission, and the Federal Trade Commission, and consultation and coordination among these agencies and authorities to assure consistency and comparability of regulations.

Subsec. (a)(3). Pub. L. 111–203, § 1093(3)(B), struck out ''and shall be issued in final form not later than 6 months after November 12, 1999'' after ''title 5''.

#### Statutory Notes and Related Subsidiaries

##### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## § 6805. Enforcement

### (a) In general

Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:

(1) Under section 1818 of title 12, by the appropriate Federal banking agency, as defined in section 1813(q) of title 12, in the case of—

(A) national banks, Federal branches and Federal agencies of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agen-

cies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], and bank holding companies and their nonbank subsidiaries or affiliates (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), insured State branches of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers); and

(D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, and any subsidiaries of such savings associations (except brokers, dealers, persons providing insurance, investment companies, and investment advisers).

(2) Under the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Board of the National Credit Union Administration with respect to any federally insured credit union, and any subsidiaries of such an entity.

(3) Under the Securities Exchange Act of 1934 [15 U.S.C. 78a et seq.], by the Securities and Exchange Commission with respect to any broker or dealer.

(4) Under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], by the Securities and Exchange Commission with respect to investment companies.

(5) Under the Investment Advisers Act of 1940 [15 U.S.C. 80b–1 et seq.], by the Securities and Exchange Commission with respect to investment advisers registered with the Commission under such Act.

(6) Under State insurance law, in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 6701 of this title.

(7) Under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], by the Federal Trade Commission for any other financial institution or other person that is not subject to the jurisdiction of any agency or authority under paragraphs (1) through (6) of this subsection.

(8) Under subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, in the case of any financial institution and other covered person or service provider that is subject to the jurisdiction of the Bureau and any person subject to this subchapter, but not with respect to the standards under section 6801 of this title.

**(b) Enforcement of section 6801**

**(1) In general**

Except as provided in paragraph (2), the agencies and authorities described in subsection (a), other than the Bureau of Consumer Financial Protection, shall implement the standards prescribed under section 6801(b) of this title in the same manner, to the extent practicable, as standards prescribed pursuant to section 1831p–1(a) of title 12 are implemented pursuant to such section.

**(2) Exception**

The agencies and authorities described in paragraphs (3), (4), (5), (6), and (7) of subsection (a) shall implement the standards prescribed under section 6801(b) of this title by rule with respect to the financial institutions and other persons subject to their respective jurisdictions under subsection (a).

**(c) Absence of State action**

If a State insurance authority fails to adopt regulations to carry out this subchapter, such State shall not be eligible to override, pursuant to section 1831x(g)(2)(B)(iii) of title 12, the insurance customer protection regulations prescribed by a Federal banking agency under section 1831x(a) of title 12.

**(d) Definitions**

The terms used in subsection (a)(1) that are not defined in this subchapter or otherwise defined in section 1813(s) of title 12 shall have the same meaning as given in section 3101 of title 12.

(Pub. L. 106–102, title V, § 505, Nov. 12, 1999, 113 Stat. 1440; Pub. L. 111–203, title X, § 1093(4), (5), July 21, 2010, 124 Stat. 2096, 2097.)

### Editorial Notes

#### References in Text

The Consumer Financial Protection Act of 2010, referred to in subsec. (a), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§ 1021–1029A) and E (§§ 1051–1058) of the Act are classified generally to parts B (§ 5511 et seq.) and E (§ 5561 et seq.), respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

This subchapter, referred to in subsecs. (a), (c), and (d), was in the original "this subtitle", meaning subtitle A (§§ 501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (a)(1)(B), is classified to subchapter I (§ 601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§ 611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (a)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§ 1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Securities Exchange Act of 1934, referred to in subsec. (a)(3), is act June 6, 1934, ch. 404, 48 Stat. 881, which is classified principally to chapter 2B (§ 78a et seq.) of this title. For complete classification of this Act to the Code, see section 78a of this title and Tables.

The Investment Company Act of 1940, referred to in subsec. (a)(4), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, which is classified generally to subchapter I (§ 80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

The Investment Advisers Act of 1940, referred to in subsec. (a)(5), is title II of act Aug. 22, 1940, ch. 686, 54 Stat. 847, which is classified generally to subchapter II (§ 80b–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80b–20 of this title and Tables.

The Federal Trade Commission Act, referred to in subsec. (a)(7), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

#### AMENDMENTS

2010—Subsec. (a). Pub. L. 111–203, §1093(4)(A), substituted "Subject to subtitle B of the Consumer Financial Protection Act of 2010, this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:" for "This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:".

Subsec. (a)(1). Pub. L. 111–203, §1093(4)(B)(i), inserted "by the appropriate Federal banking agency, as defined in section 1813(q) of title 12," before "in the case of—".

Subsec. (a)(1)(A). Pub. L. 111–203, §1093(4)(B)(ii), struck out ", by the Office of the Comptroller of the Currency" before semicolon at end.

Subsec. (a)(1)(B). Pub. L. 111–203, §1093(4)(B)(iii), struck out ", by the Board of Governors of the Federal Reserve System" before semicolon at end.

Subsec. (a)(1)(C). Pub. L. 111–203, §1093(4)(B)(iv), struck out ", by the Board of Directors of the Federal Deposit Insurance Corporation" before "; and".

Subsec. (a)(1)(D). Pub. L. 111–203, §1093(4)(B)(v), struck out ", by the Director of the Office of Thrift Supervision" before period at end.

Subsec. (a)(8). Pub. L. 111–203, §1093(4)(C), added par. (8).

Subsec. (b)(1). Pub. L. 111–203, §1093(5), inserted ", other than the Bureau of Consumer Financial Protection," before "shall implement the standards".

#### STATUTORY NOTES AND RELATED SUBSIDIARIES

##### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

### § 6806. Relation to other provisions

Except for the amendments made by subsections (a) and (b), nothing in this chapter shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], and no inference shall be drawn on the basis of the provisions of this chapter regarding whether information is transaction or experience information under section 603 of such Act [15 U.S.C. 1681a].

(Pub. L. 106–102, title V, §506(c), Nov. 12, 1999, 113 Stat. 1442.)

#### EDITORIAL NOTES

##### REFERENCES IN TEXT

Amendments made by subsections (a) and (b), referred to in text, means amendments made by section 506(a) and (b) of Pub. L. 106–102, which amended section 1681s of this title.

This chapter, referred to in text, was in the original "this title", meaning title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, as amended, which enacted this chapter and amended section 1681s of this title. For complete classification of title V to the Code, see Tables.

The Fair Credit Reporting Act, referred to in text, is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, as amended, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

### § 6807. Relation to State laws

#### (a) In general

This subchapter and the amendments made by this subchapter shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

#### (b) Greater protection under State law

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter and the amendments made by this subchapter, as determined by the Bureau of Consumer Financial Protection, after consultation with the agency or authority with jurisdiction under section 6805(a) of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §507, Nov. 12, 1999, 113 Stat. 1442; Pub. L. 111–203, title X, §1093(6), July 21, 2010, 124 Stat. 2097.)

#### EDITORIAL NOTES

##### REFERENCES IN TEXT

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

##### AMENDMENTS

2010—Subsec. (b). Pub. L. 111–203 substituted "Bureau of Consumer Financial Protection" for "Federal Trade Commission".

#### STATUTORY NOTES AND RELATED SUBSIDIARIES

##### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

### § 6808. Study of information sharing among financial affiliates

#### (a) In general

The Secretary of the Treasury, in conjunction with the Federal functional regulators and the Federal Trade Commission, shall conduct a study of information sharing practices among financial institutions and their affiliates. Such study shall include—

(1) the purposes for the sharing of confidential customer information with affiliates or with nonaffiliated third parties;

(2) the extent and adequacy of security protections for such information;

(3) the potential risks for customer privacy of such sharing of information;

(4) the potential benefits for financial institutions and affiliates of such sharing of information;

(5) the potential benefits for customers of such sharing of information;

(6) the adequacy of existing laws to protect customer privacy;

(7) the adequacy of financial institution privacy policy and privacy rights disclosure under existing law;

(8) the feasibility of different approaches, including opt-out and opt-in, to permit customers to direct that confidential information not be shared with affiliates and nonaffiliated third parties; and

(9) the feasibility of restricting sharing of information for specific uses or of permitting customers to direct the uses for which information may be shared.

**(b) Consultation**

The Secretary shall consult with representatives of State insurance authorities designated by the National Association of Insurance Commissioners, and also with financial services industry, consumer organizations and privacy groups, and other representatives of the general public, in formulating and conducting the study required by subsection (a).

**(c) Report**

On or before January 1, 2002, the Secretary shall submit a report to the Congress containing the findings and conclusions of the study required under subsection (a), together with such recommendations for legislative or administrative action as may be appropriate.

(Pub. L. 106–102, title V, § 508, Nov. 12, 1999, 113 Stat. 1442.)

## § 6809. Definitions

As used in this subchapter:

**(1) Federal banking agency**

The term ''Federal banking agency'' has the same meaning as given in section 1813 of title 12.

**(2) Federal functional regulator**

The term ''Federal functional regulator'' means—

(A) the Board of Governors of the Federal Reserve System;

(B) the Office of the Comptroller of the Currency;

(C) the Board of Directors of the Federal Deposit Insurance Corporation;

(D) the Director of the Office of Thrift Supervision;

(E) the National Credit Union Administration Board; and

(F) the Securities and Exchange Commission.

**(3) Financial institution**

**(A) In general**

The term ''financial institution'' means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12.

**(B) Persons subject to CFTC regulation**

Notwithstanding subparagraph (A), the term ''financial institution'' does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.].

**(C) Farm credit institutions**

Notwithstanding subparagraph (A), the term ''financial institution'' does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(D) Other secondary market institutions**

Notwithstanding subparagraph (A), the term ''financial institution'' does not include institutions chartered by Congress specifically to engage in transactions described in section 6802(e)(1)(C) of this title, as long as such institutions do not sell or transfer nonpublic personal information to a nonaffiliated third party.

**(4) Nonpublic personal information**

(A) The term ''nonpublic personal information'' means personally identifiable financial information—

(i) provided by a consumer to a financial institution;

(ii) resulting from any transaction with the consumer or any service performed for the consumer; or

(iii) otherwise obtained by the financial institution.

(B) Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.

(C) Notwithstanding subparagraph (B), such term—

(i) shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but

(ii) shall not include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived without using any nonpublic personal information.

**(5) Nonaffiliated third party**

The term ''nonaffiliated third party'' means any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution.

**(6) Affiliate**

The term ''affiliate'' means any company that controls, is controlled by, or is under common control with another company.

**(7) Necessary to effect, administer, or enforce**

The term ''as necessary to effect, administer, or enforce the transaction'' means—

(A) the disclosure is required, or is a usual, appropriate, or acceptable method, to carry out the transaction or the product or service business of which the transaction is a part, and record or service or maintain the consumer's account in the ordinary course of providing the financial service or financial product, or to administer or service benefits or claims relating to the transaction or the product or service business of which it is a part, and includes—

(i) providing the consumer or the consumer's agent or broker with a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product; and

(ii) the accrual or recognition of incentives or bonuses associated with the transaction that are provided by the financial institution or any other party;

(B) the disclosure is required, or is one of the lawful or appropriate methods, to enforce the rights of the financial institution or of other persons engaged in carrying out the financial transaction, or providing the product or service;

(C) the disclosure is required, or is a usual, appropriate, or acceptable method, for insurance underwriting at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: Account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or State law; or

(D) the disclosure is required, or is a usual, appropriate, or acceptable method, in connection with—

(i) the authorization, settlement, billing, processing, clearing, transferring, reconciling, or collection of amounts charged, debited, or otherwise paid using a debit, credit or other payment card, check, or account number, or by other payment means;

(ii) the transfer of receivables, accounts or interests therein; or

(iii) the audit of debit, credit or other payment information.

#### (8) State insurance authority

The term "State insurance authority" means, in the case of any person engaged in providing insurance, the State insurance authority of the State in which the person is domiciled.

#### (9) Consumer

The term "consumer" means an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such an individual.

#### (10) Joint agreement

The term "joint agreement" means a formal written contract pursuant to which two or more financial institutions jointly offer, endorse, or sponsor a financial product or service, and as may be further defined in the regulations prescribed under section 6804 of this title.

#### (11) Customer relationship

The term "time of establishing a customer relationship" shall be defined by the regulations prescribed under section 6804 of this title, and shall, in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer.

(Pub. L. 106–102, title V, § 509, Nov. 12, 1999, 113 Stat. 1443.)

#### Editorial Notes

##### References in Text

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§ 501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Commodity Exchange Act, referred to in par. (3)(B), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, as amended, which is classified generally to chapter 1 (§ 1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (3)(C), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, as amended, which is classified generally to chapter 23 (§ 2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

## SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

### § 6821. Privacy protection for customer information of financial institutions

#### (a) Prohibition on obtaining customer information by false pretenses

It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person—

(1) by making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution;

(2) by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution; or

(3) by providing any document to an officer, employee, or agent of a financial institution, knowing that the document is forged, counterfeit, lost, or stolen, was fraudulently obtained, or contains a false, fictitious, or fraudulent statement or representation.

#### (b) Prohibition on solicitation of a person to obtain customer information from financial institution under false pretenses

It shall be a violation of this subchapter to request a person to obtain customer information

of a financial institution, knowing that the person will obtain, or attempt to obtain, the information from the institution in any manner described in subsection (a).

### (c) Nonapplicability to law enforcement agencies

No provision of this section shall be construed so as to prevent any action by a law enforcement agency, or any officer, employee, or agent of such agency, to obtain customer information of a financial institution in connection with the performance of the official duties of the agency.

### (d) Nonapplicability to financial institutions in certain cases

No provision of this section shall be construed so as to prevent any financial institution, or any officer, employee, or agent of a financial institution, from obtaining customer information of such financial institution in the course of—

(1) testing the security procedures or systems of such institution for maintaining the confidentiality of customer information;

(2) investigating allegations of misconduct or negligence on the part of any officer, employee, or agent of the financial institution; or

(3) recovering customer information of the financial institution which was obtained or received by another person in any manner described in subsection (a) or (b).

### (e) Nonapplicability to insurance institutions for investigation of insurance fraud

No provision of this section shall be construed so as to prevent any insurance institution, or any officer, employee, or agency of an insurance institution, from obtaining information as part of an insurance investigation into criminal activity, fraud, material misrepresentation, or material nondisclosure that is authorized for such institution under State law, regulation, interpretation, or order.

### (f) Nonapplicability to certain types of customer information of financial institutions

No provision of this section shall be construed so as to prevent any person from obtaining customer information of a financial institution that otherwise is available as a public record filed pursuant to the securities laws (as defined in section 78c(a)(47) of this title).

### (g) Nonapplicability to collection of child support judgments

No provision of this section shall be construed to prevent any State-licensed private investigator, or any officer, employee, or agent of such private investigator, from obtaining customer information of a financial institution, to the extent reasonably necessary to collect child support from a person adjudged to have been delinquent in his or her obligations by a Federal or State court, and to the extent that such action by a State-licensed private investigator is not unlawful under any other Federal or State law or regulation, and has been authorized by an order or judgment of a court of competent jurisdiction.

(Pub. L. 106–102, title V, § 521, Nov. 12, 1999, 113 Stat. 1446.)

## § 6822. Administrative enforcement

### (a) Enforcement by Federal Trade Commission

Except as provided in subsection (b), compliance with this subchapter shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [15 U.S.C. 1692 et seq.] to enforce compliance with such Act.

### (b) Enforcement by other agencies in certain cases

#### (1) In general

Compliance with this subchapter shall be enforced under—

(A) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], in the case of—

(i) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(ii) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], by the Board;

(iii) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System and national nonmember banks) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(iv) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision; and

(B) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union.

#### (2) Violations of this subchapter treated as violations of other laws

For the purpose of the exercise by any agency referred to in paragraph (1) of its powers under any Act referred to in that paragraph, a violation of this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in paragraph (1), each of the agencies referred to in that paragraph may exercise, for the purpose of enforcing compliance with this subchapter, any other authority conferred on such agency by law.

(Pub. L. 106–102, title V, § 522, Nov. 12, 1999, 113 Stat. 1447.)

### Editorial Notes

#### REFERENCES IN TEXT

The Fair Debt Collection Practices Act, referred to in subsec. (a), is title VIII of Pub. L. 90–321, as added by

Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874, as amended, which is classified generally to subchapter V (§ 1692 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (b)(1)(A)(ii), is classified to subchapter I (§ 601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§ 611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (b)(1)(B), is act June 26, 1934, ch. 750, 48 Stat. 1216, as amended, which is classified generally to chapter 14 (§ 1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

**Statutory Notes and Related Subsidiaries**

TRANSFER OF FUNCTIONS

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

## § 6823. Criminal penalty

### (a) In general

Whoever knowingly and intentionally violates, or knowingly and intentionally attempts to violate, section 6821 of this title shall be fined in accordance with title 18 or imprisoned for not more than 5 years, or both.

### (b) Enhanced penalty for aggravated cases

Whoever violates, or attempts to violate, section 6821 of this title while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, imprisoned for not more than 10 years, or both.

(Pub. L. 106–102, title V, § 523, Nov. 12, 1999, 113 Stat. 1448.)

## § 6824. Relation to State laws

### (a) In general

This subchapter shall not be construed as superseding, altering, or affecting the statutes, regulations, orders, or interpretations in effect in any State, except to the extent that such statutes, regulations, orders, or interpretations are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

### (b) Greater protection under State law

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter as determined by the Federal Trade Commission, after consultation with the agency or authority with jurisdiction under section 6822 of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, § 524, Nov. 12, 1999, 113 Stat. 1448.)

## § 6825. Agency guidance

In furtherance of the objectives of this subchapter, each Federal banking agency (as defined in section 1813(z) of title 12), the National Credit Union Administration, and the Securities and Exchange Commission or self-regulatory organizations, as appropriate, shall review regulations and guidelines applicable to financial institutions under their respective jurisdictions and shall prescribe such revisions to such regulations and guidelines as may be necessary to ensure that such financial institutions have policies, procedures, and controls in place to prevent the unauthorized disclosure of customer financial information and to deter and detect activities proscribed under section 6821 of this title.

(Pub. L. 106–102, title V, § 525, Nov. 12, 1999, 113 Stat. 1448.)

## § 6826. Reports

### (a) Report to the Congress

Before the end of the 18-month period beginning on November 12, 1999, the Comptroller General, in consultation with the Federal Trade Commission, Federal banking agencies, the National Credit Union Administration, the Securities and Exchange Commission, appropriate Federal law enforcement agencies, and appropriate State insurance regulators, shall submit to the Congress a report on the following:

(1) The efficacy and adequacy of the remedies provided in this subchapter in addressing attempts to obtain financial information by fraudulent means or by false pretenses.

(2) Any recommendations for additional legislative or regulatory action to address threats to the privacy of financial information created by attempts to obtain information by fraudulent means or false pretenses.

### (b) Annual report by administering agencies

The Federal Trade Commission and the Attorney General shall submit to Congress an annual report on number and disposition of all enforcement actions taken pursuant to this subchapter.

(Pub. L. 106–102, title V, § 526, Nov. 12, 1999, 113 Stat. 1448.)

## § 6827. Definitions

For purposes of this subchapter, the following definitions shall apply:

### (1) Customer

The term ''customer'' means, with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary.

### (2) Customer information of a financial institution

The term ''customer information of a financial institution'' means any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer.

22-1096 Gang 1: 23-cv-02789-JMF Document 64-2 Filed 08/14/23 Entered 08/14/23 17:36:32 Main Document Pg 41 of 41

Page 2239                    TITLE 15—COMMERCE AND TRADE                    § 6901

**(3) Document**

The term "document" means any information in any form.

**(4) Financial institution**

**(A) In general**

The term "financial institution" means any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution.

**(B) Certain financial institutions specifically included**

The term "financial institution" includes any depository institution (as defined in section 461(b)(1)(A) of title 12), any broker or dealer, any investment adviser or investment company, any insurance company, any loan or finance company, any credit card issuer or operator of a credit card system, and any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis (as defined in section 1681a(p) of this title).

**(C) Securities institutions**

For purposes of subparagraph (B)—

(i) the terms "broker" and "dealer" have the same meanings as given in section 78c of this title;

(ii) the term "investment adviser" has the same meaning as given in section 80b–2(a)(11) of this title; and

(iii) the term "investment company" has the same meaning as given in section 80a–3 of this title.

**(D) Certain persons and entities specifically excluded**

The term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.] and does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(E) Further definition by regulation**

The Federal Trade Commission, after consultation with Federal banking agencies and the Securities and Exchange Commission, may prescribe regulations clarifying or describing the types of institutions which shall be treated as financial institutions for purposes of this subchapter.

(Pub. L. 106–102, title V, § 527, Nov. 12, 1999, 113 Stat. 1449.)

**Editorial Notes**

REFERENCES IN TEXT

The Commodity Exchange Act, referred to in par. (4)(D), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, as amended, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (4)(D), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, as amended, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

**CHAPTER 95—MICROENTERPRISE TECHNICAL ASSISTANCE AND CAPACITY BUILDING PROGRAM**

Sec.
6901.    Definitions.
6902.    Establishment of program.
6903.    Uses of assistance.
6904.    Qualified organizations.
6905.    Allocation of assistance; subgrants.
6906.    Matching requirements.
6907.    Applications for assistance.
6908.    Recordkeeping.
6909.    Authorization.
6910.    Implementation.

**§ 6901. Definitions**

For purposes of this chapter, the following definitions shall apply:

**(1) Administration**

The term "Administration" means the Small Business Administration.

**(2) Administrator**

The term "Administrator" means the Administrator of the Small Business Administration.

**(3) Capacity building services**

The term "capacity building services" means services provided to an organization that is, or that is in the process of becoming, a microenterprise development organization or program, for the purpose of enhancing its ability to provide training and services to disadvantaged entrepreneurs.

**(4) Collaborative**

The term "collaborative" means 2 or more nonprofit entities that agree to act jointly as a qualified organization under this chapter.

**(5) Disadvantaged entrepreneur**

The term "disadvantaged entrepreneur" means a microentrepreneur that is—

(A) a low-income person;

(B) a very low-income person; or

(C) an entrepreneur that lacks adequate access to capital or other resources essential for business success, or is economically disadvantaged, as determined by the Administrator.

**(6) Indian tribe**

The term "Indian tribe" has the meaning given the term in section 4702 of title 12.

**(7) Intermediary**

The term "intermediary" means a private, nonprofit entity that seeks to serve microenterprise development organizations and programs as authorized under section 6904 of this title.

**(8) Low-income person**

The term "low-income person" has the meaning given the term in section 4702 of title 12.