UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FEDERAL TRADE COMMISSION,

        Plaintiff,

- against -

ALEXANDER MASHINSKY,
SHLOMI DANIEL LEON, and
HANOCH "NUKE" GOLDSTEIN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 23 Civ. 6009 (DLC)

## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A COMPLETE STAY

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America

Allison Nichols
Adam Hobson
Noah Solowiejczyk
Assistant United States Attorneys

    - *Of Counsel* -

**Contents**

PRELIMINARY STATEMENT ............................................................................................... 1
PROCEDURAL BACKGROUND ........................................................................................... 3
FACTUAL BACKGROUND .................................................................................................... 4
ARGUMENT .............................................................................................................................. 6
    I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE ... 7
    II.    A STAY OF DISCOVERY IS APPROPRIATE ............................................................. 8
        A.    Applicable Law ................................................................................................. 8
        B.    Discussion ......................................................................................................... 9
            1.    The Extent of the Overlap ..................................................................... 9
            2.    The Status of the Criminal Case ........................................................ 11
            3.    The Potential Prejudice to the Parties ............................................... 12
            4.    The Interests of the Court ................................................................... 13
            5.    The Public Interest .............................................................................. 13
CONCLUSION ........................................................................................................................ 17

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and to stay discovery in order to avoid prejudice to an ongoing criminal case, *United States v. Mashinsky, et al.*, 23 Cr. 347 (JGK) (the "Criminal Case").

As discussed further below, the Criminal Case arises from the same set of facts and circumstances that underlie this action. One defendant, Alexander Mashinsky, is charged in both this action and the Criminal Case. Roni Cohen-Pavon is also charged in the Criminal Case, but not this action. Shlomi Daniel Leon and Hanoch "Nuke" Goldstein are charged in this action but not the Criminal Case. In order to prevent immediate prejudice to the Criminal Case, the Government is presently asking the Court to stay discovery in this action through the resolution of motions to dismiss. A complete stay of discovery until the Court rules on motions to dismiss would prejudice no party, and for the reasons discussed further below and in an *ex parte* letter accompanying this motion, would avoid the potential for significant prejudice in the Criminal Case. After the resolution of the motions to dismiss, there is likely to be more clarity on the status of both the Criminal Case and this action that may clarify the necessary scope of a more extended stay during the pendency of the Criminal Case, and thus conserve judicial resources. For instance, there may be more information about the status of the Criminal Case, including whether a trial date has been set. Moreover, if the Court were to grant any of the defendants' anticipated motions to dismiss, the issues in dispute would be narrowed.

Defendants Mashinsky and Leon consent to the stay requested by the Government. The Federal Trade Commission ("FTC") does not oppose. Counsel for Goldstein has indicated that

he also consents to staying discovery in this action pending the resolution of the motion to dismiss, assuming the bankruptcy court stays a related equitable subordination hearing pending before it; the parties anticipate that such a stay will, in fact, be entered, as an unopposed stipulation effecting such a stay was filed today. The corporate defendants have already resolved this action. (Dkt. 27).

Courts in this Circuit and others have often entered a stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection, a circumstance not present here. *See, e.g.*, *SEC v. Wey*, No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Durante, et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, No. 15 Civ. 6076 (D.N.J. Jan. 29, 2016); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting U.S. Attorney's Office request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *see also Harris v. Nassau County et al.*, No. 13 Civ. 4728 (NGG) (RML), 2014 WL 3491286, at *5 (E.D.N.Y. July 11, 2014); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying discovery until the resolution of motions to dismiss.

**PROCEDURAL BACKGROUND**

On July 13, 2023, Indictment 23 Cr. 347 (JGK) (the "Indictment") was unsealed, charging Mashinsky with orchestrating a scheme to defraud customers of Celsius Network LLC and its related entities (collectively, "Celsius"), the cryptocurrency company he founded, and, together with Celsius's Chief Revenue Officer, Roni Cohen-Pavon, and other Celsius employees, orchestrating a scheme to inflate the price of Celsius's proprietary token, CEL. *See* Indictment (Ex. A). Mashinsky is charged in seven counts with conspiracy, wire fraud, securities fraud, commodities fraud, and market manipulation, and Cohen-Pavon is charged in four counts with conspiracy, wire fraud, securities fraud, and market manipulation. *Id.* Mashinsky was arrested on July 13, 2023, and was presented and arraigned the same day. At an initial conference before the District Court,[1] Judge John G. Koeltl indicated a willingness to set a trial date at the following pretrial conference, which is scheduled for October 3, 2023.

On July 13, 2023, the Securities and Exchange Commission ("SEC") and the Commodities Futures Trading Commission ("CFTC") filed complaints charging Mashinsky with violations of the securities laws and the Commodity Exchange Act, respectively. *See SEC v. Mashinsky*, No. 23 Civ. 6005 (PAC); *CFTC v. Mashinsky*, No. 23 Civ. 6008 (ER).[2]

Also on July 13, 2023, the FTC filed a complaint ("the Complaint") against Mashinsky, Leon, Goldstein, and various corporate defendants alleging violations of the Federal Trade Commission Act and the Gramm-Leach-Bliley Act, asserting factual allegations substantially

---

[1] Cohen-Pavon, a foreign national, did not attend this conference.

[2] The Government has been in conversations with the parties to these civil actions about the potential for a complete stay of discovery in these actions during the pendency of the Criminal Case and anticipates moving to intervene and stay those actions. There are other civil and regulatory actions in state and federal courts and in bankruptcy court that the Government likewise anticipates moving to stay.

overlapping with the allegations in the Indictment. Answers from Mashinsky and Goldstein are due on September 11, 2023, and an answer from Leon is due on October 11, 2023.

## FACTUAL BACKGROUND

This case and the Criminal Case concern the same underlying events. The Indictment alleges that Celsius was a crypto asset platform that, among other things, allowed its customers to earn returns on their crypto assets in the form of weekly "rewards" payments, to take loans secured by their crypto assets, and to custody their crypto assets. Indictment ¶ 2. Celsius billed itself as the "safest place for your crypto" and urged potential customers to "unbank" themselves by moving their crypto assets to Celsius. Indictment ¶ 2. Mashinsky directly marketed Celsius to retail customers located in the United States and abroad. Indictment ¶ 2. Throughout his tenure as Chief Executive Officer ("CEO") of Celsius, Mashinsky repeatedly made public misrepresentations regarding core aspects of Celsius's business and financial condition in order to induce retail customers to provide their crypto assets to Celsius and continue to use Celsius's services. Indictment ¶ 2.

Mashinsky aggressively promoted Celsius through media interviews, his own Twitter account, and Celsius's website, but his most frequent method of public communication was his weekly "Ask Mashinsky Anything" sessions, or "AMAs," in which he would speak in a live broadcast directly to the Celsius community and take questions about Celsius from customers and prospective customers. Indictment ¶ 3. Celsius then posted recordings of these AMAs to Celsius's website and YouTube channel, where they continued to be publicly available. Indictment ¶ 3. Mashinsky made so many false and misleading statements in the AMAs that Celsius employees from multiple departments began to review the AMAs after they had aired, flag false and misleading statements by Mashinsky, and, at times, edit Mashinsky's misrepresentations

out of the recorded versions of the AMAs posted to the internet. Indictment ¶ 3. But, despite warnings from other Celsius employees, Mashinsky continued to misrepresent the nature of Celsius's core business activities on live broadcasts. Indictment ¶ 3. Moreover, neither Mashinsky nor Celsius ever issued corrections to notify the public and those who had watched the live recorded versions of the AMAs that certain of Mashinsky's statements were untrue or misleading. Indictment ¶ 3.

Mashinsky regularly made false and misleading statements about core aspects of Celsius's financial condition and business operations in order to suggest that Celsius was a safe and low-risk investment opportunity for retail crypto customers, when the truth was the opposite. Indictment ¶ 15. Among other misrepresentations, Mashinsky made false and misleading statements regarding (i) the amount of money Celsius raised through its ICO, Indictment ¶¶ 16-23; (ii) Celsius's profitability, the sustainability of its rewards rates, and the percentage of its revenue it returned to customers, Indictment ¶¶ 24-30; (iii) Celsius's market-neutral trading strategy, Indictment ¶¶ 31-34; (iv) Celsius's uncollateralized loans, Indictment ¶¶ 35-37; (v) institutional counterparty defaults, Indictment ¶¶ 38-39; (vi) the degree to which Celsius had clarity or comfort from regulators regarding the viability of its business model, Indictment ¶¶ 40-41; (vii) the safety of customer assets and its liquidity, Indictment ¶¶ 42-43; and (viii) Celsius's solvency and liquidity in the days and weeks leading up to the June 12, 2022 "Pause" on customer withdrawals that portended Celsius's filing for bankruptcy shortly thereafter, Indictment ¶¶ 44-47.

The Indictment further alleges that Mashinsky, Cohen-Pavon, and others orchestrated a scheme to manipulate the price of Celsius's proprietary token, CEL, by causing Celsius to conduct massive purchases of CEL, without disclosing its identity as the purchaser, in the open market to

artificially support and artificially inflate the price of the CEL, and by making false and misleading statements about Celsius's market activity.   Indictment ¶¶ 48-71.

The Complaint makes similar allegations about misrepresentations by Mashinsky and Celsius concerning the company's business model and operations and the safety and security of customer assets.   Compl. ¶¶ 3, 6.   The Complaint alleges that contrary to public representations, Celsius engaged in uncollateralized loans, failed to track customer deposits, and failed to maintain sufficient liquidity.   Compl. ¶ 4.   The Complaint also alleges that most customers earned less yield on their deposits than Celsius advertised and that Celsius falsely claimed to have an insurance policy covering customer assets.   Compl. ¶ 5.   As to Leon and Goldstein, the Complaint alleges that they are responsible for Mashinsky's and Celsius's false public statements due in part to their position as co-founders and executives of the company, their positions on various company committees, their role in advertising and marketing decisions, their appearance in one or more AMAs alongside Mashinsky, and their statements on Twitter.   Compl. ¶¶ 21, 22, 32.

## ARGUMENT

The Government's requests to intervene and for a complete stay of discovery pending resolution of the motions to dismiss should be granted.   Were discovery to proceed over the next few months, there would be a risk of significant interference with the Criminal Case.   The requested stay, which is presently for a circumscribed time period, would prejudice no party to this civil action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case.   Although the Government may seek a further stay of discovery after the resolution of the motions to dismiss,

there is likely to be greater clarity at that point both as to the status of the Criminal Case and the scope of this action.

I.      THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'"  Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."  The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the Criminal Matter and the similarity of claims under investigation.

As a general rule, courts "have allowed the government to intervene in civil actions — especially when the Government wishes to do so for the limited purpose of moving to stay discovery."  *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002).  The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter."  *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

Intervention is warranted because the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes.  *See Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the

7

civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Furthermore, permissive intervention is warranted as an exercise of this Court's discretion, under Fed. R. Civ. P. 24(b)(2). Rule 24(b)(2) requires only that the government's "claim . . . and the main action have a question of law or fact in common." The Government's application readily satisfies this standard because there is a substantial overlap between the allegations set forth in the FTC Complaint and the factual questions that will likely be resolved in the Criminal Investigation, including whether Mashinsky and others were engaged in fraudulent schemes to deceive customers and investors.

Finally, the Government's intervention for the limited purpose of seeking a stay will not prejudice any party's rights. The Government seeks only a stay, and its intervention will not alter the parties' respective positions. In fact, should the Criminal Investigation ripen into criminal charges, such a prosecution may benefit the parties to the civil case by bringing out relevant facts and streamlining the ensuing litigation.

In light of these circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.   A STAY OF DISCOVERY IS APPROPRIATE

### A.   Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (internal citations and quotations omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the Criminal Matter overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*See, e.g.*, *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 at 2 (quoting *Louis Vuitton*, 676 F.3d at 99). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

### B. Discussion

Application of each of these factors here weighs in favor of the stay sought by the Government.

#### 1. The Extent of the Overlap

That the facts of this civil case overlap substantially with the Criminal Case and that similar issues will be decided in each case weighs heavily in favor of a stay. "The most important factor

9

at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the facts of this case overlap almost entirely with the facts alleged in the Criminal Case. The two cases involve overlapping facts and witnesses, and raise similar issues, including whether Mashinsky and other Celsius executives made material misrepresentations about Celsius's business model and operations, about the risks that customers undertook by investing with Celsius, and about Celsius's stability, liquidity, and profitability. Fact discovery in the FTC case, including document discovery and depositions, would therefore likely implicate the same issues that are currently pending in the Criminal Case and many of the same witnesses.

While the FTC Complaint names two defendants not charged in the Criminal Case, that circumstance does not counsel a different result. The fact that a regulator has alleged a broader swath of wrongful conduct, or additional defendants, generally has not stopped courts from staying discovery where there is "substantial overlap between the civil and criminal proceedings." *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 2-3 (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer et al.*, No. 22 Civ. 3089 (RA), ECF No. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case

included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that, whether the regulatory action is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 3. Here, that is unambiguously the case.

In sum, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman,* 15 Civ. 7057 (AJN), ECF No. 43, at 3.

### 2. *The Status of the Criminal Case*

The filing of the Indictment in the Criminal Case weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Thus, this factor also militates strongly in favor of a stay, and even more so given that the stay the Government presently seeks is limited only to the period through resolution of the motions to dismiss. Although a trial date in the Criminal Case has not

yet been set, there is likely to be additional information available in the coming weeks and months about the status of the Criminal Case.

### 3. The Potential Prejudice to the Parties

No prejudice will result from the discovery stay requested by the Government. The FTC has indicated that it takes no position as to the Government's motion. The FTC will not be adversely impacted by a discovery stay, as such a stay will allow the FTC to conserve its resources (as well as the resources of the Court) while the motions to dismiss are pending. At a minimum, therefore, there can be no argument that there would be prejudice to the plaintiff by staying this action. *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

With respect to Mashinsky, who is also a defendant in the Criminal Case and consents to the requested stay, granting a stay of the civil case to permit the Criminal Case to proceed to its conclusion would actually inure to his benefit, since granting a stay of the civil case would, for now, obviate forcing him to make the choice between being prejudiced in the civil case by the assertion of his Fifth Amendment rights or being prejudiced in the Criminal Case if he waived those rights. Even the temporally limited discovery stay the Government presently seeks would benefit Mashinsky, as it would allow him, like the FTC, to conserve resources and avoid needless duplicative litigation of materially identical issues in two separate proceedings. Moreover, the two defendants not named in the Indictment – both of whom consent to the motion for a discovery stay – have similar interests at stake. In particular, these defendants will avoid, at least for the time being, the need to be deposed, which may conserve resources and ultimately inure to their benefit.

In sum, no party will suffer any unfair prejudice from the proposed stay of discovery.

### 4. The Interests of the Court

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors staying this action.

Moreover, the stay through the resolution of motions to dismiss presently sought by the Government likewise has the potential to streamline issues in this matter. Should the Court grant any defendant's motion to dismiss in whole or in part, that would narrow the number of defendants and likely the scope of discovery, and potentially eliminate disagreements about the scope of a broader discovery stay during the pendency of the Criminal Case, thus obviating the need for contested litigation. Of course, if the Court denies the motions to dismiss, the matters to be decided by the Court thereafter may still be narrowed as a result of the proceedings in the Criminal Case, as noted above.

### 5. The Public Interest

Finally, the Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery

13

— restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*,

14

*id.* (granting stay sought by Government); *Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (in granting government's motion to stay, noting, "[t]he principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in Criminal Matters"); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))); *see also SEC v. Doody*, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002) (granting partial stay of discovery in civil case where only one of the civil defendants was criminally charged, over the objection of the non-charged civil defendant, because proceeding with civil discovery would "almost surely" give the charged defendant "access to information to which he would not be entitled in his defense of the criminal case")

Indeed, the rationale underlying a stay is even stronger in a case where a defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very civil discovery process he seeks to use affirmatively. *See, e.g.*, *SEC v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that

15

"[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which the defendants would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the FTC, while the FTC would be unable to use any of these discovery mechanisms to obtain information from the defendants because of their assertion of his Fifth Amendment rights.  Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses.  *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

**CONCLUSION**

For these reasons, the Government respectfully requests that its application to intervene and for a complete stay of discovery through the Court's resolution of the motions to dismiss. A proposed stay order is annexed hereto as Exhibit B.

Dated: New York, New York
September 11, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Allison Nichols
Adam Hobson
Noah Solowiejczyk
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2366