UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

CELSIUS NETWORK INC., a corporation,
CELSIUS NETWORK LLC, a limited liability
company, CELSIUS NETWORKS LENDING
LLC, a limited liability company, CELSIUS
LENDING LLC, a limited liability company,
CELSIUS KEYFI LLC, a limited liability
company, CELSIUS MINING LLC, a limited
liability company, CELSIUS US HOLDING
LLC, a limited liability company; CELSIUS
US LLC, a limited liability company;
CELSIUS MANAGEMENT CORP., a
corporation;

ALEXANDER MASHINSKY, individually
and as an officer of Celsius Network Inc.,
Celsius Network LLC, Celsius Networks
Lending LLC, Celsius Lending LLC, Celsius
KeyFi LLC, Celsius Mining LLC, and Celsius
US Holding LLC;
SHLOMI DANIEL LEON, individually and as
an officer of Celsius Network Inc., Celsius
Network LLC, Celsius Networks Lending
LLC, Celsius Lending LLC, Celsius KeyFi
LLC, Celsius Mining LLC, Celsius US
Holding LLC; and

HANOCH "NUKE" GOLDSTEIN,
individually and as an officer of Celsius
Network LLC and Celsius Lending LLC,

    Defendants.

**ORAL ARGUMENT REQUESTED**

Case No. 1: 23-cv-6009

**MEMORANDUM OF LAW IN SUPPORT OF HANOCH "NUKE" GOLDSTEIN'S
MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

I.   Legal Standard ............................................................................................................ 4

II.  Counts I–III of the Complaint Fail to Satisfy the Pleading Requirements Under
     Federal Rules of Civil Procedure 8 and 9(b) and Should Be Dismissed ......................... 5

     A.   The Complaint Fails to Meet the Basic Pleading Requirements of Rule 8 .......... 7

          1.   The Complaint Relies Upon Improper "Group Pleading"
               Allegations ........................................................................................... 7

          2.   Allegations Against Other Defendants Cannot Be Attributed to
               Goldstein .............................................................................................. 8

          3.   The Remaining Factual Allegations Against Goldstein Are
               Insufficient ........................................................................................... 9

          4.   Count III Also Must Be Dismissed Because It Does Not Allege a
               Violation of the GLBA .......................................................................... 16

     B.   The Complaint Fails to Meet the Heightened Pleading Standard of Rule
          9(b) ......................................................................................................... 17

III. The Complaint Should Be Dismissed Because the FTC Is Not Entitled to Relief
     on Any of Its Claims ................................................................................................. 18

     A.   The FTC Cannot Obtain Relief for Counts I–III Under Section 19(b) ............... 19

          1.   Counts I and II Must Be Dismissed to the Extent They Seek Relief
               Under  Section 19(b) Because Neither Count Alleges a Violation
               of an FTC Rule .................................................................................... 19

          2.   Count III Similarly Does Not Allege a Violation of an FTC Rule ......... 19

     B.   The FTC Is Not Entitled To Injunctive Relief Under Section 13(b) .................. 22

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeroglide Corp. v. Zeh*,
    301 F.2d 420 (2d Cir. 1962) ................................................................................................10

*AMG Capital Mgmt., LLC v. FTC*,
    141 S. Ct. 1341 (2021) ..........................................................................................1, 20, 22

*Appalachian Enters., Inc. v. ePayment Sols. Ltd.*,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ......................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................3, 5, 7

*Atlantic City Elec. Co. v. FERC*,
    295 F.3d 1 (D.C. Cir. 2002) ..............................................................................................21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................5, 7

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ..................................................................................................5

*Casper Sleep, Inc. v. Nectar Brand LLC*,
    2020 WL 5659581 (S.D.N.Y. Sep. 23, 2020) ..................................................................15

*Danfoss Power Sols. (US) Co. v. Maddux*,
    2018 WL 6410240 (S.D.N.Y. Dec. 6, 2018) ....................................................................18

*In re Enron Corp.*,
    379 B.R. 425 (S.D.N.Y. 2007) .........................................................................................10

*FTC v. AdvoCare Int'l, L.P.*,
    2020 WL 6741968 (E.D. Tex. Nov. 16, 2020) ......................................................23, 24, 25

*FTC v. Amy Travel Serv., Inc.*,
    875 F.2d 564 (7th Cir. 1989) ..............................................................................................9

*FTC v. Credit Bureau Ctr., LLC*,
    937 F.3d 764 (7th Cir. 2019) ............................................................................................19

*FTC v. Innovative Mktg., Inc.*,
    654 F. Supp. 2d 378 (D. Md. 2009) ..................................................................................13

*FTC v. Moses*,
  913 F.3d 297 (2d Cir. 2019)................................................................................6, 9

*FTC v. Shire Viropharma, Inc.*,
  917 F.3d 147 (3d Cir. 2019)..............................................................................22, 23

*FTC v. Sterling Drug, Inc.*,
  317 F.2d 669 (2d Cir. 1963)...................................................................................15

*FTC v. Swish Mktg.*,
  2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ..........................................................18

*FTC v. Verity Int'l, Ltd.*,
  443 F.3d 48 (2d Cir. 2006).......................................................................................6

*FTC v. Wellness Support Network, Inc.*,
  2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) .......................................................9, 11

*Good Hill Partners L.P. ex rel. Good Hill Master Fund, L.P. v. WM Asset Holdings Corp.*,
  583 F. Supp. 2d 517 (S.D.N.Y. 2008).....................................................................15

*Guzman v. Hecht*,
  2019 WL 1315888 (S.D.N.Y. Mar. 22, 2019) ........................................................4, 5

*Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.*,
  408 F. Supp. 1251 (S.D.N.Y. 1976).......................................................................8, 9

*Hyland v. Navient Corp.*,
  2019 WL 2918238 (S.D.N.Y. July 8, 2019) ..........................................................5, 17

*Jones v. Nat'l Commc'n & Surveillance Networks*,
  409 F. Supp. 2d 456 (S.D.N.Y. 2006)........................................................................8

*Mahoney v. Endo Health Sols., Inc.*,
  2016 WL 3951185 (S.D.N.Y. July 20, 2016) ............................................................8

*Meghrig v. KFC Western, Inc.*,
  516 U.S. 479 (1996)................................................................................................20

*Olson v. Major League Baseball*,
  29 F.4th 59 (2d Cir. 2022) .....................................................................................17

*Phelps Dodge Ref. Corp. v. FTC*,
  139 F.2d 393 (2d Cir. 1943).....................................................................................10

*Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC*,
  2007 WL 2044656 (S.D.N.Y. July 17, 2007) ............................................................8

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..................................................................................17

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) .........................................................8

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)....................................................................................................3

*United States v. Rodriguez-Cabrera*,
    35 F. Supp. 2d 181 (D.P.R. 1999)..........................................................................13

*US Dominion, Inc. v. Byrne*,
    600 F. Supp. 3d 24 (D.D.C. 2022).........................................................................14

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022)...........................................................................................20

**Statutes**

15 U.S.C. § 53........................................................................................................18, 22

15 U.S.C. § 57b..................................................................................................2, 18, 19

15 U.S.C. § 1692l.................................................................................................19, 20

15 U.S.C. § 6821...............................................................................................5, 6, 16

15 U.S.C. § 6822.........................................................................................................20

15 U.S.C. § 8404.........................................................................................................21

47 U.S.C. § 230...........................................................................................................14

COVID-19 Consumer Protection Act, Pub. L. No. 116-260, Title XIV, § 1401 .........................21

**Other Authorities**

H.R. Conf. Rep. No. 106-434 (1999)...........................................................................16

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Hanoch "Nuke" Goldstein ("Goldstein") respectfully submits this memorandum of law in support of his Motion to Dismiss the Complaint filed by the Federal Trade Commission ("FTC").

## PRELIMINARY STATEMENT

The FTC's lawsuit against Goldstein is based on nothing more than conclusory, guilt-by-association allegations that have no place in this Court.  The FTC advances damaging charges against Goldstein, the former Chief Technology Officer of Celsius Networks ("Celsius")—claiming that he knowingly participated in a scheme to defraud Celsius's consumers out of billions of dollars of cryptocurrency—but fails to allege any actionable and knowing conduct specific to *Goldstein* to support those charges.  Instead, the FTC's complaint largely describes allegations of misconduct by others at Celsius, and then relies upon perfunctory and boilerplate allegations that Goldstein was part of their scheme.  Moreover, the FTC's claims are meritless because the FTC cannot obtain any relief—neither monetary nor injunctive—against Goldstein.  Indeed, in a last-ditch effort to obtain monetary relief after the Supreme Court's clear ruling limiting the FTC's authority in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021), the FTC advances an untested and clearly erroneous reading of a data privacy statute—the Gramm-Leach-Bliley Act ("GLBA")—that does not apply here, and that no court has ever endorsed.  The FTC's complaint fails to state any plausible claim against Goldstein.  It should be dismissed with prejudice.

More specifically, each of the three counts in the Complaint fails as a matter of law:

*First*, the Complaint fails to meet the basic pleading requirements of Rule 8 because it contains almost no specific factual allegations of knowing wrongdoing by Goldstein.  Instead, the Complaint impermissibly relies upon group pleading that lumps Goldstein generically in with the other defendants and improperly attempts to attribute the misconduct of others to Goldstein.  Celsius was a company that employed over 800 people and had over one dozen officers before its

demise (and ongoing bankruptcy).  It is black-letter law that the FTC cannot assert claims against officers or employees based upon alleged wrongdoing of a company unless they allege the officer's **direct and knowing** involvement in the wrongdoing.  Yet, the FTC does not—and cannot—allege as much against Goldstein.  The few factual allegations it includes specifically tied to Goldstein are legally insufficient.  For example, the FTC relies heavily on a retweet by Goldstein of a blog post that Celsius issued (*e.g.*, Compl. ¶ 82), but that retweet is inactionable as a matter of law and fails to show Goldstein's knowledge of misrepresentations.  The Complaint fails to satisfy the most basic pleading requirements, and fails even further in meeting the heightened pleading requirements of Rule 9(b), which apply given the FTC's claims sound in fraud.

*Second*, the Complaint fails to provide a basis upon which the requested relief may be granted.  To seek monetary relief in federal court, Section 19(a)(1) of the Federal Trade Commission Act ("FTCA") requires the FTC to allege that Goldstein violated an FTC trade regulation rule.  The FTC does not identify any such rule underlying Counts I and II of the Complaint.  And Count III fares no better.  Not only is it not based on a violation of an FTC rule, it asserts a violation of the GLBA, a privacy statute that the FTC distorts and that no Court has ever held should be interpreted as an FTC rule.  Similarly, the FTC fails to include sufficient allegations supporting its request for injunctive relief.  Under the FTCA, to obtain such relief, the FTC must allege facts sufficient to show that Goldstein "is violating," or is "about to violate," the law.  The Complaint's allegations prove otherwise: that there is no risk of such future violations by Goldstein.  Not only is Goldstein no longer employed by Celsius—which is in bankruptcy and no longer accepting customer deposits—the alleged misconduct by Celsius ceased more than a year ago and has been permanently barred by the FTC's settlement with Celsius.  As such, the FTC is not entitled to injunctive relief under Section 13(b).  With no relief available to pursue,

each of the FTC's claims must be dismissed.  *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102–04 (1998) (Article III "case or controversy" requires showing of redressability).

**BACKGROUND**[1]

Before it declared bankruptcy, Celsius was a cryptocurrency-based finance platform that offered various financial services to its customers.  Specifically, Celsius allowed its customers to transfer their digital assets to the platform to enable them to engage in various financial services, including earning interest, or "rewards," on cryptocurrency deposits, taking loans secured by their deposits, and storing their digital assets on the platform.  Compl. ¶ 30.  Celsius also provided customers with the ability to conduct other transactions, including buying and transferring certain cryptocurrencies.  *Id.*

The operation of Celsius's business was led by its Chief Executive Officer ("CEO"), co-defendant Alex Mashinsky.  *Id.* ¶ 20.  Mashinsky was responsible for leading almost all of the acts of misconduct alleged in the Complaint, including conducting weekly marketing and advertising videos called "Ask Mashinsky Anything" ("AMAs").  *Id.* ¶ 32.  It was during these AMAs that Mashinsky personally made most of the alleged misstatements cited in the Complaint relating to the benefits of using Celsius's services and the safety of consumer funds on the platform.  *Id.* ¶ 33. Critically, the FTC acknowledges that Mashinsky made many of these alleged misstatements "independently," meaning *on his own and without the involvement of others.  Id.* ¶ 31.  Celsius and Mashinsky recorded 179 AMA videos, which were broadcast on social media.  *Id.* ¶ 32.  Daniel Leon was Celsius's Chief Operating Officer ("COO") and Chief Strategy Officer ("CSO"), and oversaw "the crafting of advertisements about Celsius's products and services . . . ."  *Id.* ¶ 21.

---

[1] The factual allegations described below are taken from the FTC's complaint and materials incorporated by reference therein, and are taken as true solely for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In contrast, Goldstein was Celsius's CTO, *id.* ¶ 22, and was responsible for maintaining the technology, safety, and continuous operation of Celsius's platform and technological systems. *Id.* ¶ 25 ("Cryptocurrencies are digital assets that exist on a technology called a blockchain, a type of electronic ledger.").  Goldstein was not involved in leading or otherwise running the financial business operations of Celsius that are at the heart of the alleged misconduct.  For example, while both Mashinsky and Leon made the decision on June 12, 2022 "to freeze withdrawals, swaps, and transfers from the Celsius platform" (the "Freeze"), Goldstein had no involvement in that decision. *Id.* ¶¶ 20, 21.  Nor was Goldstein involved in drafting the marketing materials that the FTC challenges in this case.  *Id.* ¶¶ 20 (Mashinsky "had a heavy hand in Celsius's marketing efforts"), 44 ("Leon helped craft a blog post . . . ."), 82 ("Leon helped craft" the "Damn the torpedoes" post).

Far from engaging in any knowing wrongdoing, Goldstein's conduct proves that he did not know of the imminent freeze of accounts at the heart of the FTC's complaint.  The Complaint's only allegation supporting Goldstein's knowledge is a grossly cherry-picked statement in a Board presentation that the FTC has not alleged Goldstein heard, and that in any event, does not mention a potential freeze on accounts.  Moreover, the Complaint alleges that both Mashinsky and Leon— while presumably in possession of information about Celsius's financial condition—profited from specific withdrawals of millions of dollars' worth of cryptocurrency from the platform shortly before the freeze.  *Id.* ¶ 91.  In contrast, other than a conclusory allegation devoid of facts, the Complaint does not (and cannot) allege that Goldstein carried out any suspicious transactions.

## ARGUMENT

### I.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Guzman v. Hecht*, 2019 WL

1315888, at *3 (S.D.N.Y. Mar. 22, 2019) (Cote, J.). "A claim to relief is plausible when the factual allegations in a complaint allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hyland v. Navient Corp.*, 2019 WL 2918238, at *4 (S.D.N.Y. July 8, 2019) (Cote, J.) (internal quotation marks omitted). "Assessing plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (cleaned up).

However, this Court "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement." *Id.* (cleaned up). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, this Court "must refer to a complaint's 'factual context' to discern whether to accept [its] conclusory statements," *Calcano*, 36 F.4th at 75, and whether the complaint "raise[s] a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.[2]

## II.   Counts I–III of the Complaint Fail to Satisfy the Pleading Requirements Under Federal Rules of Civil Procedure 8 and 9(b) and Should Be Dismissed

The FTC alleges three claims against Goldstein—the first two for deception and unfair misappropriation of cryptocurrency deposits under Section 5(a) of the FTCA, and the third for a violation of the GLBA, 15 U.S.C. § 6821. To support its first claim, the FTC alleges that Defendants made five types of misstatements: "(1) Celsius did not make unsecured loans; (2) Celsius maintained sufficient liquid crypto assets to satisfy its consumer obligations; (3) consumers could withdraw the cryptocurrency they deposited at any time; (4) Celsius maintained

---

[2] A complaint is deemed to include any statements or documents incorporated by reference or integral to the complaint; the court may also take judicial notice of any relevant matters of public record. *Guzman*, 2019 WL 1315888, at *3.

a $750 million insurance policy for consumer deposits; and (5) consumers could earn 'up to 17% APY' and 'up to 18.63% APY.'" Compl. ¶¶ 33, 98. To support its second claim, the FTC alleges perfunctorily that Defendants "misappropriated consumers' cryptocurrency deposits." Compl. ¶ 101.

"To prove a deceptive act or practice under § 5(a)(1) [of the FTCA], the FTC must show three elements: '[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3] the representation, omission, or practice is material.'" *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006).

An individual may be held liable under Section 5(a) for corporate practices only "if the FTC first can prove the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted." *FTC v. Moses*, 913 F.3d 297, 306–07 (2d Cir. 2019). Then, "[o]nce corporate liability is established, the FTC must show that the individual defendants ***participated directly*** in the practices or acts or ***had authority to control them***," and that "the defendants had or should have ***had knowledge or awareness*** of the misrepresentations." *Id.* at 307 (internal quotations omitted) (emphases added).

As for its third claim, Section 521 of the GLBA prohibits any person from "obtain[ing] . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C. § 6821(a)(2). Thus, to plead a GLBA violation, the FTC must adequately allege that (1) the defendant made a false, fictitious, or fraudulent statement, (2) to a customer of a financial institution, and (3) in order to obtain customer information of a financial institution. *Id.*

As set forth below, for multiple reasons, the FTC's claims fail from the start. The Complaint fails to satisfy even basic the pleading requirements under Rule 8, let alone Rule 9(b)'s

requirement that fraud allegations be pleaded with particularity.  Almost none of the factual allegations of the Complaint even mention Goldstein, and those that do are so conclusory and devoid of detail that they should not be credited and do not state a valid claim against him. Accordingly, Counts I–III should be dismissed with prejudice.

### A.        The Complaint Fails to Meet the Basic Pleading Requirements of Rule 8

Under Rule 8, a complaint must set forth allegations that give a defendant "fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 554–55.  While the rule does not require "detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (cleaned up).

The Complaint is almost entirely devoid of specific allegations to support the claims against Goldstein.  Aside from identifying Goldstein, the Complaint briefly references him by name in only 8 paragraphs.  *See* Compl. ¶¶ 31–32, 44, 75, 79, 82, 91, 94.  The Complaint instead proceeds primarily by relying upon generalized "group pleading," and by attempting to attribute the conduct of others to Goldstein.  These stratagems cannot support claims against Goldstein. The few remaining factual allegations that are specifically tied to Goldstein are not enough "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

#### 1.        *The Complaint Relies Upon Improper "Group Pleading" Allegations*

Dismissal is proper where, as here, a Complaint relies upon allegations that "lump all the defendants together and fail to distinguish their conduct" because such group pleading "fail[s] to give adequate notice to the [] defendants as to what they did wrong."  *Appalachian Enters., Inc. v.*

*ePayment Sols. Ltd.*, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004).[3]  Over and over again, the Complaint improperly lumps the corporate and individual defendants together, generically stating that the alleged conduct was undertaken by "Defendants."[4]  These allegations do not distinguish in any way between the defendants, nor do they identify what particular actions Goldstein purportedly took.  This "shotgun pleading style," *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4–5 (C.D. Cal. June 30, 2010), violates one of the core purposes of Rule 8: "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Mahoney,* 2016 WL 3951185, at *3 (cleaned up).  Goldstein should not have to bear the "unjustified burden . . . [of being] forced to select the relevant material from a mass of verbiage." *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 464 (S.D.N.Y. 2006) (internal quotation marks omitted).

### 2. *Allegations Against Other Defendants Cannot Be Attributed to Goldstein*

The Complaint advances another improper pleading technique—expressly or impliedly attributing to Goldstein conduct and statements made by other individual defendants.  For example, the Complaint hopes to tarnish Goldstein by citing to alleged misstatements made by Mashinsky at "a 2021 AMA, accompanied by Mr. Goldstein."  Compl. ¶ 31.  The Complaint also alleges that Mashinsky, Leon, and Goldstein "withdrew significant sums of crypto from Celsius," but fails to allege a single withdrawal made by Goldstein, despite including detailed allegations of withdrawals by the other two defendants.  *See* Compl. ¶ 91.  Goldstein simply cannot be held liable for the actions of the other individual or corporate defendants.  *See*, *e.g.*, *Harlem River Consumers*

---

[3] *See also Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *3 (S.D.N.Y. July 20, 2016) (Cote, J.); *Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC*, 2007 WL 2044656, at *9 n.7 (S.D.N.Y. July 17, 2007) (Cote, J.).

[4] *See, e.g.*, Compl. ¶¶ 3–6, 23, 24, 31–34, 42–44, 46, 47, 49-51, 53, 55, 57-60, 63-66, 71, 74, 76, 80–82, 85, 87, 88, 92, 94, 98, 101–103, 110–114.

*Co-op., Inc. v. Associated Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) (holding that a corporate official "is not liable for the illegal actions of others in the corporation" unless "he knowingly participates in such actions").  Thus, any allegations concerning the actions taken by Mashinsky or Leon should not be considered in assessing the sufficiency of the claims against Goldstein.

        3.     *The Remaining Factual Allegations Against Goldstein Are Insufficient*

The crux of the FTC's lawsuit concerns misstatements about certain of Celsius's alleged financial business, including the interest earned by consumers on deposits, and reserves held by Celsius to secure the deposits.  To assert Goldstein's liability under either the FTCA or the GLBA, the Complaint must allege that he participated directly in the misrepresentations or had authority to control them, and that he knew or should have known about them.  *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989).  It is not enough to allege that Goldstein was a high level employee at the company.  *FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011) (mere status as a corporate officer insufficient under Section 5(a)); *Associated Grocers*, 408 F. Supp. 2d at 1271.  The Complaint fails on both requirements.

As to Goldstein in particular, the Complaint alleges four specific acts that allegedly give rise to his personal liability.  Considered separately or together, none of these allegations adequately alleges facts supporting Goldstein's direct participation in the alleged violations, that Goldstein had authority to control misrepresentations, or that he had or should have had knowledge of the misrepresentations.  *Moses*, 913 F.3d at 306.

        a)     <u>Goldstein's membership on Celsius committees.</u>

The Complaint alleges that Goldstein was an executive and co-founder of Celsius, *see* Compl. ¶ 22, but other than conclusory statements and boilerplate allegations, *e.g.*, *id.* ¶ 22, the

Complaint does not contain any factual allegations that Goldstein was actively and knowingly involved in the allegedly problematic parts of Celsius's business.  The Complaint relies heavily on Goldstein's status as CTO, but that does not automatically give rise to liability.  While the court can consider the "duties of an officer" where adequately alleged, the applicable duties must cover the allegations of misconduct because otherwise, every officer of the corporation would be liable under Section 5(a).  The law of this Circuit, however, is clear that corporate officers are not personally liable for the actions of the corporation simply by virtue of their status as officers.  *See Phelps Dodge Ref. Corp. v. FTC*, 139 F.2d 393, 397 (2d Cir. 1943) (holding that an officer must personally participate in corporate torts to be held liable); *Aeroglide Corp. v. Zeh*, 301 F.2d 420, 422 (2d Cir. 1962) (same).

Moreover, the allegation that Goldstein was a member of the Executive and Risk Committees does not support that he directly participated in the misrepresentations, let alone that he had knowledge of the alleged misrepresentations.  For example, the Complaint does not allege Goldstein's role within these committees or any actions that he took with respect to the management of Celsius's business.  To the contrary, Goldstein's position as CTO supports the opposite inference: that he was responsible for researching, developing, and maintaining a technological platform capable of securely accepting, storing, and transferring cryptocurrency.  Goldstein's responsibilities thus stand in stark contrast to those of Mashinsky, who was the CEO, and Leon, who was the COO and CSO of the company.  Indeed, Goldstein was just one of over one dozen officers at the company.  *See In re Celsius Network LLC*, No. 22-10964, ECF No. 23 (Bankr. S.D.N.Y. July 14, 2022), Ex. K at 56.[5]  The Complaint fails to allege specific acts that

---

[5] The court can take judicial notice of court filings in other related matters. *See In re Enron Corp.*, 379 B.R. 425, 431 n. 18 (S.D.N.Y. 2007).

demonstrate that Goldstein directly participated in the alleged wrongdoing through his committee membership.  *See Wellness Support Network*, 2011 WL 1303419, at *11.

In addition, the allegation that Goldstein—like dozens of other employees—was a member of various executive committees does not support that he knew or should have known about any of the misstatements.  The Complaint does not allege that he attended any meetings when the alleged misrepresentations were discussed, exposed, or advanced, or that he was aware of any such discussions.  Moreover, all the alleged misrepresentations concern financial matters, *see* Compl. ¶ 33, but the Complaint includes no allegations of Goldstein's knowledge of finance, and these matters were well outside his everyday duties and responsibilities as CTO.

The Complaint attempts to overcome this lacuna with a conclusory allegation that by May 2022, "Mr. Mashinsky, Mr. Leon, and Mr. Goldstein[] were aware that Celsius's 'capital sits near zero' and that Celsius was having trouble satisfying customer withdrawal requests."  Compl. ¶ 75. The Complaint includes no allegation of when and how Goldstein allegedly learned this information.  For good reason—any such allegation would be demonstrably false.  The alleged misstatement that "capital [currently] sits near zero" is cherry picked from a May 2022 Board presentation that is 304 pages long, says nothing about any imminent bankruptcy or financial distress, and instead, repeatedly paints a rosy picture of the company's financial projections and future.[6]  *See* Weitzman Decl. Ex. 1 at 75 (discussing the plan to reach profitability in 2023); *id.* at 86 ("Celsius expected to be profitable starting in September . . . Significant earnings power in the Celsius Business Model"); *id.* at 102 ("we have a clear path to build up our capital position"); *id.* at 103 ("By early- to mid-2023, we intend to be able to boast IFRS capital levels of $1.5 - 2.0

---

[6] Because this Board presentation was relied upon in the Complaint, it is deemed to be incorporated by reference, and is attached as Ex. 1 to the Weitzman Declaration.

billion."); *id.* at 166 ("Potential Earnings Stabilization Strategy").  Even the portion the FTC quotes

is distorted.  Far from demonstrating imminent financial distress, the full quote from the slide itself

shows a "clear path" to financial success:

> Although our capital currently sits near zero - we have a clear path to build up our capital position

(Ex. 1 at 86, 102); *see also id.* at 99 ("Although our capital levels currently near zero, four part

plan exists to rebuild capital").

 In any event, the FTC does not even allege that Goldstein—who was not a member of the

Celsius Board of Directors—attended or heard the portion of the Board presentation at which these

particular slides (Slides 86 and 102) were presented (he did not).  The portion of the slide deck

that Goldstein himself presented (Slides 185–204) reflects no knowledge or awareness of financial

distress.  The Court should reject the FTC's attempt to manufacture Goldstein's knowledge of

misstatements by others through cherry picking.

   b) <u>Goldstein's involvement in a limited number of advertising videos.</u>

 The allegation that Goldstein appeared in certain advertising videos where others made

alleged misrepresentations, Compl. ¶¶ 22, 32, 44, neither supports his active involvement in those

misrepresentations nor his knowledge that the statements were false.  The Complaint contains no

allegations, for example, that Goldstein made his own misrepresentations, or that he verbally

commented on the statements of others.

 The best the FTC can muster is a single allegation that Goldstein "nodded in agreement"

when Mashinsky said that "there is no safer place to give your coins to loan" than Celsius.  Compl.

¶ 44.  The FTC's attempt to read Goldstein's mind is contradicted by the record, completely

speculative, and should be rejected.  Indeed, a review of the video (incorporated by reference in

the Complaint) reveals Goldstein did *not* nod in agreement when Mashinsky made the statement

about the safety of Celsius. Rather, his head was still when the statement was made.[7] Weitzman Decl. Ex. 2 (at 1:08:40). The FTC's suggestion that Goldstein's slight head movements showed his adoption of a statement made by Mashinsky is speculative and defies common sense. *United States v. Rodriguez-Cabrera*, 35 F. Supp. 2d 181, 185 (D.P.R. 1999) (holding that nodding along with a statement "is ambiguous and is not sufficiently reliable to be admitted into evidence as a statement" because "there are many equally plausible explanations for [a person's] nod"). Even if Goldstein had nodded, it would be meaningless given that Goldstein made such head movements at various times throughout the AMA, supporting an inference that he at most was listening to the discussion, not adopting any particular statements or misrepresentations by Mashinsky. Thus, Goldstein's participation in an AMA does nothing to buttress the deficient complaint.

Nor does the allegation that Goldstein appeared in other videos suffice to demonstrate knowledge of the falsity of Mashinsky's misstatements. If mere presence were enough, every person who appeared in AMAs with Mashinsky—and there were dozens—could be charged by the FTC. That clearly is not the law. *See FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388 n.3 (D. Md. 2009) (FTC must plead a factual context from which the court is able to infer that the corporate officer "was aware of, and complicit in, the Enterprise's unlawful conduct.").

c)    Goldstein's use of social media to promote Celsius.

The FTC alleges that Goldstein used his personal social media accounts *generally* to promote Celsius's products and services, Compl. ¶¶ 32, 79, 82, but that does not show direct participation in specific misrepresentations, and in any event, none of the tweets are actionable.

---

[7] While Goldstein does appear to react to another statement made by Mashinsky about Celsius's balance sheet, it defies imagination to describe his reaction as a nod, let alone one made to express agreement. Weitzman Decl. Ex. 2.

*First*, the Complaint alleges that Goldstein retweeted an allegedly misleading June 7, 2022 blog post from Celsius denying "issues meeting withdrawal requests."  Compl. ¶ 82.  The Complaint does not allege that Goldstein was involved in the drafting or decision to issue this post.[8]  *Id.*  Moreover, the Complaint contains no factual allegations that this statement was false when made.  The fact that five days later, on June 12, 2022, Celsius instituted a Freeze and subsequently filed for Chapter 11 does not mean that it was not meeting withdrawals as of June 7, 2022.  Just the opposite is true: the reason the Freeze was instituted on June 12, 2022 is because the withdrawals from Celsius were draining the Company's liquidity, making Goldstein's retweet accurate.

Even if the blog post were false, Goldstein's retweet of it would be inactionable under Section 230 of the Communications Decency Act ("CDA").  That section provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  Courts have immunized retweets as long as they do not "substantively alter" the original content.  *See US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 36 (D.D.C. 2022).  The Complaint's attempt to impose liability on Goldstein for a retweet runs directly contrary to Congress's intention to immunize individuals for reposting or retweeting someone else's statements.

*Second*, the Complaint alleges that on May 28, 2022, Goldstein "tweeted that 'the Celsius community, company, and staff are strong as always. . . .'" but that, too, is not actionable.  Compl. ¶ 79.  This allegation is a classic opinion that does not contain objective representations of fact

---

[8] The Complaint incorporated the blog post by reference.  The FTC improperly cherry picks only a portion of the statement.  The full quote from the post is "Celsius has the reserves (and more than enough ETH) to meet obligations, *as dictated by our comprehensive liquidity risk management framework*."  *See* Weitzman Decl.  Ex. 3.  The Complaint alleges no facts supporting why that statement is false under that framework.

that may be disproven.  *See, e.g.*, *Casper Sleep, Inc. v. Nectar Brand LLC*, 2020 WL 5659581, at *6 (S.D.N.Y. Sep. 23, 2020) (statements that are "mere opinions [] are not actionable misrepresentations"); *Good Hill Partners L.P. ex rel. Good Hill Master Fund, L.P. v. WM Asset Holdings Corp.*, 583 F. Supp. 2d 517, 520 (S.D.N.Y. 2008) (finding that certain alleged misstatements were "opinions and not objective facts" and did not "serve as a basis for actionable misstatements").  Properly viewed in its entire context without any "disputatious dissection," *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963), Goldstein's tweet clearly was not about the financial health of the company, but was addressing a false claim on Celsius's algorithm to save on certain transaction fees.[9]  Goldstein's tweets are inactionable.

(d)      Goldstein's alleged withdrawals in April and May 2022.

Finally, the FTC attempts to buttress its allegations of knowledge by noting Goldstein's alleged withdrawals of cryptocurrency from the Celsius platform in the months leading up to the Freeze.  Notably, in stark contrast to its allegations against others, the Complaint omits any detail about Goldstein's transactions, for obvious reasons.[10]  *See* Compl. ¶ 91.  In any event, allegations of withdrawals over months does nothing to show Goldstein's knowledge of misrepresentations.  There is no allegation that Goldstein withdrew assets with knowledge that the financial health of the company was being misrepresented by others in April and May 2022.  Indeed, the allegations regarding Goldstein's knowledge in May do not suffice, for the reasons explained above.  Absent additional facts, the transactions do not support Goldstein's knowledge of misrepresentations.

---

[9] Cited in the Complaint, the tweet is incorporated by reference.  *See* Weitzman Decl. Ex. 4.

[10] Given that the FTC is aware of Mashinsky's and Leon's transactions, they would also know that Goldstein's last two transactions before the Freeze were *deposits* for more than $114,000, a fact conveniently omitted from the Complaint.  To this day, Goldstein holds several million dollars in cryptocurrencies on the Celsius platform and, unlike Mashinsky and Leon, did not withdraw millions of dollars of cryptocurrency prior to the Freeze.  *See* Weitzman Decl. Ex. 5 (Goldstein's publicly available creditor claims in the Celsius bankruptcy).

      4.     *Count III Also Must Be Dismissed Because It Does Not Allege a Violation of the GLBA*

Count III under the GLBA must also be dismissed because the FTC does not plead a viable claim under the GLBA.  The Complaint does not set forth factual allegations supporting that Goldstein made a false, fictitious, or fraudulent statement to a customer of a financial institution to obtain customer information for a financial institution.  15 U.S.C. § 6821(a)(2).  Count III does not allege any specific misconduct carried out by Goldstein at all, but instead improperly relies upon group pleading allegations concerning the actions of "defendants" generally.  Compl. ¶¶ 110–11.  Equally important, the Complaint contains no factual allegations whatsoever that Goldstein knowingly made any misstatements to—let alone communicated with—customers of a financial institution, or that he did so to fraudulently obtain the customer information of a financial institution.  The entirety of the FTC's allegations to support Count III is to parrot the wording of the statute, Compl. ¶¶ 110–13, which is insufficient under both Rules 8 and 9(b).

Moreover, the FTC seeks to apply the GLBA in a manner that is inconsistent with the statute's purpose.  Section 521 is entitled "Privacy protection for customer information of financial institutions."  It was enacted by Congress to punish scammers who trick either financial institutions or customers of financial institutions into revealing customers' financial information.[11]  Indeed, in the nearly twenty-five years since adoption of the GLBA, we have not found any court decision endorsing the FTC's use of Section 521 to enforce consumer protection claims based on unfair or

---

[11] *See* H.R. Conf. Rep. No. 106-434, at 173 (1999) ("The Senate bill contained provisions making it a Federal crime . . . [for] misrepresenting the identity of the person requesting the information or otherwise misleading an institution or customer into making unwitting disclosures of such [customer] information.").

deceptive marketing divorced from privacy scams.[12]   To the contrary, the FTC's suits under Section 521 of the GLBA have historically been brought only against scammers who unlawfully trick customers—or financial institutions—into unwittingly turning over the personal financial information.[13]   The FTC's attempt to use the GLBA as a general fraud statute should be rejected.

## B.   The Complaint Fails to Meet the Heightened Pleading Standard of Rule 9(b)

While the alleged violations of the FTCA and the GLBA are not formally stylized as fraud claims, Rule 9(b) nonetheless applies because they "sound in fraud."[14]   *See Hyland v. Navient Corp.*, 2019 WL 2918238, at *11–12 (S.D.N.Y. July 8, 2019) (Cote, J.) ("Claims that sound in fraud must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b).") (citing *United States ex rel. Polansky v. Pfizer, Inc.*, 822 F.3d 613, 617–18 (2d Cir. 2016)); *see also Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) ("Claims sounding in fraud must satisfy . . . Rule 9(b)."). Thus, even if a plaintiff does not bring formal fraud claims, Rule 9(b) will apply if the "wording and imputations of the complaint are classically associated with fraud . . . ." *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004). "[T]he rationale behind [this rule] rests on the

---

[12] The first time the FTC filed a GLBA case based on unfair marketing practices divorced from any privacy scam was *FTC v. RCG Advances, LLC*, No. 20-cv-4432 (S.D.N.Y. Jan. 5, 2022), which was a stipulated settlement with no litigation as to the scope of the GLBA.

[13] *See, e.g.*, *FTC v. Info. Search, Inc.*, No. 1:06-cv-01099, ECF No. 1 (D. Md. May 1, 2006); *FTC v. Guzzetta*, No. 1:01-cv-02335, ECF No. 1 (E.D.N.Y. Apr. 17, 2001); *FTC v. Garrett*, 4:01-cv-01255, ECF No. 4 (S.D. Tex. Apr. 17, 2001).

[14] For example, the FTC alleges that the defendants: "duped consumers . . . into transferring their cryptocurrency assets onto the Celsius platform" (Compl. ¶ 3); "falsely claimed" that business and individual loans were treated the same (*id.* ¶ 37); made false statements that Celsius maintained sufficient liquid reserves, when "in fact, Celsius did not" (*id.* ¶ 46); made false statements about customers' ability to withdraw their assets when, "[i]n fact, contrary to its promises," they could not (*id.* ¶ 52); made false statements that consumers' assets were insured when *"*in fact," they were not (*id.* ¶ 62); "misled consumers by marketing high yields on cryptocurrency deposits" (*id.* ¶ 63); used the above "misrepresentations . . . to entice consumers to hand over their financial information" (*id.* Heading II); falsely told consumers that Celsius was not taking legal ownership of their assets (*id.* ¶ 73); and "concealed [Celsius's] financial realities from consumers" (*id.* ¶ 76).

preference for substance over form: where a complaint alleges conduct which in effect amounts to fraud, defendants are entitled for policy reasons to the enhanced reliability and notice that accompany more detailed pleadings."  *FTC v. Swish Mktg.*, 2010 WL 653486, at *2 (N.D. Cal. Feb. 22, 2010) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)).

Accordingly, this Court should evaluate the Complaint's allegations under the heightened pleading standards of Rule 9(b).  That rule requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Danfoss Power Sols. (US) Co. v. Maddux*, 2018 WL 6410240, at *2 (S.D.N.Y. Dec. 6, 2018) (Cote, J.) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 94 (2d Cir. 2018)).  Because none of the claims meet the liberal pleading requirements of Rule 8, it necessarily follows that the Complaint does not meet the heightened pleading requirements of Rule 9(b).  Thus, for the reasons already explained, none of the specific allegations of misconduct by Goldstein—that he appeared in advertising videos or made certain social media posts—come close to alleging specific facts supporting why the statements were fraudulent at the time they were made.

## III.    The Complaint Should Be Dismissed Because the FTC Is Not Entitled to Relief on Any of Its Claims

In this case, the FTC chose not to pursue administrative cease and desist proceedings at the agency level, but instead chose to proceed with alleged violations of Section 5 of the FTCA by filing a civil action directly in federal court.  As a result, the FTC has two possible avenues to seek relief.  First, under Section 19(b) of the FTCA, the FTC can seek monetary relief, to include damages and restitution.  15 U.S.C. §§ 57b(a)(1), (b).  Second, under Section 13(b) of the FTCA, the FTC may seek preliminary and injunctive relief.  *Id.* § 53.  According to the Complaint, the FTC is seeking both kinds of relief for alleged violations of the FTCA.  *See* Compl. ¶ 1 & Prayer

for Relief.  The FTC has failed, however, to plead facts supporting that it is entitled to either relief.

Thus, the Complaint should be dismissed.

### A.    The FTC Cannot Obtain Relief for Counts I–III Under Section 19(b)

#### 1.    *Counts I and II Must Be Dismissed to the Extent They Seek Relief Under Section 19(b) Because Neither Count Alleges a Violation of an FTC Rule*

Section 19(a)(1) and (b) of the FTCA provides the FTC authority to file a lawsuit seeking

monetary damages "[i]f any person . . . *violates any rule* under this subchapter respecting unfair

or deceptive acts or practices . . . ."  15 U.S.C. § 57b(a)(1) (emphasis added).  Accordingly, for the

FTC to bring a civil claim under Section 19(a)(1) that seeks relief under Section 19(b), the FTC

must allege a violation of an applicable FTC trade regulation rule.  Neither Count I nor Count II,

however, contain any allegation that Goldstein violated an FTC rule.  Thus, any claim for monetary

relief under Counts I and II should be dismissed.  *See FTC v. Credit Bureau Ctr., LLC*, 937 F.3d

764, 771 (7th Cir. 2019) ("Once the Commission promulgates a rule, it can seek legal and equitable

remedies, including restitution, from violators.").

#### 2.    *Count III Similarly Does Not Allege a Violation of an FTC Rule*

Count III asserts a claim under the GLBA, enforced through Section 19(b) of the FTCA,

alleging that Goldstein "made false, fictitious, or fraudulent statements or representations to

customers of financial institutions to obtain or attempt to obtain customer information of a

financial institution."  Compl. ¶ 110; 15 U.S.C. § 1692l(a); 15 U.S.C. § 57b.  To seek monetary

relief under the GLBA, the FTC must, but does not, allege a violation of an applicable rule.

The FTC relies on a tortured reading of the GLBA to assert that it need not allege such a

rule violation.  Specifically, the FTC claims that, because the GLBA "empowers the FTC to

enforce Section 521 of the GLB[A] 'in the same manner and with the same power and authority

as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance

19

with such Act.'" Compl. ¶ 106 (citing 15 U.S.C. § 6822(a)).  The FTC in turn cites to the FDCPA, which states that the FTC may treat a violation of the statute "in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule."  15 U.S.C. § 1692l(a).  The FTC then claims that this provision governing enforcement under the FDCPA was imported into the GLBA, asserting that the FTC may enforce Section 521 of the GLBA in the same manner as if a violation of the GLBA were a violation of an FTC trade regulation rule.  Compl. ¶ 108.  The FTC is wrong as a matter of law.[15]

*First*, the plain language of the statute does not reference any clear intent by Congress to dispense with the requirement that the FTC allege a violation of an FTCA rule.  While Section 521 of the GLBA allows the FTC to enforce the GLBA "in the same manner and with the same power and authority" as under the FDCPA, that provision says nothing about the legal requirements for the FTC to pursue a claim under the GLBA, and thus does not exempt the FTC from alleging a rule violation.  Such a limited, plain language reading of the GLBA is supported by the Supreme Court's rulings that administrative agencies have only those enforcement powers **expressly** granted by Congress.  *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487–88 (1996) (no authorization by implication).  As the Supreme Court has stated, given "both separation of powers principles and a practical understanding of legislative intent . . . the agency must point to 'clear congressional authorization' for the power it claims."  *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022).  The language in the GLBA adopting unspecified powers and authorities of the FDCPA do not provide the requisite "clear" authorization.

---

[15] The FTC is increasingly charging violations of the GLBA likely due to the Supreme Court's April 2021 ruling in *AMG Capital Mgmt., LLC v. FTC* limiting the FTC's authority to seek monetary relief.  141 S. Ct. 1341, 1348–49 (2021).

*Second*, had Congress intended to dispense with the requirement for the FTC to allege a rule violation, it certainly knew how to do so explicitly.  For example, the COVID-19 Consumer Protection Act ("CCPA"), Pub. L. No. 116-260, Title XIV, § 1401, contains a provision that describes the "Powers of the Federal Trade Commission" as follows: "[t]he [FTC] shall enforce subsection (b) in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTCA] were incorporated into and made a part of this Act."  *Id.* at § 1401(c)(2)(A).  Notably, separate and apart from the "Powers" of the FTC to enforce the CCPA, Congress included a provision entitled "Violation," which provided that "[a] violation of subsection (b) shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under [the FTCA]."  *Id.* at § 1401(c)(1).  Thus, Congress' clear intent was that the requirement to prove a rule violation was not part of the "manner" in which the CCPA was to be enforced, or a "power" that the FTC had to enforce the CCPA.  Similarly, the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404(a), reflects that Congress knows how to waive the rule violation requirement when it so desires, and that the "manner" and "powers" of the FTC are distinct from whether a statutory violation is to be treated as a rule violation.  Thus, had Congress wanted the FTC to be able to enforce the GLBA as a rule violation under the FTCA, it could have done so clearly, just as it did in the CCPA and ROSCA.  It did not, and the FTC cannot now arrogate that power for itself.  *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8–9 (D.C. Cir. 2002) ("Mere ambiguity in a statute is *not* evidence of congressional delegation of authority.") (cleaned up).

*Third*, there are strong policy reasons against reading out the requirement to allege a rule violation absent clear Congressional intent.  The requirement to allege a violation of a rule is not an empty hurdle, but rather is a fundamental protection of the due process rights of putative

defendants for what are otherwise amorphous "deceptive and unfair trade practices."  Indeed, this case amply demonstrates why such due process notice is essential.  As explained above, Section 521 of the GLBA relates to data privacy protections, and has no application as a general fraud statute to be used by the FTC to bring false marketing claims.  If the FTC seeks to apply the GLBA to a novel situation, such as a marketing fraud scheme, it must first promulgate rules under the GLBA, which would be subject to notice-and-comment rulemaking.

### B.    The FTC Is Not Entitled To Injunctive Relief Under Section 13(b)

To seek injunctive relief pursuant to Section 13(b), the FTC must plead that, at the time it files suit, a defendant "is violating" or is "about to violate" the law.  15 U.S.C. § 53(b)(1); *FTC v. Shire Viropharma, Inc.,* 917 F.3d 147, 159 (3d Cir. 2019).  Allegations of past conduct do not satisfy the FTC's pleading requirement.  *Shire*, 917 F.3d at 158–59 (finding the FTC is not permitted to "squeeze" past conduct into the "about to violate" requirement of § 13(b)).  The FTC's Complaint fails to plead that Goldstein is violating, or is about to violate, the law, and fails to demonstrate that it is entitled to injunctive relief under Section 13(b).  To the extent Counts I–III improperly seek injunctive relief, they must be dismissed.

The FTC fails to allege facts sufficient to establish that Mr. Goldstein "is violating," or is "about to violate," the law.  To the contrary, the FTC attempts to plead its Section 13(b) claim by relying on conclusory statements and purported misconduct that the Complaint itself confirms has ceased.  But the plain language of Section 13(b) does not give the FTC the power to police past conduct.  *See AMG Capital Mgmt.*, 141 S. Ct. at 1348 (Section 13(b) "focuses upon relief that is prospective, not retrospective.").  "Simply put, Section 13(b) does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation."  *Shire*, 917 F.3d at 156.

At the outset, Goldstein's employment at Celsius has ceased as of late April 2023.  *See* Compl. ¶ 22 (describing Goldstein's role at Celsius, stating in past tense that Goldstein *served* as the CTO until March 21, 2022 and *served* as President of Labs).  The Complaint contains no allegations that Goldstein continues to work at Celsius, has any involvement in Celsius's daily operations, or is even involved in the cryptocurrency industry at all.  The Complaint's few allegations involving Goldstein refer to past actions taken during his former employment at Celsius.  As such, the conclusory allegation that "Goldstein maintain[s] the means, ability, and incentive to resume [his] unlawful conduct" (Compl. ¶ 94) is baseless.  "A bare allegation by the FTC that 'we have reason to believe that the defendant is about to violate the law,' when unaccompanied by supporting factual allegations, clearly does not 'state a claim to [injunctive] relief that is plausible on its face.'"  *See FTC v. AdvoCare Int'l, L.P.*, 2020 WL 6741968, at *4 (E.D. Tex. Nov. 16, 2020) (quoting *Twombly*, 550 U.S. at 570); *see also Shire*, 917 F.3d at 156.

Moreover, the Complaint concedes that Celsius filed for bankruptcy nearly a year *before* it filed its Complaint.  Compl. ¶ 87.  The Complaint does not allege that Celsius continues to handle consumer assets or that it continues to offer its products for sale.  The Complaint's reference to alleged misrepresentations "still" contained on Celsius's website, Compl. ¶ 94, is disingenuous because the FTC is citing to Celsius's archived website and Celsius has not offered financial services since its bankruptcy.  *See* Weitzman Decl. Ex. 6 (https://celsius.network/archived).  Moreover, Celsius no longer maintains an active website containing the cited statements or any promotions of its former products, and any promotional videos refer to a platform that is now defunct.  In fact, Celsius's current live website is entirely comprised of information about the Chapter 11 bankruptcy and states that "the products and services referenced [on the archived website] are not available at this time."  *See* Weitzman Decl. Ex. 7 (https://celsius.network/).

Furthermore, the settlement agreement entered into between the FTC and Celsius on July 13, 2023—the same date the FTC filed its Complaint—is equally fatal to any assertion that misconduct is ongoing or imminent.  Under the agreement, Celsius consented to an injunction that *permanently* bans it from "advertising, marketing, promoting, offering, or distributing or assisting [in those actions] of any product or service that can be used to deposit, exchange, invest, or withdraw assets, whether directly or through an intermediary."  Weitzman Decl. Ex. 8 (Stipulated Order for Permanent Injunction, Monetary Judgment and other Relief against Celsius, ECF No. 27 at § I).  The agreement further prohibits Celsius from making any misrepresentations about its products or services, enjoins Celsius from obtaining or attempting to obtain customer financial information through false representations, and requires Celsius to undergo compliance monitoring. *Id* at §§ II, III, XIII.  Where Section 13(b) requires the FTC to plead that alleged misconduct is ongoing or imminent, entering into such an agreement—which permanently bans the very conduct that underlies the FTC's Complaint—undoubtedly necessitates dismissal.[16]

*FTC v. AdvoCare Int'l, L.P.* is on point.  There, the FTC sought a permanent injunction against AdvoCare and several of its individual members by alleging that the defendants were "engaged" in violations of the FTCA.  2020 WL 6741968, at *1.  On the same date as the Complaint, however, the FTC entered into a settlement agreement with AdvoCare and several other defendants, but continued to seek a permanent injunction and other equitable relief against the individuals under Section 13(b).  *Id.* at *2–4.  The court dismissed the claims based in large part on the corporate settlement agreement: "even if the FTC had alleged ongoing or impending violations by [Defendants], ***such allegations are implausible*** because" among other things, "the

---

[16] *See also* Weitzman Decl. Ex. 9 (publicly available FTC settlement includes a permanent ban prohibiting Celsius from "offering, marketing, or promoting any product or service that could be used to deposit, exchange, invest, or withdraw any assets.").

sole business through which the [Defendants] allegedly undertook such actions [] had . . . entered into a comprehensive agreement to halt the [business'] unlawful activities, reform its business practices, and submit to government compliance monitoring." *Id*. at *5 (emphasis added).

Accordingly, any allegation that Goldstein or Celsius is currently violating or about to violate the FTCA is unsupported by fact and contradicted by the Complaint and the FTC's own actions. The FTC has failed to fill in any blanks on how the purported conduct is ongoing or imminent in light of its own concessions that the alleged misconduct has ceased, and the FTC has no authority to seek an injunction for Counts I–III based solely on past conduct.

## CONCLUSION

For the foregoing reasons, Goldstein respectfully requests that the Court dismiss the Complaint with prejudice.[17]

Dated: September 11, 2023

                           Respectfully submitted,

                           /s/     *Avi Weitzman*

Leo Tsao                              Avi Weitzman
PAUL HASTINGS LLP               PAUL HASTINGS LLP
2050 M Street NW                 200 Park Avenue
Washington, D.C. 20036          New York, NY 10166
Tel: 202-551-1910                Tel: (212) 318-6920
leotsao@paulhastings.com       aviweitzman@paulhastings.com

                 *Counsel for Defendant Hanoch "Nuke" Goldstein*

---

[17] This is not the FTC's first bite at this apple. Goldstein reviewed an earlier draft of the complaint, and informed the FTC that the complaint was totally devoid of facts supporting Goldstein's individual conduct. Instead of fixing those deficiencies, the FTC chose to proceed with the present Complaint. The Complaint therefore should be dismissed with prejudice.