**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

CELSIUS NETWORK INC., et al.,

      Defendants.

**Case No. 1:23-cv-6009-DLC**

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**
**MOTIONS TO DISMISS FILED BY DEFENDANTS GOLDSTEIN AND MASHINSKY**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS ................................................................................................................. 1

III.    LEGAL STANDARDS ....................................................................................... 3

    A.   Rule 12(b)(6) ............................................................................................. 3

    B.   Rule 8(a) .................................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 4

    A.   The FTC alleges sufficient facts to state its claims against Goldstein and Mashinksy under the FTC Act and GLB Act. ......................................... 5

        1.   The Complaint alleges violations of the FTC Act and GLB Act. ...................................................................................... 5

        2.   The FTC plausibly alleges that Goldstein and Mashinsky are liable for Celsius's FTC Act and GLB Act violations. ............................... 6

        3.   Goldstein's unsupported factual assertions are not a basis for dismissal. ................................................................................ 14

    B.   Rule 9(b) does not apply to the FTC Claims and, even if it did, the FTC's Complaint satisfies the heightened pleading standard. ......................... 15

    C.   The FTC has a legal basis to seek both monetary and injunctive relief. ....................................................................................................... 16

        1.   Relief is available for GLB Act violations under Section 19. ................. 16

        2.   Injunctive relief is available under Section 13(b). .................................. 19

V.      CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Aeroglide Corp. v. Zeh*,
  301 F.2d 420 (2d Cir. 1962) .................................................................. 13

*Anderson News, LLC v. American Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) .................................................................... 3

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014) ....................................................... 4

*Appalachian Enterprises, Inc. v. ePayment Solutons, Ltd.*,
  2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..................................... 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 3

*Atlantic City Elec. Co. v. FERC*,
  295 F.3d 1 (D.C. Cir. 2002) ................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 3

*Bensch v. Est. of Umar*,
  2 F.4th 70 (2d Cir. 2021) ....................................................................... 23

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ...................................................................... 6, 18

*City of Perry v. Procter & Gamble Co.*,
  188 F. Supp. 3d 276 (S.D.N.Y. 2016) ...................................................... 4

*Cooper v. Parsky*,
  140 F.3d 433 (2d Cir. 1998) .................................................................. 14

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) .................................................................. 14

*ESPN, Inc. v. Quiksilver, Inc.*,
  586 F. Supp. 2d 219 (S.D.N.Y. 2008) ...................................................... 3

*Friedl v. City of New York*,
  210 F.3d 79 (2d Cir. 2000) .................................................................... 14

*FTC v. 1263523 Ontario, Inc.*,
  205 F. Supp. 2d 218 (S.D.N.Y. 2002) ............................................... 10, 11

*FTC v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) ............................................................. 20

*FTC v. AdvoCare Int'l, L.P.*,
  2020 WL 6741968 (E.D. Tex. Nov. 16, 2020). ................................. 21, 22

*FTC v. American Financial Benefits Center*,
  324 F. Supp. 3d 1067 (N.D. Cal. 2018) ................................................. 11

*FTC v. Amy Travel Service, Inc.*,
  875 F.2d 564 (7th Cir. 1989) ............................................................. 7, 8, 11

*FTC v. Consumer Health Benefits Association*,
  2012 WL 1890242 (E.D.N.Y. May 23, 2012) ........................................ passim

*FTC v. Electronic Payment Solutions of America, Inc.*,
  2019 WL 4287298 (D. Ariz. Aug. 28, 2019).............................................. 21

*FTC v. Five-Star Auto Club*,
  97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000) ................................................... 7

*FTC v. Freecom Communications, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ................................................................. 7

*FTC v. Hornbeam Special Situations, LLC*,
  308 F. Supp. 3d 1280 (N.D. Ga. 2018) ..................................................... 11

*FTC v. Hoyal & Associates, Inc.*,
  859 Fed. App'x 117 (9th Cir. 2021) ......................................................... 21

*FTC v. Innovative Marketing, Inc.*,
  654 F. Supp. 2d 378 (D. Md. 2009) ........................................................... 9

*FTC v. Ivy Capital, Inc.*,
  2011 WL 2118626 (D. Nev. May 25, 2011) ............................................. 11

*FTC v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016)............................................................. 7, 8, 11

*FTC v. LeanSpa, LLC*,
  920 F. Supp. 2d 270 (D. Conn. 2013) ...................................................... 11

*FTC v. Lights of America, Inc.*,
  2011 WL 1515158 (C.D. Cal. 2011).......................................................... 11

*FTC v. Magui Publishers, Inc.*,
  1991 WL 90895 (C.D. Cal. Mar. 28, 1991) .............................................. 19

*FTC v. Minuteman Press*,
  53 F. Supp. 2d 248 (E.D.N.Y. 1998) ........................................................ 19

*FTC v. Moses*,
  913 F.3d 297 (2d Cir. 2019)............................................................... passim

*FTC v. Primary Group, Inc.*,
  713 F. App'x 805 (11th Cir. 2017) ............................................................. 7

*FTC v. Publishing Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ................................................................... 7

*FTC v. RCG Advances, LLC*,
  No. 20-cv-4432 (S.D.N.Y.).................................................................... 5, 6

*FTC v. Roomster Corp.*,
  2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023) ............................................. 21

ii

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019)...............................................................................19, 21

*FTC v. Shkreli*,
   581 F. Supp. 3d at 579 (S.D.N.Y. 2022).............................................................19, 21

*FTC v. SPM Thermo-Shield, Inc.*,
   2022 WL 833644 (M.D. Fla. Mar. 21, 2022) ............................................................21

*FTC v. Sterling Precious Metals, LLC*,
   2013 WL 595713 (S.D. Fla. Feb. 15, 2013) ...........................................................9, 11

*FTC v. Swish Marketing*,
   2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ..............................................................16

*FTC v. Tax Club, Inc.*,
   994 F. Supp. 2d 461 (S.D.N.Y. 2014).........................................................4, 7, 10, 15

*FTC v. Triangle Media Corp.*,
   2018 WL 6305675 (S.D. Cal. Dec. 3, 2018)...............................................................22

*FTC v. Vyera Pharm., LLC*,
   479 F. Supp. 3d 31, 43 (S.D.N.Y. 2020)....................................................................21

*FTC v. Walmart Inc.*,
   2023 WL 2646741 (N.D. Ill. Mar. 27, 2023)..............................................................21

*FTC v. Wellness Support Network, Inc.*,
   2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) ..............................................................13

*In re Bayou Hedge Fund Litigation*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007).........................................................................3

*In re Celsius Network LLC*,
   No. 22-10964-mg (Bankr. S.D.N.Y.)..........................................................................20

*In re Enron Corp.*, 379 B.R. 425
   (S.D.N.Y. 2007) .........................................................................................................20

*Jones v. National Communication & Surveillance Networks*,
   409 F. Supp. 2d 456 (S.D.N.Y. 2006).........................................................................12

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020).........................................................................................12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
   797 F.3d 160 (2d Cir. 2015).................................................................................12, 16

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280, 290 (2d Cir. 2002) ................................................................................6

*Mahoney v. Endo Health Solutions, Inc.*,
   2016 WL 3951185 (S.D.N.Y. July 20, 2016) .............................................................12

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)............................................................................. 23

*Meghrig v. KFC Western, Inc.*,
   516 U.S. 479 (1996) ...................................................................................... 18

*Phelps Dodge Refining Corp. v. FTC*,
   139 F.2d 393 (2d Cir. 1943)............................................................................ 13

*POM Wonderful, LLC v. FTC*,
   777 F.3d 478 (D.C. Cir. 2015) ......................................................................... 7

*Ritchie Capital Management L.L.C. v. Coventry First LLC*,
   2007 WL 2044656 (S.D.N.Y. July 17, 2007) ................................................. 13

*SEC v. Commonwealth Chemical Securities, Inc.*,
   574 F.2d 90 (2d Cir. 1978).................................................. 19, 20, 21, 22

*Sollberger v. Wachovia Securities, LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) ............................................... 13

*Spadaro v. United States Customs & Border Protection*,
   978 F.3d 34 (2d Cir. 2020)............................................................................... 6

*U.S. Bank National Association v. Ables & Hall Builders*,
   582 F. Supp. 2d 605 (S.D.N.Y. 2008)............................................................. 3

*U.S. v. MyLife.com, Inc.*,
   499 F.Supp.3d 757 (C.D. Cal. 2020) ............................................................. 22

*United States v. Mashinsky*,
   No. 1:23-cr-0347 (S.D.N.Y.) ........................................................................... 1

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022)............................................................................. 18, 19

*Williams v. Taylor*,
   529 U.S. 362 (2000)....................................................................................... 18

*Winter v. American Institute of Medical Sciences & Education*,
   242 F. Supp. 3d 206 (S.D.N.Y. 2017).............................................................. 4

**Statutes**

15 U.S.C. § 45(a) .......................................................................................... 1, 5

15 U.S.C. § 53(b) ..................................................................................... 19, 21

15 U.S.C. § 57b(a) ......................................................................................... 17

15 U.S.C. § 57b(b) ......................................................................................... 17

15 U.S.C. § 1692*l*(a) ...................................................................................... 17

15 U.S.C. § 6801 ............................................................................................ 18

15 U.S.C. § 6805 ............................................................................................ 18

15 U.S.C. § 6821 ................................................................................. 1, 15, 18

15 U.S.C. § 6821(a)(2)........................................................................................................5

15 U.S.C. § 6822..............................................................................................................15

15 U.S.C. § 6822(a).....................................................................................................17, 18

15 U.S.C. § 6823..............................................................................................................15

**Rules**

Fed. R. Civ. P. 8(a)(2).........................................................................................................4

Fed. R. Civ. P. 12(d)........................................................................................................18

Fed. R. Civ. P. 15(a)(2)....................................................................................................29

## I.     INTRODUCTION

Defendants Alexander Mashinsky and Hanoch "Nuke" Goldstein were co-founders and corporate officers of Celsius Network LLC and its affiliates (collectively, "Celsius"), a cryptocurrency company that deceived consumers into transferring digital assets and financial information to the Celsius platform, and ultimately misappropriated $4.7 billion in consumers' cryptocurrency. *See generally* Complaint ("Compl."), Dkt. 1. Celsius's massive, multi-year scheme defrauded thousands of consumers. The FTC sued Celsius, Mashinsky, Goldstein, and a third former officer, S. Daniel Leon, because the company's misrepresentations about its products and services, misappropriation of consumers' cryptocurrency, and collection of consumers' financial information violated the FTC Act, 15 U.S.C. § 45(a), and the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6821 *et seq*. Mashinsky was indicted on multiple criminal charges for his role in the scheme. *United States v. Mashinsky*, No. 1:23-cr-0347 (S.D.N.Y.).

Now, Goldstein asks the Court to jettison this case at its inception, deploying unfounded legal arguments, ignoring the Complaint's specific allegations, disregarding precedent, and making unsupported factual submissions. Mashinsky filed a two-page motion joining the portions of Goldstein's brief challenging the GLB Act claims and the availability of injunctive relief; his submission suffers from the same deficiencies as Goldstein's. For the reasons set forth below, Defendants' motions should be denied.

## II.     FACTS

Mashinsky was the Chief Executive Officer ("CEO"), along with several other executive roles, for multiple Celsius entities. Compl. ¶ 20. Goldstein served as the Chief Technology Officer ("CTO") and President of Labs. *Id.* ¶ 22. Under Mashinsky's and Goldstein's authority

1

and control, Celsius falsely promised consumers that it was safer than a bank and that consumers who transferred their digital assets to Celsius could earn profits with "no risk." *Id.* ¶¶ 3, 33. Specifically, Celsius claimed that: (1) it did not engage in unsecured lending, when in fact, it lent out billions of dollars' worth of customers' digital assets in uncollateralized or undersecured loans, *id.* ¶¶ 34-42; (2) it maintained sufficient to reserves to satisfy customer obligations, when in reality it maintained only a fraction of the necessary crypto on hand to meet customer liabilities, *id.* ¶¶ 43-46; (3) consumers could withdraw their crypto "at any time" without a basis to say so or when that was not possible, *id.* ¶¶ 47-57; (4) it maintained a $750 million insurance policy for deposits, when it had never purchased or maintained such a policy, *id.* ¶¶ 58-62; and (5) consumers could earn "up to 17%" or "up to 18.63%" annual percentage yield ("APY") on deposits, when the average customer APY was around 5%, *id.* ¶¶ 63-68. Celsius disseminated these misrepresentations via advertising, including its website, emails, and marketing videos on its YouTube channel. *Id.* ¶ 32. For example, with the participation of Goldstein and other executives, Celsius's former CEO, Mashinsky, appeared in dozens of "Ask Mashinsky Anything" ("AMA") videos, in which he and others lied about the safety and availability of consumer deposits and the benefits Celsius offered consumers. *Id.* Celsius used its deceit to entice consumers to hand over their digital assets and financial information. *Id.* ¶¶ 69-70. Once Celsius took possession of thousands of consumers' cryptocurrency tokens, Celsius misappropriated them, squandered them, and refused to give them back. *Id.* ¶¶ 71-87.

By May of 2022, Celsius was insolvent, yet the company and its leadership—including Mashinsky, Goldstein, and Leon—concealed these facts from the public, continued to entice consumers to transfer digital assets onto Celsius's platform, and surreptitiously withdrew their own cryptocurrency. *Id.* ¶¶ 75-84, 91. Then, on June 12, 2022, with no warning and despite

promises of Celsius's leadership that Celsius was "strong as always" (Goldstein) and guaranteed "immediate access to everybody" (Mashinsky), Celsius permanently shut down access to more than $4.7 billion in cryptocurrency in consumers' accounts. *Id.* ¶¶ 79, 82, 83, 85-86. Celsius filed for bankruptcy on July 13, 2022, and most consumers have yet to regain access to their assets. *Id.* ¶ 87.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008) (quoting *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007)). To survive a motion to dismiss, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility" when the plaintiff alleges facts allowing the "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 608-09 (S.D.N.Y. 2008). Courts at this stage do not settle factual disputes, weigh evidence, or evaluate witness credibility. *See Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").

### B.   Rule 8(a)

A pleading that states a claim for relief must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 is a "liberal" standard. *See, e.g.*, *Winter v. Am. Inst. of Med. Sci. & Educ.*, 242 F. Supp. 3d 206, 228 (S.D.N.Y. 2017). Courts in the Second Circuit evaluate FTC complaints under the Rule 8(a) standard. *See, e.g.*, *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469-71 (S.D.N.Y. 2014); *FTC v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *6-7 (E.D.N.Y. May 23, 2012).

"[N]othing in Rule 8 prohibits collectively referring to multiple defendants where, as here, the complaint alerts defendants that identical claims are asserted against each one." *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 285-86 (S.D.N.Y. 2016). At the pleading stage, before discovery, the FTC need not explain in great detail each defendant's role in the planning and execution of the joint scheme. *See, e.g.*, *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144-48 (S.D.N.Y. 2014) (collecting cases) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *9 n.14 (rejecting group pleading arguments and denying motion to dismiss).

## IV.   ARGUMENT

None of the arguments raised for dismissal has merit. First, the FTC has plausibly alleged that Celsius violated the FTC Act by misrepresenting its services and unfairly misappropriating consumers' crypto, and the GLB Act by using its misrepresentations to obtain consumers' financial information. And contrary to Defendants' claims, the FTC has supplied sufficient facts about their authority to control the company, their participation in marketing and dissemination of misrepresentations, and their knowledge of Celsius's misconduct. Consistent with other courts in this Circuit, the Court should evaluate the FTC's claims under the liberal Rule 8(a) standard rather than the heightened Rule 9(b) standard, but the Complaint withstands scrutiny under

either. Next, the plain language of the GLB Act and the FTC Act entitle the FTC to seek relief

under Section 19 of the FTC Act. Finally, because the FTC has alleged that Defendants have the

means and motive to resume the type of conduct described in the Complaint, the FTC has

plausibly alleged a basis for injunctive relief.

### A.   The FTC alleges sufficient facts to state its claims against Goldstein and Mashinksy under the FTC Act and GLB Act.

The Complaint contains allegations sufficient to show corporate violations of both the

FTC Act and the GLB Act, and to show that both Defendants had authority to control Celsius's

business practices, directly participated in the misconduct, and possessed the requisite

knowledge of the violations. *See FTC v. Moses*, 913 F.3d 297, 307 (2d Cir. 2019) (affirming

individual defendants' liability for corporate acts).

### 1.   The Complaint alleges violations of the FTC Act and GLB Act.

Neither Defendant challenges the sufficiency of the allegations that Celsius engaged in

unfair and deceptive business practices under Section 5 of the FTC Act, Counts I-II of the FTC's

Complaint. *See* 15 U.S.C. § 45(a) (prohibiting unfair or deceptive acts and practices).

The FTC also alleges facts sufficient to establish violations of the GLB Act, Count III of

the Complaint. The GLB Act makes it unlawful to "obtain or attempt to obtain . . . customer

information of a financial institution relating to another person . . . by making a false, fictitious,

or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C.

§ 6821(a)(2). The Complaint alleges that Celsius obtained or attempted to obtain consumers'

financial information—crypto wallet information and bank account details, Compl. ¶¶ 69-70—

by making "false, fictitious, or fraudulent statements"—its many misrepresentations. *See supra*

Part II; Compl. ¶¶ 33-70. As a court in this District recently held, using misrepresentations to

obtain customers' financial information violates the GLB Act. *See* Order at 1, *FTC v. RCG*

*Advances, LLC*, No. 1:20-cv-04432-JSR, Dkt. 178 (Sept. 19, 2023).

Defendants do not even contest this. Indeed, Goldstein wholly ignores significant portions of the Complaint describing in detail the "false, fictitious or fraudulent statement[s]" in question (Compl. ¶¶ 31-33, 34-38, 43-44, 47-50, 58-60, 63-66, 73-74, 76-82) because, according to him, they were not his fault. Goldstein also complains that the FTC has not filed many cases alleging GLB Act claims,[1] but he does not show why that means the Court should ignore the statute's plain text or the allegations in the Complaint. Instead, relying on one part of the GLB Act's Conference Report, Goldstein and Mashinsky ask the Court to impose limitations on the GLB Act's scope that are not found in its text. But the text is unambiguous, and the Court should reject Goldstein's invitation to read into it extraneous limitations. The Supreme Court "has explained many times over many years that, when the meaning of the statute's terms is plain, [the Court's] job is at an end." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1749 (2020); *see also Spadaro v. United States Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) ("[W]hen the language of a statute is unambiguous, 'judicial inquiry is complete.'" (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002))). Congress saw fit to enact a remedial statute without the limits Goldstein insists this Court infer, and the FTC has alleged violations of that statute. This is enough to state a claim.

### 2.    The FTC plausibly alleges that Goldstein and Mashinsky are liable for Celsius's FTC Act and GLB Act violations.

A court may impose upon an individual injunctive relief deriving from a corporation's unlawful acts if the individual either participated directly in the practices or acts or had authority

---

[1] Goldstein incorrectly asserts that there was "no litigation as to the scope of the GLBA" in *FTC v. RCG Advances, LLC*, No. 20-cv-4432 (S.D.N.Y.). In fact, just last week, the court granted summary judgment to the FTC on all counts, including the GLB Act count. Order at 1, *FTC v. RCG Advances, LLC*, No. 1:20-cv-04432-JSR, Dkt. 178 (Sept. 19, 2023).

to control them. *See Moses*, 913 F.3d at 306-07. The FTC need not allege that the individual

carried out each unlawful act so long as the Complaint alleges that the individual "had the

authority to control the corporate defendants" engaged in the alleged misconduct. *Tax Club*, 994

F. Supp. 2d at 471 (quoting *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 535 (S.D.N.Y.

2000)). Authority to control the company can be evidenced by active involvement in business

affairs and the making of corporate policies, including, as here, assuming the duties of a

corporate officer. *Moses*, 913 F.3d at 306-07 (citing *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564,

573 (7th Cir. 1989)); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *5 ("[A]n

individual's status as a corporate officer . . . can be probative of control.").

An individual may be held liable for monetary relief if, in addition to direct participation

or authority to control, the individual had "some knowledge," *FTC v. LeadClick Media, LLC*,

838 F.3d 158, 169-70 (2d Cir. 2016), of the challenged practices: (1) actual knowledge of the

misconduct, (2) reckless indifference to it, or (3) an awareness of a high probability of

deceptiveness and intentionally avoided learning the truth, *Moses*, 913 F.3d at 307 (citing *FTC v.*

*Primary Grp., Inc.*, 713 F. App'x 805, 807 (11th Cir. 2017)).[2]

The same standard for individual liability applies to both the FTC Act and GLB Act, *see,*

*e.g.*, *Moses*, 913 F.3d at 307 (explaining that where the FTC enforces other statutes pursuant to

its authority under the FTC Act, the individual liability standard under the FTC Act applies), and

the FTC meets it.

---

[2] Recent Second Circuit cases have collapsed the distinct standards for liability for injunctive and
monetary relief, but in those cases, the parties (and the Court) were addressing monetary relief
only—not injunctive relief. *See Moses*, 913 F.3d at 307; *LeadClick Media*, 838 F.3d at 169.
Many courts have acknowledged that the knowledge requirement pertains only to claims for
monetary relief. *See, e.g.*, *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 498-99 (D.C. Cir. 2015);
*FTC v. Freecom Commc'n, Inc.*, 401 F.3d 1192, 1204-07 (10th Cir. 2005); *FTC v. Publ'g*
*Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997).

### a.   The Complaint plausibly alleges Mashinsky's individual liability.

The Court can easily dispose of Mashinsky's arguments against individual liability, since he does not dispute that the FTC has sufficiently alleged that he had authority to control Celsius or that he possessed the requisite knowledge of its acts. His only argument against individual liability for Celsius's FTC Act and GLB Act violations misstates the law (there is no requirement that the FTC allege Mashinsky acted "knowingly," Mashinsky Mem. at 2, Dkt. 45). The Complaint alleges, among other things, that Mashinsky was the CEO of the company, had "a heavy hand" in creating the advertising that contained "false, fictitious, or fraudulent" statements, and directly participated in making "false, fictitious, or fraudulent" statements in dozens of marketing videos. *E.g.*, Compl. ¶¶ 20, 32. The Complaint also alleges that that he had the requisite knowledge, including because he was intimately involved in the conduct. *See, e.g.*, *Moses*, 913 F.3d at 309 ("The degree of participation in business affairs is a relevant factor in determining whether [a defendant] had knowledge of the Corporate Defendants' wrongful actions." (quoting *Amy Travel*, 875 F.2d at 574)). These facts are sufficient to allege Mashinsky's individual liability.

### b.   The Complaint plausibly alleges Goldstein's individual liability.

Goldstein's arguments fare no better. The Complaint alleges facts that plausibly show Goldstein *both* had authority to control Celsius's business *and* directly participated in misconduct even though only participation *or* authority is required. The Complaint also alleges facts making more than plausible that Goldstein had "some knowledge" of Celsius's misconduct. *See LeadClick Media*, 838 F.3d at 169-70. Goldstein tries to discard all allegations in the Complaint that refer to conduct by the "Defendants" (including him by way of his control over

the company), and asks the Court only to consider the paragraphs that specifically reference him by name. But this is not the proper framework to analyze the Complaint. Rather, the FTC has alleged that Goldstein had the authority to control the business, and thus the FTC's allegations pertaining to the business "as a whole provide the context that allows this Court to understand and weigh the significance of the claims specifically relating to" Goldstein. *FTC v. Sterling Precious Metals, LLC*, 2013 WL 595713, at *4 (S.D. Fla. Feb. 15, 2013) (quoting *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388 n.3 (D. Md. 2009)); *see also Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *9 n.14. With that backdrop, and assuming, as the Court must, that these allegations are true, the Complaint properly alleges that Goldstein is individually liable.

The Complaint also alleges myriad facts concerning Goldstein's active involvement in corporate affairs for the common enterprise: He assumed the duties of a corporate officer and participated in committees concerning issues directly relevant to Celsius's misconduct, like risk. Compl. ¶ 22 (alleging that Goldstein "served as Chief Technology Officer . . . until March 21, 2022, and served as President of Labs," and that he "served on the Executive Committee and Risk Committee"); *id.* (alleging that Goldstein "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Celsius"). Goldstein personally appeared in Celsius's marketing videos, one of the primary vehicles for Celsius's misrepresentations, and he used his personal Twitter account to proliferate falsehoods about Celsius's financial strength. *Id.* ¶ 22 ("Goldstein actively participated in Celsius's marketing, appearing in advertising videos displayed on Celsius's YouTube channel."), ¶¶ 31-32 (describing Goldstein's participation in AMAs and use of his personal social media account to "promote and market Celsius's products and services"), ¶ 79 (describing how "Goldstein tweeted that 'the

Celsius community, company, and staff are strong as always'" when Celsius was insolvent and having trouble meeting withdrawal requests), ¶ 82 ("These statements were false, but . . . Goldstein retweeted the . . . blog post from [his] personal Twitter account[].").

The Complaint also sufficiently pleads that Goldstein had the requisite knowledge. *See Moses*, 913 F.3d at 306-07. Goldstein participated in marketing videos, was present at the time that several specific misrepresentations were uttered, and made misrepresentations himself. Compl. ¶¶ 31-32, 44 (describing Goldstein's appearance in an AMA in which Mashinsky falsely stated that Celsius was a safe place to store cryptocurrency), 79, 82. And, though the FTC need not allege that Goldstein knew these claims were false, the Complaint specifically alleges Goldstein's direct knowledge that several of Celsius's statements were misleading. *See id.* ¶ 75 (alleging that Goldstein was "aware that Celsius's 'capital sits near zero' and that Celsius was having trouble satisfying customer withdrawal requests"). Moreover, Goldstein was the CTO and served on both the Executive Committee and Risk Committee. *Id.* ¶ 22. It is well-established that participation in corporate affairs for the common enterprise is probative of knowledge, and it is more than "plausible" that an officer with these responsibilities would know that Celsius was squandering the consumer deposits stored on its platform. *See, e.g.*, *Moses*, 913 F.3d at 309 ("The degree of participation in business affairs is a relevant factor in determining whether [a defendant] had knowledge of the Corporate Defendants' wrongful actions."); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *5.

Courts across the country have held that similar allegations of authority to control and knowledge plausibly alleged individual liability under the FTC Act. *See, e.g.*, *Tax Club*, 994 F. Supp. 2d at 473 (finding that the FTC "adequately allege[d] authority to control" based on defendant's officer title and signature authority on bank accounts); *FTC v. 1263523 Ontario,*

10

*Inc.*, 205 F. Supp. 2d 218, 221, 224 (S.D.N.Y. 2002) (granting a default judgment against individuals where FTC alleged that they "formulated, directed, controlled, or participated in the acts and practices of" the corporate defendant); *cf. Moses*, 913 F.3d at 307 (authority to control can be "evidenced by active involvement in business affairs and the making of corporate policy" (quoting *Amy Travel*, 875 F.2d at 573)).[3] This Court should do the same.

Without a basis to challenge the FTC's allegations under prevailing legal standards, Goldstein invents new ones: He complains that the Complaint lacks specific allegations that Goldstein was "actively and knowingly" involved in the "allegedly problematic parts of Celsius's business," that he had control over particular misrepresentations, and that he was responsible for creating every misrepresentation—or, simply, that the Complaint should have said more (for example, concerning the substance of discussions, his knowledge of finance, or his involvement in writing blog posts). *See* Goldstein Mem. at 9-10, Dkt. 41. But the FTC need not show deceptive conduct all is attributable to a particular defendant, *LeadClick Media*, 838 F.3d at 168, and there is no one set of activities, responsibilities, or conversations that the FTC is required to plead, *see, e.g.*, *FTC v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 278 (D. Conn. 2013) (rejecting the argument that a complaint needed to include the substance of discussions and conversations). The inquiry is not whether the Complaint includes every fact relevant to individual liability but whether the FTC has pled enough facts to make it plausible that the

[3] *See also, e.g.*, *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1072, 1080-81 (N.D. Cal. 2018) (FTC sufficiently pled authority to control where defendant was alleged to be a founder of, held multiple high-ranking corporate roles in, and signed contracts for the common enterprise); *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1288-89 (N.D. Ga. 2018) (allegations that individual defendants were corporate officers who served on high-level committees sufficiently demonstrated authority to control); *Sterling Precious Metals*, 2013 WL 595713, at *4-5; *FTC v. Ivy Capital, Inc.*, 2011 WL 2118626, at *5-6 (D. Nev. May 25, 2011); *FTC v. Lights of Am., Inc.*, 2011 WL 1515158, at *3-4 (C.D. Cal. Mar. 31, 2011).

11

defendant had authority to control the business (*or* directly participated) and knowledge of misconduct. The Complaint satisfies that standard.

Finally, Goldstein takes issue with allegations regarding his social media activity, but these arguments fail too. He claims that reposting a misleading blogpost would be a protected activity under the Communications Decency Act ("CDA"), Goldstein Mem. at 14, but he cites no case suggesting that a corporate officer's retweet of *his own* company's content would invoke the CDA. In any event, it is not the case in the Second Circuit, as Mashinsky alleges, that retweets are *per se* entitled to immunity. *See La Liberte v. Reid*, 966 F.3d 79, 90 n.8 (2d Cir. 2020). Goldstein also complains that his tweet about Celsius's "strength," when Celsius was insolvent, Compl. at 75-79, was merely an opinion. Goldstein's statement was false, but even if that were not so, the tweet is but one of several examples Goldstein's participation. Taken together with facts alleging his authority to control and knowledge, the FTC has plausibly alleged that Celsius's former CTO had enough of a hand in Celsius's wrongdoing to warrant individual liability.

The handful of cases that Goldstein cites also miss the mark. In *Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *3 (S.D.N.Y. July 20, 2016), the court "swiftly dismissed" the defendants' "argument regarding group pleading" because "there is no fixed requirement . . . to identify a single entity within a group on pain of dismissal." *Id.* at *3 (alteration in original) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015)). He also cites several inapposite cases where, unlike here, the plaintiff failed to plead *any* facts that would state a claim.[4]

---

[4] *See Jones v. Nat'l Comm'n & Surveillance Networks*, 409 F. Supp. 2d 456, 465 (S.D.N.Y. 2006) (58-page single-spaced pro se complaint provided "no factual or legal basis for Defendants' liability"); *Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, 2004 WL 2813121, at

Goldstein's primary FTC case, *FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011), supports the FTC's position, not Goldstein's. *See id.* at 10-11. There, the court found that allegations that a defendant was the president and owner of the business and "controlled, had the authority to control or participated in advertising and marketing, including the acts and practices of [the corporate defendant] alleged in the complaint" were sufficient to state a claim. *Id.* The court dismissed claims against a second defendant alleged only to have been "an officer." *See id.* While Goldstein is alleged to be the CTO rather than the president and owner, he is also alleged to have controlled, had the authority to control, or participated in the acts and practices in the Complaint, with examples of his conduct. These allegations, like those against the company president in *Wellness Support*, are sufficient to state a claim.

Finally, in *Phelps Dodge Refining Corp. v. FTC*, 139 F.2d 393 (2d Cir. 1943), a case decided after answers were filed and the parties had stipulated to the underlying facts, and *Aeroglide Corp. v. Zeh*, 301 F.2d 420 (2d Cir. 1962), a case decided after trial, the Second Circuit stated the unextraordinary principle that merely holding a directorship in an organization does not confer liability for antitrust violations or, in *Zeh*, corporate "torts." *See Phelps Dodge*, 139 F.2d at 396-97; *Zeh*, 301 F.2d at 422. Since the FTC alleges more than Goldstein's title, these cases are irrelevant (and *Zeh* is doubly irrelevant because it is not an FTC case applying the FTC Act standard). None of Goldstein's cases compels dismissal of this one.

---

*7 (S.D.N.Y. Dec. 8, 2004) (plaintiff "pled a cause of action for breach of contract without even alleging the identity of its contracting party" and failed to "reveal the specific relationship, if any, that these defendants share"); *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *3-4 (C.D. Cal. June 30, 2010) (plaintiff's allegations of a "colossal" fraudulent conspiracy lacked details and failed to satisfy Rule 9(b)); *Ritchie Cap. Mgmt. L.L.C. v. Coventry First LLC*, 2007 WL 2044656, at *9 (S.D.N.Y. July 17, 2007) (underlying allegation against multiple defendants was insufficient to state a claim).

### 3.    Goldstein's unsupported factual assertions are not a basis for dismissal.

In the absence of caselaw to support his arguments, Goldstein marshals a host of factual

assertions that are not found anywhere in the Complaint and should be ignored. *See* Goldstein

Mem. at 1-2, 4, 10-15 & n.10. He also supplies an improper affidavit of counsel attaching

documents. His wide-ranging factual additions span his duties as CTO, participation (or not) on

committees, and presence (or not) at Board meetings at which he admittedly presented. Goldstein

Mem. at 10-13. He argues about the meaning and significance of Board presentations, the truth

or falsity of tweets, and his familiarity or not with financial matters. *Id.* at 10-11. He asserts that

he did not withdraw millions in dollars in crypto from Celsius in the spring of 2022 (he does not

assert that he did not withdraw anything).[5] *Id.* at 13-15.

Goldstein's factual submissions are improper. *See Friedl v. City of New York*, 210 F.3d

79, at 83-84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits

submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda,

in ruling on a 12(b)(6) motion to dismiss." (cleaned up)); *see also DiFolco v. MSNBC Cable

L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P.

12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay

the weight of the evidence which might be offered in support thereof." (quoting *Cooper v.

Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). If the Court were to consider these submissions, it

would convert the motion to one for summary judgment, and the FTC should be given the

---

[5] Goldstein attaches his proof of claim in the Celsius bankruptcy as "evidence" that Celsius owes him money as a creditor. A proof of claim is evidence that Goldstein filed a proof of claim in the bankruptcy, but does not necessarily prove the amount or validity of Goldstein's alleged claim. *See, e.g.*, *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (describing the burden-shifting applicable to resolving the validity of proofs of claim).

opportunity to submit evidentiary material in support of its claims. Fed. R. Civ. P. 12(d). In any

event, Goldstein's superfluous facts do not alter the sufficiency of the FTC's pleading.[6]

> **B.** **Rule 9(b) does not apply to the FTC Claims and, even if it did, the FTC's Complaint satisfies the heightened pleading standard.**

Contrary to Goldstein's arguments, Rule 9(b) does not apply to any of the FTC's claims.

*See Tax Club*, 994 F. Supp. 2d at 471 (rejecting the argument that Rule 9(b) applies to Section 5

claims); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7 (concluding that Rule 9(b)

does not apply to Section 5 claims); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283,

314-15 (S.D.N.Y. 2008) (concluding that argument that Rule 9(b) applies "is likely without

merit"). The reason for this is simple: Neither Section 5 claims nor GLB Act claims "require

proof of the same essential elements of common law fraud." *Consumer Health Benefits Ass'n*,

2012 WL 1890242, at *7. Unlike common law fraud claims, Section 5 claims do not require

proof of scienter, reliance, or injury. *Id.* And Section 5 "covers a broad[er] range of deceptive

practices" than common law fraud. *Id.* The GLB Act, likewise, requires no proof of scienter for

civil violations. *Compare* 15 U.S.C. §§ 6821-6822 (lack of scienter for civil violations) *with*

15 U.S.C. § 6823 (criminal provision of the GLB Act providing that "[w]hoever *knowingly and

intentionally violates, or knowingly and intentionally attempts to violate*, section 6821 of this

title shall be fined . . . or imprisoned . . . or both.") (emphasis added). And it does not require

proof of reliance or injury; only that defendant made the false statement "*to obtain or attempt to

obtain* . . . customer information of a financial institution relating to another person[.]" *Id.* § 6821

---

[6] Even if the Court could consider Goldstein's unsupported assertions on a motion to dismiss, they would not warrant dismissal. For example, the allegation that Goldstein's duties included "researching, developing, and maintaining a technological platform capable of securely accepting, storing, and transferring cryptocurrency," Goldstein Mem. at 10, bolsters the conclusion that Goldstein had the authority to control corporate conduct taking place on that platform.

(emphasis added). The only case Goldstein cites – *FTC v. Swish Marketing*, 2010 WL 653486, at *2 (N.D. Cal. Feb. 22, 2010) – is from the Ninth Circuit where, unlike in the Second Circuit, courts sometimes use the 9(b) standard.

Even if this Court were to break from others in this Circuit and apply Rule 9(b), the FTC's complaint would satisfy that heightened standard. The Complaint specifies the misrepresentations for which Goldstein and Mashinsky are liable, states where and when they were made, and explains why the misrepresentations were likely to mislead a reasonable consumer – i.e., they were false. *See supra* Part II; *see also Loreley Fin.*, 797 F.3d at 173 (group pleading satisfied Rule 9(b) standard). It need not do anything more.

### C.    The FTC has a legal basis to seek both monetary and injunctive relief.

Mashinsky's and Goldstein's effort to dismiss the FTC's demand for monetary and injunctive relief falls flat. First, Defendants argue that the GLB Act does not provide a basis for relief, including monetary relief, through Section 19 of the FTC Act, an argument that is wholly inconsistent with the text and structure of the statute. Next, Defendants argue that they cannot be enjoined for their misconduct because Celsius is bankrupt and has settled with the FTC. But this argument fails too, because it misapplies the law, and the FTC has alleged that Mashinsky and Goldstein could resume their law violations absent an injunction.

### 1.    Relief is available for GLB Act violations under Section 19.

Goldstein and Mashinsky contend that the FTC's claims for monetary relief under the GLB Act[7] must be dismissed because the FTC has failed to allege a rule violation. This argument fails, because the GLB Act's own terms authorize the FTC to enforce it as a rule violation. Thus, the FTC may seek any relief "necessary to redress injury to consumers" for

---

[7] The FTC is not seeking monetary relief for Counts I and II.

violations of the GLB Act under Section 19 of the FTC Act.

The GLB Act provides that "compliance . . . shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [("FDCPA")] to enforce compliance with such Act." 15 U.S.C. § 6822(a). The FDCPA, in turn, authorizes the FTC to enforce compliance as if FDCPA violations are rule violations:

> For purpose of the exercise by the Federal Trade Commission of its functions and powers under the [FTC Act], a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the [FTC Act] are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the [FTC Act], including the power to enforce the provisions of this subchapter, *in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.*

15 U.S.C. § 1692*l*(a) (emphasis added); *see also Moses*, 913 F.3d at 307. Accordingly, the FTC may enforce the FDCPA under Section 19 of the FTC Act, including by bringing a claim for monetary relief. *See id.*; *see* 15 U.S.C. § 57b(a)-(b). Since the FTC may enforce the GLB Act using "the same power and authority as [it] has under the [FDCPA]," 15 U.S.C. § 6822(a), the FTC may also enforce GLB Act violations "as if the violation had been a violation of a Federal Trade Commission trade regulation rule," 15 U.S.C. § 1692*l*(a). Nothing about this structure is, as Goldstein asserts, ambiguous.

Defendants argue that Congress did not intend for the FTC to enforce the GLB Act as a rule violation because Congress did not include specific words like "rule violation." According to Goldstein, language explicitly incorporating the FDCPA standard is not clear enough to permit the FTC to seek relief. But that argument ignores the plain language of the GLB Act and goes against the "cardinal principle of statutory construction that [courts] must give effect, if possible,

17

to every clause and word of a statute," *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (cleaned up). The GLB Act's mandate that "compliance with [the GLB Act] shall be enforced by the [FTC] in the same manner and with the same power and authority as the Commission has under the [FDCPA]," 15 U.S.C. § 6822(a), does not make any sense unless it means the FTC can treat a violation of the GLB Act like a violation of the FDCPA, i.e., as a rule violation. Defendants' contorted arguments would render the GLB Act's enforcement mechanism nonsensical and superfluous.

Defendants' argument also ignores the structure of the GLB Act. Had Congress not intended for violations of Subchapter II of the GLB Act, 15 U.S.C. §§ 6821-6827, to be treated as violations of a trade regulation rule, it could have used the same language as Subchapter I of the GLB Act, 15 U.S.C. §§ 6801-6809. Subchapter I's enforcement provision only provides for enforcement by the FTC "under the Federal Trade Commission Act," and does not reference the FDCPA. 15 U.S.C. § 6805. Because Congress unambiguously provided that a violation of Subchapter II of the GLB Act may be enforced in the same manner as the FDCPA, *i.e.*, as a trade regulation rule, the FTC is entitled to seek monetary relief pursuant to Section 19. *See Bostock*, 140 S. Ct. at 1749 (rejecting arguments that "abandon the statutory text . . . and appeal to assumptions and policy").

None of the cases cited by Goldstein supports Defendants' restrictive reading of the GLB Act because those cases involve implied, rather than express, authority. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487-88 (1996) (explaining that where Congress created "elaborate enforcement provisions for remedying the violation of a federal statute," the court could not assume additional remedies by implication); *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (holding that the Clean Air Act did not give the EPA the authority to promulgate rules capping

emissions); *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8-9 (D.C. Cir. 2002) (addressing the promulgation of a rule rather than congressionally mandated law enforcement). Unlike those cases, this case does not involve the promulgation of a new set of regulations or the creation of a new remedy; it involves enforcement of the statute's plain language.

### 2.    Injunctive relief is available under Section 13(b).

The FTC alleges a plausible basis for injunctive relief under Section 13(b) of the FTC Act for Defendants' violations of Section 5 of the FTC Act and the GLB Act. Thus, even if the Court adopts Defendants' incorrect reasoning that Section 19 is not an avenue for relief, the Motions should be denied because Section 13 provides a separate basis for injunctive relief.

Although Goldstein misstates the applicable standard by invoking *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), to plead entitlement to a permanent injunction the FTC need only allege facts showing "some cognizable danger of recurring violation." *E.g.*, *Med. Billers Network, Inc.*, 543 F. Supp. 2d at 323; *see also* 15 U.S.C. § 53(b) (providing that in proper cases the FTC may seek a permanent injunction to halt violations of "any provision of law enforced by the Federal Trade Commission"). To assess the likelihood of recurrence, courts consider (1) "whether the infraction is an isolated occurrence"; (2) "the degree of scienter involved"; (3) "whether defendant continues to maintain that his past conduct was blameless"; and (4) "whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated." *FTC v. Shkreli*, 581 F. Supp. 3d 579, 638 (S.D.N.Y. 2022) (quoting *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)); *see also FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) (citing *FTC v. Magui Publishers, Inc.*, 1991 WL 90895, at *15 (C.D. Cal. Mar. 28, 1991)).

The Complaint alleges facts sufficient to show a likelihood of recurrence under this

19

standard. First, the FTC alleges that Defendants' law violations are far from an "isolated occurrence", but instead were legion, Compl. ¶¶ 3-6, 31-38, 43-44, 47-50, 58-60, 63-65, took place over the course of three years, *id.* ¶¶ 3, 47, and ceased not because they decided to comply with the law, but because Celsius declared bankruptcy. *Id.* ¶¶ 7, 87. Second, the Complaint alleges that Goldstein and Mashinsky had knowledge of the unlawful conduct at issue in this case. *Id.* ¶¶ 75, 82. Additionally, as his motion to dismiss makes clear, Goldstein purports to be "blameless" for his law violations. *See Commonwealth Chem.*, 574 F.2d at 100. Finally, Goldstein was a co-founder and CTO of Celsius and paid handsomely. Global Notes and Statements at 14407, *In re Celsius Network LLC*, No. 22-10964-mg, Dkt. 973 (Bankr. S.D.N.Y. Oct. 5, 2022) (listing nearly $400,00 in salary and bonuses for Goldstein between July 2021 and July 2022 alone).[8] Mashinsky, the former CEO, was also generously compensated. *See id.* at 14385 (listing nearly $500,000 in salary during the same period). Nothing stops either Defendant from founding or joining another cryptocurrency or financial services company and repeating the same or similar law violations. *See, e.g.*, *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1202 (10th Cir. 2009) (finding past conduct likely to recur where the defendant remained in the same industry). Mashinsky, in fact, told Celsius employees he planned to start a new cryptocurrency company. Compl. ¶ 94. Goldstein and Mashinsky each "maintain[s] the means, ability, and incentive to resume [his] unlawful conduct." *Id.*

   Goldstein wholly ignores this standard, and instead relies on an out-of-Circuit decision against a company that had been defunct for five years before suit. Invoking that case, Goldstein suggests that to state a claim for injunctive relief, the FTC must also allege that he is violating or

---

[8] The court can take judicial notice of court filings in other related matters. *See In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007).

about to violate the law. *See* Goldstein Mem. at 22 (citing *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019); *see also* 15 U.S.C. § 53(b).

But even focusing on the phrase "violating or about to violate the law," the controlling case in this circuit is *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90 (2d Cir. 1978), which interpreted the nearly-identical "is . . . about to" language in the Securities Act and Exchange Act. *See id.* at 99-100. Under *Commonwealth Chem.*, courts in the Second Circuit assess whether a defendant is violating, or is about to violate, the law using the same "likelihood of recurrence" language described above. *See id.* at 101; *see also FTC v. Roomster Corp.*, --- F. Supp. 3d ---, 2023 WL 1438718, at *7 (S.D.N.Y. Feb. 1, 2023) (applying likelihood of recurrence standard and denying motion to dismiss); *Shkreli*, 581 F. Supp. 3d at 638. Thus, even under the "violating or about to violate the law" approach, the facts alleged here, *see supra*, are sufficient to plead entitlement to injunctive relief. *See id. See also, e.g.*, *FTC v. Vyera Pharm., LLC*, 479 F. Supp. 3d 31, 43 (S.D.N.Y. 2020) (denying motion to dismiss); *FTC v. Elec. Payment Sols. of Am., Inc.*, 2019 WL 4287298, at *10 (D. Ariz. Aug. 28, 2019) (finding that because defendants were in the same professional occupation, "they could easily reengage in similar unlawful conduct in the future absent a permanent injunction").

Defendant Goldstein cites to one out-of-circuit decision[9] in support of his argument that the FTC follow *Shire* instead of Second Circuit precedent: *FTC v. AdvoCare Int'l, L.P.*, 2020

---

[9] Numerous courts outside the Second Circuit have declined to follow *Shire ViroPharma. See, e.g.*, *FTC v. Hoyal & Assocs., Inc.*, 859 Fed. App'x 117, 120 (9th Cir. 2021) (rejecting *Shire ViroPharma* arguments and affirming injunction issued under "reasonable likelihood of recurrence" standard); *FTC v. Walmart Inc.*, 2023 WL 2646741, at *20-21 (N.D. Ill. Mar. 27, 2023) ("I disagree with the Third Circuit's approach, and decline to distinguish between the requirements of § 13(b)(1) and the common law standard for injunctive relief."); *FTC v. SPM Thermo-Shield, Inc.*, 2022 WL 833644, at *2-3 (M.D. Fla. Mar. 21, 2022) (rejecting *Shire ViroPharma* standard in favor of traditional "reasonable likelihood of further violations" standard).

WL 6741968 (E.D. Tex. Nov. 16, 2020). But the analysis in these cases is inconsistent with *Commonwealth Chem.*, which makes clear that the relevant standard is whether the FTC has pled a "reasonable likelihood of recurrence." That is reason enough for the Court to decline to adopt *AdvoCare*'s reasoning. Further, in *AdvoCare*, there was no indication that the FTC alleged the individuals had motive or means to resume the same conduct in the same industry. *See AdvoCare*, 2020 WL 6741968, at *6. Here, by contrast, the FTC has alleged that the Defendants engaged in misconduct for a period of several years, Compl. ¶ 94, withdrew significant sums of cryptocurrency from Celsius, *id.* ¶ 91, and therefore maintain the means and incentive to found or join a new cryptocurrency or financial services company and go right on violating the law, *id.* ¶ 94. Moreover, at the time of filing, less than a year had passed since Celsius's bankruptcy (under the restructuring provisions of the Bankruptcy Code, which would not necessarily permanently put a stop to its business operations).[10] Thus, the FTC has adequately pled a basis for injunctive relief under Section 13(b).[11]

## V.   CONCLUSION[12]

The Court should deny Defendants Goldstein and Mashinsky's motions to dismiss

---

[10] Goldstein and Mashinsky each agreed to tolling agreements that tolled their timeliness defenses for, in Goldstein's case, almost a month before the Complaint and in Mashinky's, half a year. And, Goldstein and Mashinsky only left their positions well after the FTC's investigation had begun. Courts have repeatedly held that defendants' cessation of violations as a result of government intervention is treated as if the violations never stopped. *See, e.g.*, *U.S. v. MyLife.com, Inc.*, 499 F.Supp.3d 757, 767 (C.D. Cal. 2020) (citing *FTC v. Triangle Media Corp.*, 2018 WL 6305675, at *1 (S.D. Cal. Dec. 3, 2018)).

[11] Goldstein also claims that the FTC's description of the Celsius website is "disingenuous" because Celsius has changed its website since the FTC filed. As of the date the Complaint was filed (and for several days after), the version of the website described in the Complaint was live.

[12] The FTC does not consider oral argument necessary to resolve the issues in this case, but takes no position on Goldstein's request for oral argument, Dkt. 43.

because the FTC has alleged sufficient facts to support a reasonable inference that each is liable for both injunctive and monetary relief. If the Court is inclined to dismiss the FTC's complaint, however, it should do so without prejudice to refile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)) ("[L]eave to amend 'shall be freely given when justice so requires.'"). Neither Defendant has shown "good reason" why the district court should dismiss without leave to refile, let alone "futility, bad faith, undue delay, or undue prejudice[.]" *See Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021).

Dated:  September 25, 2023                Respectfully submitted,

                                          _/s/ Katherine M. Aizpuru_____
                                          Katherine M. Aizpuru
                                          Katherine Worthman
                                          Attorneys
                                          Federal Trade Commission
                                          600 Pennsylvania Avenue NW
                                          Mail Stop: CC 6316
                                          Washington, D.C. 20580
                                          202-876-5673
                                          kaizpuru@ftc.gov;
                                          kworthman@ftc.gov

## <u>CERTIFICATE OF SERVICE</u>

      The foregoing document was served upon all parties that have entered an appearance in this matter via the Court's CM/ECF system.

Dated: September 25, 2023                     <u>*/s/ Katherine M. Aizpuru*</u>
                                           Katherine M. Aizpuru
                                           Counsel for Plaintiff