UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>CELSIUS NETWORK INC., a corporation, CELSIUS NETWORK LLC, a limited liability company, CELSIUS NETWORKS LENDING LLC, a limited liability company, CELSIUS LENDING LLC, a limited liability company, CELSIUS KEYFI LLC, a limited liability company, CELSIUS MINING LLC, a limited liability company, CELSIUS US HOLDING LLC, a limited liability company; CELSIUS US LLC, a limited liability company; CELSIUS MANAGEMENT CORP., a corporation;<br><br>ALEXANDER MASHINSKY, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US Holding LLC;<br>SHLOMI DANIEL LEON, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, Celsius US Holding LLC; and<br><br>HANOCH "NUKE" GOLDSTEIN, individually and as an officer of Celsius Network LLC and Celsius Lending LLC,<br><br>    Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>Case No. 1: 23-cv-6009 (DLC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HANOCH "NUKE" GOLDSTEIN'S MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

Page(s)

**ARGUMENT** ............................................................................................................................. 1

**I. The FTC Has Not Alleged Sufficient Facts *Against Goldstein* To Support Its Claims** .................................................................................................................... 1

    A. The FTC Does Not Adequately Allege Goldstein's "Authority to Control" ..................... 1

    B. The FTC Has Not Sufficiently Alleged Goldstein's "Direct Participation" ...................... 3

    C. The FTC Has Not Sufficiently Alleged Goldstein's Knowledge ....................................... 4

**II. The FTC's Claim Under the GLBA Should Be Dismissed** .................................................. 5

    A. The Complaint Does Not Sufficiently Allege Goldstein Violated the GLBA ................... 5

    B. The FTC Cannot Seek Money Damages for GLBA Violations Under § 19 ..................... 6

**III. The FTC Has Failed To Show Any Basis for Injunctive Relief *Against Goldstein*** .......... 8

**CONCLUSION** ........................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**
*AMG Cap. Mgmt. v. FTC*,
  141 S. Ct. 1341 (2021) ............................................................................................. 6, 9
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 1
*Bongiorno v. Baquet*,
  2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) ............................................................. 4
*Campanelli v. Flagstar Bancorp*,
  2020 WL 5350245 (S.D.N.Y. Sept. 4, 2020) ............................................................... 4
*FTC v Credit Bureau Ctr., LLC*,
  937 F.3d 764 (7th Cir 2019) ........................................................................................ 8
*FTC v. 1263523 Ontario Inc.*,
  205 F. Supp. 2d 218 (S.D.N.Y. 2002) ......................................................................... 3
*FTC v. Moses*,
  913 F.3d 297 (2d Cir. 2019) ........................................................................................ 3
*FTC v. RCG Advances, LLC*,
  2023 WL 6281138 (S.D.N.Y. Sept. 27, 2023) ............................................................. 7
*FTC v. Sterling Precious Metals, LLC*,
  2013 WL 595713 (S.D. Fla. Feb. 15, 2013) ................................................................ 3
*FTC v. Swish Mktg., Inc.*,
  2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ............................................................... 2
*FTC v. Tax Club, Inc.*,
  994 F. Supp. 2d 461 (S.D.N.Y. 2014) ......................................................................... 2
*FTC v. Wellness Support Network, Inc.*,
  2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) ............................................................... 2
*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020) .......................................................................................... 4
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ........................................................................................ 1
*N. Mariana Islands v. Millard*,
  287 F.R.D. 204 (S.D.N.Y. 2012) ................................................................................. 6
*N.Y. State Bar Ass'n v. FTC*,
  276 F. Supp. 2d 110 (D.D.C. 2003) ............................................................................ 6
*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
  142 S. Ct. 661 (2022) ................................................................................................... 6
*Patterson v. Respondus, Inc.*,
  2022 WL 7100547 (N.D. Ill. Oct. 11, 2022) ............................................................... 8
*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ........................................................................................ 4
*SEC v. Dibella*,
  2008 WL 6965807 (D. Conn. Mar. 13, 2008) ............................................................. 9
*SEC v. Milan Cap. Grp., Inc.*,
  2000 WL 1682761 (S.D.N.Y. Nov. 9, 2000) ............................................................... 9
*Witcher v. N.Y. City Dep't of Educ.*,
  2023 WL 2609342 (S.D.N.Y. Mar. 23, 2023) ............................................................. 2

**Statutes**

15 U.S.C. § 1401 ............................................................................................................................. 7
15 U.S.C. § 1692l ............................................................................................................................ 6
15 U.S.C. § 53(b)(2) .................................................................................................................... 8, 9
15 U.S.C. § 6821 ......................................................................................................................... 5, 8
15 U.S.C. § 8404 ............................................................................................................................. 7

Defendant Hanoch "Nuke" Goldstein respectfully submits this reply brief in support of his motion to dismiss the FTC's complaint.

## ARGUMENT

**I.     The FTC Has Not Alleged Sufficient Facts *Against Goldstein* To Support Its Claims**

The FTC acknowledges that, to assert claims under the FTCA or the GLBA, the FTC must plead facts showing that Goldstein (1) either (a) had authority to control Celsius's business, or (b) directly participated in the alleged misconduct, ***and*** (2) had knowledge of the violations.  The FTC's Opposition confirms that the Complaint lumps Goldstein in with others who controlled Celsius's business practices, but fails to justify such group pleading.  The FTC's claims against Goldstein should be dismissed.[1]

**A.     The FTC Does Not Adequately Allege Goldstein's "Authority to Control"**

Other than its own *ipse dixit*, the FTC offers nothing in the Complaint to support its allegation that Goldstein had "authority to control" Celsius's business. Opp. at 9; Compl. ¶ 22 (containing the only allegation of Goldstein's authority).  Such conclusory allegations are clearly insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint contains no factual allegations to explain how Goldstein—a software engineer who served as the Company's Chief Technology Officer ("CTO"), in charge of technology and R&D—had authority to control Celsius's business, make corporate policy, or otherwise control Celsius's alleged

---

[1] Because the Complaint's claims sound in fraud, Rule 9(b) applies.  ECF No. 41 ("Mot.") at 17–18.  The FTC disagrees, but argues that, in any event, "group pleading satisfie[s]" the 9(b) standard. ECF No. 50 ("Opp.") at 16.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) does not support the FTC's claim, but rather only sets forth a narrow exception to allow group pleading for interrelated companies that are effectively alter egos.  *Id.* at 173.  The FTC cites no case permitting group pleading with respect to individual corporate officers.

1

misrepresentations, financial products, or services. Compl. ¶ 33. The FTC's lack of particularized allegations on this score, despite its year-long investigation, speaks volumes.

The FTC acknowledges that Goldstein's title as CTO is insufficient to show his authority or give rise to personal liability. Opp. at 13; *see also FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011); *FTC v. Swish Mktg., Inc.*, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting claim that individual's "status as CEO, standing alone, plausibly demonstrates his control over the company"). Any contrary rule would subject virtually every corporate officer—regardless of their duties—to automatic liability for corporate misdeeds.

Nor does Goldstein's involvement in the Executive and Risk Committees, each of which had more than a dozen members from various departments (Finance, HR, Technology, etc.), buttress the FTC's allegations. Opp. at 9. The Complaint does not allege what these committees did, their authority and remit, their involvement in the alleged wrongdoing, or Goldstein's role on each committee. Nonetheless, the FTC now boldly asserts—for the first time, and in conclusory fashion—that those committees addressed "issues directly relevant to Celsius's misconduct." Opp at 9. Such conclusory assertions in a brief cannot substitute for well-pleaded factual allegations in a complaint. *Witcher v. N.Y. City Dep't of Educ.*, 2023 WL 2609342, at *5 (S.D.N.Y. Mar. 23, 2023). Absent allegations as to how Goldstein's membership on those committees contributed to or oversaw the alleged wrongdoing, Goldstein had no more authority to control the Company than dozens of other innocent officers and employees on those committees, but not sued here.

The FTC's own authorities only underscore the Complaint's deficiencies. For example, the complaint in *FTC v. Tax Club, Inc.* contained detailed allegations of a corporate officer's authority, not just boilerplate legal incantations. 994 F. Supp. 2d 461, 471–72 (S.D.N.Y. 2014);

*see also* Weitzman Reply Decl. Ex. F ¶¶ 23, 74, 93.[2] Similarly, in *FTC v. Moses*, the court affirmed the grant of summary judgment to the FTC and concluded that the individual defendant had extensive authority over every aspect of the misconduct: he was a 50% owner of the company, served as the corporate defendants' general manager, handled the companies' finances and bank accounts, supervised the responsible wrongdoers, and fielded customer complaints, among other activities. 913 F.3d 297, 307–08 (2d Cir. 2019). The FTC has alleged nothing close to any of these facts against Goldstein, who was neither a director of the Company nor even a shareholder.

### B. The FTC Has Not Sufficiently Alleged Goldstein's "Direct Participation"

The FTC argues that the Complaint adequately alleges that Goldstein directly participated in the alleged misconduct, but improperly relies upon group pleading allegations in support. Opp. at 9–10. The FTC does not dispute the black-letter law prohibiting group pleading, Mot. at 7–8, but claims the rule is inapplicable given Goldstein's alleged authority to control Celsius's business. Not only has the FTC failed to allege such control, its argument proves too much. If a mere conclusory allegation that an officer had authority to control a business like Celsius (with over 800 employees and over $22 billion in assets)[3] is enough to permit reliance on group pleading, then every officer of every U.S. company—even the largest, like Walmart (with 2.1 million employees and $611 billion in revenues)—could be haled into court and accused of wrongdoing based on misconduct by others at the company. The law does not support that absurd proposition.[4]

---

[2] *FTC v. 1263523 Ontario Inc.*, 205 F. Supp. 2d 218 (S.D.N.Y. 2002) involved a default judgment, without any litigation of the disputed issues here.

[3] *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 18, 2022), ECF No. 45 (First Day Hr'g Presentation) at 2.

[4] The FTC cites to *FTC v. Sterling Precious Metals, LLC*, Opp. at 9, 11, but there, the FTC included detailed allegations of how the individual defendant participated in the fraudulent conduct. 2013 WL 595713, at *4 (S.D. Fla. Feb. 15, 2013). It did not permit group pleading to substitute for those detailed allegations.

Nor does the Complaint include any allegations that show Goldstein's direct participation in the alleged misconduct of Mashinsky and others. For example, Goldstein's presence at a few Mashinsky AMAs does not show Goldstein's direct participation in the misstatements. While the FTC continues to claim that Goldstein "made misrepresentations himself" during an AMA, its reliance on the allegation in Paragraph 44 of the Complaint regarding an alleged head nod is misplaced. It is unrebutted that examination of the actual recording shows no head nod actually occurred.[5] Mot. at 12–13. The FTC makes no effort to rebut this evidence or justify its speculation. Nor has the FTC alleged that Goldstein was aware that Mashinsky's statements were false. *Id.*

As to Goldstein's tweets, the FTC ignores that the Complaint contains no allegation that the tweets were false when made. *See* Mot. at 14–15. And the FTC's claim that Section 230 of the Communications Decency Act does not apply (Opp. at 12) is based on a new standard—that retweets by officers of their employer's press releases falls outside the scope of the CDA—that no court has ever adopted or urged, and that is found nowhere in the CDA. Also, far from holding that "retweets are [not] *per se* entitled to immunity," as the FTC asserts (*id.*), the Second Circuit refused to rule on this issue in *La Liberte v. Reid*. *See* 966 F.3d 79, 90 n.8 (2d Cir. 2020). The plain meaning of the statute and applicable case law immunize Goldstein's retweets. Mot. at 14.

### C.   The FTC Has Not Sufficiently Alleged Goldstein's Knowledge

Similarly, the FTC has not alleged Goldstein's knowledge of the misstatements—*i.e.*, that he knew (or should have known) that the statements were false when made. Instead, the FTC

---

[5] Despite its own reliance on extrinsic documents (Opp. at 20, 20 n.8), the FTC objects when Goldstein invites consideration of such evidence. Opp. at 14. Courts can consider documents incorporated or integral to the complaint. Mot. at 5 n.2; *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Bongiorno v. Baquet*, 2021 WL 4311169, at *10 (S.D.N.Y. Sept. 20, 2021). The FTC should not be permitted to cherry-pick documents and statements and then complain when Goldstein offers the complete materials to expose the FTC's misstatements. *See Campanelli v. Flagstar Bancorp*, 2020 WL 5350245, at *6 (S.D.N.Y. Sept. 4, 2020).

merely repeats the conclusory allegation that Goldstein had "direct knowledge that several of Celsius's statements were misleading." Opp. at 10. That boilerplate allegation is clearly not enough. As to the Board deck that the Complaint alleges shows Goldstein's knowledge, the FTC has no response to the fact that it cherry-picks from the deck. *Id*. Goldstein was not a member of the Board of Directors, and the FTC has not and cannot allege that he attended the portion of the Board meeting discussing Celsius's financial condition. In any event, the Board presentation does not alert anybody to an imminent bankruptcy. It says the opposite: that Celsius has a bright future and a "clear path to build our capital position." Mot. at 11–12.

## II. The FTC's Claim Under the GLBA Should Be Dismissed

### A. The Complaint Does Not Sufficiently Allege Goldstein Violated the GLBA

Goldstein's motion demonstrated that the Complaint fails to allege specific, factual allegations to state a GLBA claim against Goldstein. Mot. at 16–17. Rather than show specific allegations regarding Goldstein's involvement in a scheme to violate the GLBA, the FTC instead continues to focus on ***Celsius's*** conduct in an effort to tar Goldstein along the way. Opp. at 5 ("The Complaint alleges that Celsius obtained . . . "). Indeed, the nearly forty paragraphs of the Complaint that the FTC then references contain almost no allegations specific to Goldstein, only generic references to "Defendants." Opp. at 5–6. This is the type of group pleading that courts routinely reject. Mot. at 7–8; *supra* at 4. Of the few cited paragraphs that do reference Goldstein (Compl. ¶¶ 31, 32, 44, 75, 79, 82, 91), none demonstrates any involvement by Goldstein in Celsius's alleged efforts to obtain "customer information of a financial institution relating to another person" through false misrepresentations "to a customer of a financial institution." 15 U.S.C. §§ 6821(a), (a)(2). And as already shown above, the FTC's reliance on Goldstein's presence on various committees does not adequately allege Goldstein's "authority to control" the

5

conduct that allegedly violated the GLBA. Absent more specific allegations tying **Goldstein** to the scheme, the GLBA claim against Goldstein must be dismissed.

### B. The FTC Cannot Seek Money Damages for GLBA Violations Under § 19

Indisputably, administrative agencies like the FTC have only those enforcement powers *expressly* granted by Congress, and courts have no authority to go beyond that congressional grant of power. Mot. at 20; *see also Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 142 S. Ct. 661, 665 (2022) ("Administrative agencies . . . possess only the authority that Congress has provided . . . [and] [w]e expect Congress to speak clearly when authorizing an agency to exercise powers . . . "); *AMG Cap. Mgmt. v. FTC*, 141 S. Ct. 1341, 1346–47 (2021). As demonstrated in Goldstein's motion to dismiss, the FTC's attempt to use the GLBA here fails because the plain language of the statute does not show a *clear* and *unambiguous* grant of authority to enforce the GLBA as a "trade regulation rule." Mot. at 19–21.

Nowhere does the statute use that phrase (or anything remotely similar); and despite hundreds of pages of legislative history underlying the GLBA, nowhere therein did Congress state its intention that the FTC enforce the GLBA as a trade regulation rule. This stands in stark contrast to the language Congress expressly used in the FDCPA, where it expressly authorized treatment as a rule violation. *See* 15 U.S.C. § 1692l; *see also N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 135 (D.D.C. 2003) ("[W]hen Congress legislates in one area with explicit reference in a statute on an area of concern, but fails to reference that same subject matter in another statute, its silence is evidence that Congress did not intend for there to be applicability in the latter statute."). The omission of this language by Congress in the GLBA is not accidental, and has significant impact on the meaning of the statute. *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 211 (S.D.N.Y. 2012) ("The legislative omission of one word from statutory text . . . might not seem to be of enormous consequence. But, . . . 'the devil lurks precisely in such details'").

6

The FTC responds that the GLBA permits the FTC to enforce it "in the same manner and with the same power and authority" as the FTC has under the FDCPA. *See* Opp. at 17 (quoting 15 U.S.C. § 6822(a)). At most, this creates an ambiguity, and is not a clear and express congressional grant of authority. Other statutes—including the COVID-19 Consumer Protection Act ("CCPA") and the Restore Online Shoppers' Confidence Act ("ROSCA")—make clear that the FTC's manner, power, and authority do not include treating the statute akin to a trade regulation rule. Mot. at 21. The structure of those statutes demonstrate that Congress distinguished the FTC's manner, powers, and authority from its **treatment** of a statute as a rule violation. *See* Weitzman Reply Decl. Exs. A and B (highlighted excerpts from the CCPA and ROSCA). Whereas Goldstein's interpretation of the GLBA "give[s] effect . . . to every clause and word of a statute," Opp. at 17–18 (quoting *Williams v. Taylor*, 52 U.S. 362, 404 (2000)), the FTC's proffered interpretation conflates the FTC's power and authority with its treatment of a statute as a rule violation.

Judge Rakoff's ruling last week in *FTC v. RCG Advances, LLC* that GLBA violations "can be treated like rule violations," 2023 WL 6281138, at *11 (S.D.N.Y. Sept. 27, 2023), should not change this Court's analysis. Respectfully, the court's novel ruling is neither precedential nor persuasive: it provides no reasoning for its holding and does not engage with (or even cite) the statutory construction arguments based on the CCPA and ROSCA. To our knowledge, it is the first time any court in the past twenty-five years has expressly held that a GLBA violation may be enforced as a trade regulation rule. Other courts have expressly rejected the FTC's efforts to analogize the FTC's powers under the GLBA to its powers under the FDCPA. *See, e.g.*, *N.Y. State Bar Ass'n*, 276 F. Supp. 2d at 133.

As for the GLBA's applicability to the conduct alleged here, the FTC does not dispute that the GLBA was enacted to prevent privacy scams. Mot. at 16–19; *Patterson v. Respondus, Inc.*, 2022 WL 7100547, at *1 (N.D. Ill. Oct. 11, 2022) (The GLBA "is a federal privacy law; it regulates how 'financial institutions' handle certain customer information."). The FTC website similarly describes the narrow reach of the GLBA. *See* Weitzman Reply Decl. Ex. C. This narrower reach of the GLBA is supported by the statute's plain terms, which prohibit making fraudulent misrepresentations to employees or customers of a financial institution where such misrepresentation are intended to "cause to be disclosed . . . customer information of a financial institution . . . " 15 U.S.C. § 6821. Indeed, with one exception last week (*RCG Advances*), over the past twenty-five years no court has endorsed the FTC's use of the GLBA to enforce run-of-the-mill consumer protection already claims encompassed by the FTCA.

The FTC's position also ignores the important structural limitations Congress imposed on the FTC's authority to seek monetary relief—limitations that the Supreme Court affirmed two years ago in *AMG Cap.*—to make sure that defendants have adequate notice, either through clear rule making or a specific cease and desist order, before subjecting defendants to monetary relief. Mot. at 21–22; *see also FTC v Credit Bureau Ctr., LLC*, 937 F.3d 764, 771 (7th Cir 2019). Nothing in the GLBA shows Congress's intent to alter that fundamental framework, and the FTC should not now be permitted to stretch the GLBA to reach conduct never intended to be encompassed within the ambit of that privacy statute without appropriate notice and rulemaking.

## III.     The FTC Has Failed To Show Any Basis for Injunctive Relief *Against Goldstein*

Congress has limited the FTC's authority to seek permanent injunctive relief only to "proper cases"—not all cases. 15 U.S.C. § 53(b)(2). But that is exactly what the FTC's Opposition

proposes: that the FTC can seek injunctive relief whenever it alleges a prior violation of the FTCA and includes a boilerplate allegation that it may recur in the future. That cannot be the law.

The FTCA makes clear that injunctive relief is "proper" where the FTC has shown that the defendant "is violating, or is about to violate" the FTCA. 15 U.S.C. § 53(b)(1). Contrary to the FTC's claim, Goldstein does not "misstate th[is] legal standard," Opp. at 20–21, but instead quotes from the statute itself. This Court has repeatedly affirmed this as the governing standard,[6] as has the Supreme Court. *See, e.g.*, *AMG Cap.*, 141 S. Ct. at 1344–48 ("Section 13(b) . . . authorizes the [FTC] to obtain, 'in proper cases,' a 'permanent injunction . . . against any person . . . it believes is violating, or is about to violate'" the FTCA.).

In any event, the FTC's allegations fail both the "about to violate" standard and the multi-factored "likelihood of recurrence" test that the FTC advances. The FTC has not pled any facts to demonstrate Goldstein's involvement in the alleged violation was anything more than an "isolated occurrence," based on a few occasions where Goldstein sat near Mashinsky during an AMA or retweeted Celsius's own press statements. That is far from the "systematic wrongdoing" the law requires. *See, e.g.*, *SEC v. Milan Cap. Grp., Inc.*, 2000 WL 1682761, at *9 (S.D.N.Y. Nov. 9, 2000); *SEC v. Dibella*, 2008 WL 6965807, at *12–13 (D. Conn. Mar. 13, 2008). And the lack of scienter allegations against Goldstein only undermines any inference of likely recurrence. *See supra* at 5.

Nor does the FTC's conclusory allegation that "future violations [by Goldstein] could be anticipated," Opp. at 19 (quoting *FTC v. Shkreli*, 581 F. Supp. 3d 579, 638 (S.D.N.Y. 2022)), support injunctive relief. The FTC has not and cannot plead that Goldstein is currently employed

---

[6] *See, e.g.*, *FTC v. Roomster Corp.*, 2023 WL 1438718, at *5 (S.D.N.Y. Feb. 1, 2023) (applying the "is violating" or "about to violate" standard); *FTC v. Vyera Pharm., LLC,* 479 F. Supp. 3d 31, 43–45 (S.D.N.Y. 2020) (same).

9

at Celsius (he departed six months ago);[7] that he remains in the crypto industry (he does not); or that Celsius is continuing its operations (it is in bankruptcy).[8] The fact that Goldstein received a six-figure annual salary and made unspecified sales of CEL token does not reasonably permit the FTC to engage in rank speculation—never alleged in the Complaint—that Goldstein can form "another cryptocurrency or financial services company and repeat[] the same or similar law violations." Opp. at 20.

Indeed, the FTC's authorities confirm the sheer inadequacy of its allegations here.[9] In each of *Accusearch Inc.*, *Roomster*, *Vyera Pharm.*, and *Elec. Payment Sols. of Am.* (Opp. at 20–21), the individual defendants continued to work for the wrongdoer corporation (or in the same sector)[10] and/or had a lengthy, repeat history of wrongdoing.[11] To seek injunctive relief on this slim reed makes a mockery of Congress's direction that injunctions be sought only in "proper cases."

---

[7] Goldstein did not depart from Celsius "as a result of government intervention." Opp. at 22 n.10. The FTC never subpoenaed Goldstein, interviewed him, or deposed him before filing its Complaint. The first communication between undersigned counsel and the FTC occurred on June 6, 2023, months after Goldstein departed. *See* Weitzman Reply Decl. Ex. D.

[8] Contrary to the FTC's claim (Opp. n.11), before the filing of the FTC lawsuit, the Celsius website alerted users that Celsius "filed voluntary petitions for Chapter 11 Bankruptcy relief" and that "many of the services and features are not available at this time." Weitzman Reply Decl. Ex. E

[9] In *FTC v. Minuteman Press*, cited by the FTC, the court declined to issue an injunction against the individual defendant (Haber) because he "moved on to another position with another company" and was not "in a position to commit future violations." 53 F. Supp. 2d 248, 261 (E.D.N.Y. 1998).

[10] *See* Weitzman Reply Decl. Ex. G at ¶ 6 (alleging that individual defendant ***currently*** "is the sole officer and director" of the corporate defendant); Weitzman Reply Decl. Ex. H at ¶¶ 17–19 (individual defendants ***currently*** are "responsible for approving . . . platform content" and "managing . . . advertising and marketing practices, billing practices, . . . consumer complaints, . . . ."); Weitzman Reply Decl. Ex. J ¶¶ 23–25, 29–31 (individual defendants ***currently*** are company's "director[s]," "managing member[s]," "CEO and co-owner[s]," and "Risk Manager").

[11] See Weitzman Reply Decl. Ex. I at ¶¶ 33–36, 47, 50, 52 (individual defendants engaged in identical misconduct at prior business venture).

## CONCLUSION

For the foregoing reasons and those set forth in the Opening Brief, Goldstein respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: October 6, 2023

                                                  Respectfully submitted,

| Leo Tsao | /s/ Avi Weitzman |
|---|---|
| PAUL HASTINGS LLP | Avi Weitzman |
| 2050 M Street NW | Joshua Kahane |
| Washington, D.C. 20036 | PAUL HASTINGS LLP |
| Tel: 202-551-1910 | 200 Park Avenue |
| leotsao@paulhastings.com | New York, NY 10166 |
| | Tel: (212) 318-6920 |
| | aviweitzman@paulhastings.com |
| | joshuakahane@paulhastings.com |

*Counsel for Defendant Hanoch "Nuke" Goldstein*

11