# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>  v.<br><br>CELSIUS NETWORK INC., a corporation, CELSIUS NETWORK LLC, a limited liability company, CELSIUS NETWORKS LENDING LLC, a limited liability company, CELSIUS LENDING LLC, a limited liability company, CELSIUS KEYFI LLC, a limited liability company, CELSIUS MINING LLC, a limited liability company, CELSIUS US HOLDING LLC, a limited liability company; CELSIUS US LLC, a limited liability company; CELSIUS MANAGEMENT CORP., a corporation;<br><br>ALEXANDER MASHINSKY, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, and Celsius US Holding LLC;<br><br>SHLOMI DANIEL LEON, individually and as an officer of Celsius Network Inc., Celsius Network LLC, Celsius Networks Lending LLC, Celsius Lending LLC, Celsius KeyFi LLC, Celsius Mining LLC, Celsius US Holding LLC; and<br><br>HANOCH "NUKE" GOLDSTEIN, individually and as an officer of Celsius Network LLC and Celsius Lending LLC,<br><br>     Defendants. | Case No. 1:23-cv-06009-DLC<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT S. DANIEL LEON'S MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT .......................................................................................................8

I.      The FTC's Complaint Is Subject to the Heightened Pleading Standard of
        Rule 9(b) ...............................................................................................9

II.     The Complaint Fails to Provide Particularized Allegations Showing
        Wrongful Conduct By Mr. Leon...............................................................11

        A.      The Complaint Fails to Allege a Claim Under Section 5(a) of the
                FTC Act ................................................................................... 12

                1.      The Complaint Pleads No Facts Demonstrating that Mr.
                        Leon Controlled the Alleged Misrepresentations ........................ 13

                2.      The Complaint Fails to Allege Facts to Demonstrate
                        Knowing, Direct Participation by Mr. Leon in the Alleged
                        Misrepresentations ....................................................... 15

                3.      The Complaint Fails to Allege Unfair Misappropriation
                        Under Section 5(a) Against Mr. Leon ........................... 19

        B.      The FTC Fails to Allege a Claim Under the GLBA ................................ 20

III.    The FTC Is Not Entitled to the Relief It Seeks....................................................23

        A.      The FTC Has Not Demonstrated an Ongoing or Imminent Violation
                of Any Law Enforced by the FTC to Warrant Injunctive Relief
                Under Section 13(b)............................................................... 23

        B.      The FTC Has Not Alleged a Violation of a Promulgated Rule to
                Warrant Monetary Relief Under Section 19 ........................... 24

CONCLUSION.....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. WestPoint–Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991) ................................................................................................9

*Am. Bar Ass'n v. F.T.C.*,
   430 F.3d 457 (D.C. Cir. 2005) ........................................................................................21

*AMG Capital Management, LLC v. F.T.C.*,
   141 S. Ct. 1341 (2021) ...........................................................................................2, 21, 23

*Amimon, Inc. v. Shenzhen Hollyland Tech Co*.,
   No. 20 Civ. 9170, 2023 WL 2478159 (S.D.N.Y. Mar. 13, 2023) ...............................8, 13

*Apex Mar. Co. v. OHM Enters., Inc.*,
   No. 10 Civ. 8119, 2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011) .....................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................22, 23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*.,
   493 F.3d 87 (2d Cir. 2007) ..............................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................22

*Brody v. Fox Broad. Co.*,
   No. 22CV6249 (DLC), 2023 WL 2758730 (S.D.N.Y. Apr. 3, 2023) ...............................4

*Carlin v. Davidson Fink LLP*,
   852 F.3d 207 (2d Cir. 2017) ..............................................................................................8

*Devane v. L'Oreal USA, Inc.*,
   No. 19 Civ. 4362, 2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020) ..................................11

*F.T.C. v. Adept Mgmt., Inc.*,
   No. 16 Civ. 00720-CL, 2016 WL 6542837 (D. Or. Nov. 3, 2016) .................................10

*F.T.C. v. Cantkier*,
   767 F. Supp. 2d 147 (D.D.C. 2011) ...............................................................................10

*F.T.C. v. Consumer Health Benefits Ass'n*,
   No. 10 Civ. 3551 ILG RLM, 2012 WL 1890242 (E.D.N.Y. May 23, 2012) .............10, 12

*F.T.C. v. Crescent Publ'g. Grp., Inc.*,
  129 F. Supp. 2d 311 (S.D.N.Y. 2001) ..................................................................12

*F.T.C. v. Evans Products Co.*,
  775 F.2d 1084 (9th Cir. 1985) ...........................................................................24

*F.T.C. v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021) .......................................................................23

*F.T.C. v. Facebook, Inc.*,
  581 F. Supp. 3d 34 (D.D.C. 2022) .....................................................................23

*F.T.C. v. J.K. Publ'ns, Inc.*,
  99 F. Supp. 2d 1176 (C.D. Cal. 2000) ...............................................................13

*F.T.C. v. Johnson*,
  No. 10 Civ. 02203, 2013 WL 2460359 (D. Nev. June 6, 2013) ...........................9

*F.T.C. v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016)..........................................................................15, 16

*F.T.C. v. Lights of Am., Inc.*,
  760 F. Supp. 2d 848 (C.D. Cal. 2010) .............................................................9, 11

*F.T.C. v. Med. Billers Network, Inc.*,
  543 F. Supp. 2d 283 (S.D.N.Y. 2008)..................................................................10

*F.T.C. v. Minuteman Press*,
  53 F. Supp. 2d 248 (E.D.N.Y. 1998) ..................................................................12

*F.T.C. v. QT, Inc.*,
  448 F. Supp. 2d 908 (N.D. Ill. 2006), *amended on reconsideration in part*,
  472 F. Supp. 2d 990 (N.D. Ill. 2007) ..................................................................14

*F.T.C. v. RCG Advances, LLC*,
  No. 20 Civ. 4432, 2023 WL 6281138 (S.D.N.Y. Sept. 27, 2023) ................... *passim*

*F.T.C. v. Swish Mktg.*,
  No. C 09-03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010).......10, 13, 20, 23

*F.T.C. v. Tax Club, Inc.*,
  994 F. Supp. 2d 461 (S.D.N.Y. 2014)..................................................................10

*F.T.C. v. Verity Int'l, Ltd.*,
  335 F. Supp. 2d 479 (S.D.N.Y. 2004)..................................................................12

*F.T.C. v. Vyera Pharms., LLC*,
  479 F. Supp. 3d 31 (S.D.N.Y. 2020)....................................................................23

*F.T.C. v. Wellness Support Network, Inc.*,
No. C-10-04879 JCS, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) .......................................13

*Hamilton v. Westchester Cnty.*,
3 F.4th 86 (2d Cir. 2021) ..........................................................................................................8

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013) .......................................................................................9

*Hyland v. Navient Corp.*,
No. 18 Civ. 9031 (DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019)............................8, 9, 11

*N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*,
No. 22 Civ. 6087, 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023)...............................................8

*N.Y. State Bar Ass'n v. F.T.C*,
276 F. Supp. 2d 110 (D.D.C. 2003) .........................................................................................21

*Neubauer v. Eva-Health USA, Inc.*,
158 F.R.D. 281 (S.D.N.Y. 1994) ..............................................................................................13

*United States ex rel. Polansky v. Pfizer, Inc.*,
822 F.3d 613 (2d Cir. 2016)........................................................................................................9

*Rahl v. Bande*,
328 B.R. 387 (S.D.N.Y. 2005)....................................................................................................9

*Rider v. Uphold HQ Inc.*,
No. 22CV1602 (DLC), 2023 WL 2163208 (S.D.N.Y. Feb. 22, 2023)......................................15

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..............................................................................................9, 11

*S.E.C. v. Rosenberger*,
No. 22CV4736 (DLC), 2023 WL 1928093 (S.D.N.Y. Feb. 10, 2023)........................................8

*SEC v. Celsius Network Limited and Alexander "Alex" Mashinsky*,
23 Civ. 6005 (S.D.N.Y. July 13, 2023)..................................................................4, 5, 14, 17

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
No. 11 Civ. 4362, 2012 WL 1890388 (S.D.N.Y. May 23, 2012)..............................................9

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ...................................................................................................10

*United States v. Mitchell*,
328 F.3d 77 (2d Cir. 2003)........................................................................................................21

*Utts v. Bristol-Myers Squibb Co.*,
    226 F. Supp. 3d 166 (S.D.N.Y. 2016) (DLC) ....................................................................9, 11

*Watson v. Riptide Worldwide, Inc.*,
    No. 11 Civ. 0874, 2013 WL 417372 (S.D.N.Y. Feb. 4, 2013) ..................................................9

*Welch v. TD Ameritrade Holding Corp.*,
    No. 07 Civ. 6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ...........................................9

*In re WorldCom, Inc. Sec. Litig.*,
    382 F. Supp. 2d 549 (S.D.N.Y. 2005)........................................................................................8

**Statutes**

15 U.S.C. § 45 ........................................................................................................................ *passim*

15 U.S.C. § 53(b) ........................................................................................................................23

15 U.S.C. § 6821 .................................................................................................................... *passim*

Ala. Code § 8-19-1 ......................................................................................................................11

Fla. Stat. Ann. § 501.204 ............................................................................................................11

**Other Authorities**

145 Cong. Rec. H11,544 (daily ed. Nov. 4, 1999) .....................................................................21

Federal Rule of Civil Procedure 9(b) ...................................................................................... *passim*

## PRELIMINARY STATEMENT

The threadbare allegations offered by Plaintiff Federal Trade Commission (the "FTC") against Defendant S. Daniel Leon ("Mr. Leon") are wholly insufficient to support the claims asserted, rendering the Complaint ripe for dismissal on numerous grounds.

First, the heightened pleading standard in Federal Rule of Civil Procedure 9(b) governs the FTC's claims alleging misrepresentation and misappropriation against Mr. Leon because those claims sound in fraud. Courts in this Circuit and others regularly apply Rule 9(b) to claims that sound in fraud even if the claims themselves are not denominated as fraud claims. Here, the FTC must plead its claims of alleged "deception" (Count I), "misappropriation" (Count II), and "fraudulent statements" (Count III)—all of which plainly involve averments of fraud—with particularity under the heightened pleading standard of Rule 9(b).

Second, under Rule 9(b), the Complaint fails to allege particularized facts sufficient to state a claim against Mr. Leon. Throughout the Complaint, the FTC lumps together Mr. Leon, Alex Mashinsky, and Hanoch "Nuke" Goldstein (together with Mr. Leon, the "Individual Defendants") in its descriptions of allegedly wrongful conduct, without alleging specific facts as to which individual did or said what. While replete with sweeping, conclusory statements regarding the purported conduct of the Individual Defendants as a group, the Complaint lacks any particularized facts demonstrating Mr. Leon's direct and knowing participation in or control over the alleged misconduct. This is especially egregious because the Complaint notes elsewhere that many statements and acts were attributable to Mr. Mashinsky alone. Courts routinely reject this type of "group" pleading as insufficient under Rule 9(b) and this Court should do so here.

Outside of the collective assertions made against the Individual Defendants as an undifferentiated group, only 8 of the Complaint's 114 paragraphs even reference Mr. Leon by

name.  Of these allegations, many are merely conclusory assertions, such as paragraph 21, which

asserts that Mr. Leon "formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Celsius."  Ultimately, the eight paragraphs boil down to

just two non-conclusory allegations:  that Mr. Leon appeared in a YouTube video with Mr.

Mashinsky, where he made no alleged misrepresentations, and that Mr. Leon assisted in drafting

a blog post that he later retweeted.  Even assuming their truth, these individual allegations fail to

establish the requisite elements of liability for an individual under Section 5(a) of the FTC Act

under the pleading requirements of Rule 9(b).

In addition, with respect to the FTC's claim under Section 521 of the Gramm-Leach-

Bliley Act, 15 U.S.C. § 6821 ("GLBA"), other than a recitation of the legal standard, the

Complaint does not contain any allegations of (1) authority to control, or (2) direct, knowing

participation by Mr. Leon in the alleged efforts by Celsius to obtain customer information

through misrepresentations.  The dearth of allegations relevant to Mr. Leon, particularized or

otherwise, fatally undermines the FTC's GLBA claim.  Moreover, the FTC improperly seeks to

employ Section 521 of the GLBA, a privacy statute enacted to prohibit misuse of consumer

information, in a manner inconsistent with the statute's legislative purpose.  The FTC's GLBA

claim, which is also the sole basis for the FTC's request for monetary relief, is nothing but a

transparent effort to circumvent the Supreme Court's ruling in *AMG Capital Management, LLC*

*v. Federal Trade Commission*, 141 S. Ct. 1341, 1347 (2021), which held that the FTC lacks

authority to obtain monetary relief under Section 13(b) of the FTC Act.  On only one occasion

has any court granted the FTC relief under Section 521 of the GLBA, and the facts of that case

are easily distinguished from those at issue here.  This Court should not permit this distorted use

of Section 521 of the GLBA where its application is incongruent with the plain language and purpose of the statute.

Third, the FTC is not entitled to the monetary or injunctive relief it seeks in this action. The FTC fails to allege a claim to demonstrate entitlement to monetary relief under the GLBA. And the FTC's demand for injunctive relief is equally foreclosed by its insufficient pleading. A request for injunctive relief under Section 13(b) of the FTC Act requires allegations of ongoing or imminent violation of the law. Here, the FTC has failed to allege any facts to support a reasonable belief of such ongoing or imminent violations by Mr. Leon.

For these reasons, the Court should dismiss all claims in the Complaint against Mr. Leon, with prejudice.

## **BACKGROUND**

### *Background of the Company*

Celsius is a financial services provider that operated in the cryptocurrency market beginning in 2017, and developed and launched its own cryptocurrency ("CEL") in 2018. *See* ECF No. 1, Complaint ("Compl.") ¶ 29. Celsius offered a variety of financial products and services to customers. *Id.* ¶ 30. To allow customers increased access to the cryptocurrency market, Celsius offered products such as the "Earn" program, which gave customers an annual percentage yield on the cryptocurrency assets they held with Celsius, and the "Borrow" program, which permitted them to use their cryptocurrency assets to secure loans. *Id.*

In March of 2018, Celsius conducted a public initial coin offering of CEL and released the Celsius Whitepaper, which detailed Celsius' mission, team, and business model for

prospective purchasers and the larger cryptocurrency community.[1]  Notably, Celsius'

Whitepaper refers to Mr. Mashinsky exclusively as "[o]ur founder".[2]

*Alex Mashinsky, Leader and Public Face of Celsius*[3]



From its inception until dissolution, Celsius operated under the direction of Alex

Mashinsky, Celsius' Chief Executive Officer, Board Chair, and majority owner of Celsius.  *See*

Compl. ¶ 20; *see also In re Celsius Network LLC, et al.*, Case No. 22-10964 (Bankr. S.D.N.Y.

Jan. 31, 2023), ECF No. 1956, Final Report of Shoba Pillay ("Examiner's Rpt."), Exhibit 3 to the

Declaration of Allison Wuertz (Wuertz Decl.), at 72.[4]  Mr. Mashinsky controlled and directed

the course of Celsius' business operations from its helm throughout the course of its evolution.

Compl. ¶¶ 20, 31-32, 35-38, 42, 44-45, 50, 59, 73, 75, 77-80, 83, 91-92, 94.  For example, Mr.

Mashinsky made "many of the[] representations independently" regarding Celsius' marketing,

---

[1]    Celsius, White Paper, https://celsius.network/static/celsius-whitepaper.pdf (last visited October 11, 2023) at 15, 17.

[2]    *Id.*

[3]    Medium, Alex Mashinsky, *Crypto You Can Believe In*, https://mashinsky.medium.com/ crypto-you-can-believe-in-ac094f9842ab, (last visited on October 11, 2023); Medium, Alex Mashinsky, "*Internet 3.0 has the potential to reclaim what's good for the people through blockchain*," https://mashinsky.medium.com/internet-3-0-has-the-potential-to-reclaim-whats-good-for-the-people-through-blockchain-b306880c93ac (last visited on October 11, 2023).

[4]    The FTC's Complaint and opposition incorporate by reference the related Bankruptcy Proceeding, *In re Celsius Network LLC, et al.*, Case No. 22-10964 (Bankr. S.D.N.Y. Jan. 31, 2023) (the "Bankruptcy Proceeding").  *See* Compl. ¶¶  7, 39, 51, 61, 87; *see also* FTC Opposition at 20. Accordingly, the publicly filed submissions made in the Bankruptcy Proceeding are appropriately considered in connection with this motion.  *See Brody v. Fox Broad. Co.*, No. 22CV6249 (DLC), 2023 WL 2758730, at *2 (S.D.N.Y. Apr. 3, 2023) ("In reviewing a motion to dismiss, a court may consider extrinsic material that the complaint incorporate[s] by reference, that is integral to the complaint, or of which courts can take judicial notice.") (internal citation and quotations omitted).

including statements representing Celsius as a "cryptocurrency-based alternative to banks," and stating that "'a run on the bank' . . . cannot happen at Celsius." *Id.* ¶ 31.

Witness testimony provided in the Bankruptcy Proceeding portrays Mr. Mashinsky's reign over Celsius' operations as dominant and wide-reaching, exemplified by evidence of Mr. Mashinsky "wresting control over" trading decisions, and "tak[ing] unilateral action concerning the price of CEL," among other instances of unilateral decision-making. Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 118, 224. Other testimony offered by Celsius employees reflects that Mr. Mashinsky's leadership style and constant changes in strategy for the Company led to "internal disagreements" between Mr. Mashinsky and other executives of the Company, including Mr. Leon. *Id.* at 82.

In connection with his leadership and direction of Celsius' business activities, Mr. Mashinsky has been criminally charged in a seven-count indictment, unsealed by the Court on July 13, 2023.[5] Mr. Mashinsky has also been named as a defendant in three additional actions brought by the SEC, the CFTC, and the Office of the Attorney General of New York.[6] With respect to Celsius' marketing activities, Mr. Mashinsky served as the public face and spokesperson of the Company. Mr. Mashinsky "aggressively promoted" and marketed the Company through various social media channels, cryptocurrency conferences, and public interviews, even prior to the formal constitution of the Company in 2018. *United States v. Alexander Mashinsky et al.*, 23-cr-347 (S.D.N.Y. 2023), ECF No. 1 ("Indictment"), at 2. As the FTC concedes, the vast majority of the alleged misrepresentations identified in the Complaint

---

[5]     *United States v. Alexander Mashinsky*, 23 Crim. 00347 (S.D.N.Y. 2023).

[6]     *SEC v. Celsius Network Limited and Alexander "Alex" Mashinsky*, 23 Civ. 6005 (S.D.N.Y. July 13, 2023); *CFTC v. Celsius Network, LLC and Alexander Mashinsky*, 23 Civ. 6008 (S.D.N.Y. July 13, 2023); *Letitia James v. Alex Mashinsky*, Index No. 450040/2023 (N.Y. Sup. Ct. 2023).

regarding Celsius' products and services were uttered "independently" by Mr. Mashinsky. Compl. ¶ 31.

In addition to overseeing, directing, and originating marketing content on behalf of the Company, in early 2020, Mr. Mashinsky created a self-titled video series on Celsius' YouTube channel called "Ask Mashinsky Anything" ("AMA").  *Id.* ¶ 32.  The FTC acknowledges that this platform, which was controlled and managed by Mr. Mashinsky, served as "[o]ne of Celsius'[] most prominent advertising channels."  *Id.*  Through this platform, Mr. Mashinsky conducted 179 live video sessions with Celsius customers and the larger cryptocurrency community.  *Id.* During these live video sessions, Mr. Mashinsky offered updates regarding the Company, and often touted the Company's services, and remarked on various customer offers, incentives, and rewards.  *Id.*

Of the many references to the AMA videos in the Complaint, the FTC does not identify Mr. Leon as the speaker of a <u>single</u> alleged misrepresentation and asserts that Mr. Leon merely appeared in exactly 1 of these 179 videos in 2020.  *See id.* ¶ 35.

<u>Mr. Leon's Limited Role in Celsius</u>

During this same time, Mr. Leon served initially as Chief Operating Officer and a member of the Board and other committees.  Compl. ¶ 21.  Unlike Mr. Mashinsky, Mr. Leon rarely engaged with the public on behalf of the Company and did not hold a public-facing role at Celsius.  *See id.* ¶ 21, 32.  In or around December 2021, Mr. Mashinsky removed Mr. Leon from his role as COO, eliminated most of his responsibilities, and gave him the title "Chief Strategy Officer" which he held until his resignation from the Company in October of 2022.  *Id.* ¶ 21. Under this new role, Mr. Leon's involvement in the operations of the Company were primarily limited to office and project management, human resources related activities, and the growth of

Celsius' Israel office.  *See* ECF No. 42, Ex. 1 to Avi Weitzman Decl. ("Weitzman Decl.") at 173-85, 290.

The Complaint mentions Mr. Leon in just eight paragraphs, one of which merely identifies his title and makes boilerplate assertions regarding his role.  *See* Compl. ¶ 21.  The remaining references to Mr. Leon allege that he:  (1) appeared in a single AMA video (of the 179 that the Complaint alleges Mr. Mashinsky created); (2) reposted a single blog post from Celsius' website, without comment, on his personal twitter account; (3) was "aware" of Celsius' financial conditions during Celsius' operation; (4) "helped craft" a blog post published by Celsius; and (5) made a series of routine, personal transactions utilizing his crypto assets in April and May of 2022.  *See id.* ¶¶ 32, 35, 44, 75, 82, 91, 94.[7]  These allegations do not demonstrate the requisite elements of the claims asserted by the FTC and underscore Mr. Leon's limited involvement.

For example, in the July 17, 2020 AMA video referenced by the FTC in the Complaint, in which Mr. Leon appears, Mr. Mashinsky remarked that Mr. Leon was characteristically unavailable for public appearances and videos and had to be "dragged" into participating in the AMA video session.  *See* Wuertz Decl., Ex. 2 (Transcript of July 17, 2020 AMA) at 1. Similarly, the Complaint vaguely alleges that Mr. Leon "helped craft" a blog post but fails to specifically allege (because it cannot) that Mr. Leon drafted the blog post, drafted any alleged misstatement in the post, controlled the drafting or dissemination of the blog post, or otherwise directed the inclusion of any of the alleged misstatements contained therein.  *See* Compl. ¶¶ 44, 82.  Last, the allegations regarding Mr. Leon's cryptocurrency transactions on April 13, 2022 do

---

[7]      The Complaint also confusingly alleges that Celsius never had enough liquidity to meet customer obligations, but then suggests that the timing of Mr. Leon's withdrawal of his assets is somehow suspicious because, at the time, Celsius did not have sufficient liquidity to meet customer obligations. *Compare* Compl. ¶¶ 43-46 *with* ¶ 91.  The Complaint offers no other facts to suggest that Mr. Leon's transactions were suspicious.

nothing more than recite the date and dollar amount. *See id.* ¶ 91.  The Complaint provides no

facts to suggest any deceptive behavior (nor could it), as the identified transactions are alleged to

have occurred an entire month before Celsius allegedly "described the liquidity crisis facing

Celsius as 'existential'. . . ." in May of 2022. *Id.*

## ARGUMENT

Dismissal of a complaint is appropriate when "it is clear from the face of the complaint,

and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a

matter of law." *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22

Civ. 6087, 2023 WL 5956142, at *3 (S.D.N.Y. Sept. 13, 2023) (internal citations and quotation

omitted).  On a motion to dismiss, a court generally "must accept[] as true the factual allegations

in the complaint [] [] and draw all inferences in the plaintiff's favor." *In re WorldCom, Inc. Sec.

Litig.*, 382 F. Supp. 2d 549, 555 (S.D.N.Y. 2005) (cleaned up).  However, a court does not need

to accept as true "legal conclusions, recitals of the elements of a cause of action, bare assertions,

or conclusory allegations." *Amimon, Inc. v. Shenzhen Hollyland Tech Co*., No. 20 Civ. 9170,

2023 WL 2478159, at *7 (S.D.N.Y. Mar. 13, 2023).  No court "is [] required to credit conclusory

allegations or legal conclusions couched as factual allegations." *S.E.C. v. Rosenberger*, No.

22CV4736 (DLC), 2023 WL 1928093, at *3 (S.D.N.Y. Feb. 10, 2023) (quoting *Hamilton v.

Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021)) (internal quotations omitted).  Accordingly,

"recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Hyland v. Navient Corp.*, No. 18 Civ. 9031 (DLC), 2019 WL 2918238, at *4 (S.D.N.Y.

July 8, 2019) (quoting *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017)).

## I. THE FTC'S COMPLAINT IS SUBJECT TO THE HEIGHTENED PLEADING STANDARD OF RULE 9(B).

Because the FTC's three counts alleged against Mr. Leon sound in fraud, the Complaint

must satisfy the pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.

Under Rule 9(b), "[c]laims that <u>sound in</u> fraud must be pleaded with particularity." *Hyland*,

2019 WL 2918238, at *12 (citing *United States ex rel. Polansky v. Pfizer, Inc.*, 822 F.3d 613,

617-18 (2d Cir. 2016)) (emphasis added).

Federal courts in this Circuit[8] and elsewhere routinely apply Rule 9(b)'s heightened

pleading standard to allegations of fraud or mistake regardless of whether "allegations [are]

styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause

of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Utts v. Bristol-Myers Squibb

Co.*, 226 F. Supp. 3d 166, 189 (S.D.N.Y. 2016) (Cote, J.) (claims of misrepresentation "sound in

fraud"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 459 (E.D.N.Y. 2013) (applying Rule 9(b)

to claims of false advertising and misrepresentation, holding that a "party must allege sufficient

facts from which a court may infer deception"); *see also F.T.C. v. Lights of Am., Inc.*, 760 F.

Supp. 2d 848, 854 (C.D. Cal. 2010) ("Rule 9(b) applies to claims for violation of the FTC Act,

just as 9(b) applies to claims for negligent misrepresentation"); *F.T.C. v. Johnson*, No. 10 Civ.

02203, 2013 WL 2460359, at *5 (D. Nev. June 6, 2013) (finding FTC Act claims are subject to

---

[8]    *See also Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) (applying Rule 9(b) to a claim of breach of fiduciary duty claim premised upon fraudulent misconduct); *Rahl v. Bande*, 328 B.R. 387, 412 (S.D.N.Y. 2005) (same); *Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904, 2009 WL 2356131, at *21 (S.D.N.Y. July 27, 2009) (holding that Rule 9(b) applied to unjust enrichment claim premised on alleged fraudulent acts); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44–45 (2d Cir. 1991) (affirming Rule 9(b)'s applicability to an intentional misrepresentation claim); *Apex Mar. Co. v. OHM Enters., Inc.*, No. 10 Civ. 8119, 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011) (same); *Watson v. Riptide Worldwide, Inc.*, No. 11 Civ. 0874, 2013 WL 417372, at *4 (S.D.N.Y. Feb. 4, 2013) (applying Rule 9(b) to a claim of negligent misrepresentation).

Rule 9(b)); *F.T.C. v. Adept Mgmt., Inc.*, No. 16 Civ. 00720-CL, 2016 WL 6542837, at *2 (D. Or. Nov. 3, 2016) (applying Rule 9(b) to FTC Act claims); *F.T.C. v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *2 (N.D. Cal. Feb. 22, 2010).[9]

Application of Rule 9(b) to claims sounding in fraud, such as those alleged here, is appropriate because it is consistent with the purpose of Rule 9(b), which serves "to give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints as a pretext for the discovery of unknown wrongs . . . ." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). This is particularly true where the allegations are asserted by a government entity, given the reputational implication of such alleged conduct. *See, e.g.*, *F.T.C. v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011) (acknowledging Rule 9(b) as an "important safeguarding function" where an agency of the "government, with all of its concomitant force, brings an accusation of implicit dishonesty against an individual, even if short of moral turpitude").

Here, the Complaint repeatedly uses the language of fraud, leaving no doubt that the FTC's claims against Mr. Leon and the other Individual Defendants sound in fraud and should be pled with particularity. *See, e.g.*, Compl. ¶ 3 (Defendants "duped" consumers); *id.* ¶ 37 ("falsely claimed"); *id.* ¶¶ 4, 42, 76 (Defendants "concealed" Celsius' finances); *id.* ¶¶ 10, 104, 110, 112 (Defendants used "false, fictious, or fraudulent statement[s]" to obtain consumer financial

---

[9]     While certain other cases have not applied Rule 9(b) to FTC Act claims, in each of those cases, the Court either did not reach the issue or commented about the applicability of Rule 9(b) in dicta. *See, e.g.*, *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551 ILG RLM, 2012 WL 1890242, at *6-7 (E.D.N.Y. May 23, 2012) (discussing in dicta the applicability of Rule 9(b) to Section 5 of the FTC Act but declining to "reach the issue" or disturb prior law of the case); *see F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014) (declining to consider the applicability of Rule 9(b) for lack of cited authority); *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008) (discussing Rule 9(b) in dicta but "declin[ing] to consider it" where raised in reply brief).

information); *id* ¶ 28 (referencing "scams and frauds involving cryptocurrency"); *id.* ¶¶ 5, 33, 42, 69, 71, 94, 101 (referencing "misrepresentations" and "misappropriated" customer assets); *id.* ¶¶ 39, 61, 92 (referencing consumers' belief and reliance on "Defendants' promises").

This Court also has consistently held that, where a complaint is based on false or misleading statements or omissions, it sounds in fraud and Rule 9(b) applies. *See Utts*, 226 F. Supp. 3d at 188 (claims of negligent misrepresentation "sound in fraud"). Other courts have expressly held that claims under the FTC Act "are analogous to allegations underlying claims for negligent misrepresentation" and are thus subject to Rule 9(b). *Lights of Am., Inc.*, 760 F. Supp. 2d at 854. Additionally, courts in this Circuit considering allegations of deceptive practices under various state laws analogous to Section 5 of the FTC Act routinely apply Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Hyland*, 2019 WL 2918238, at *11 (applying Rule 9(b) to claims under Florida's deceptive practice statute Fla. Stat. Ann. § 501.204); *see also Devane v. L'Oreal USA, Inc*., No. 19 Civ. 4362, 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020) (applying Rule 9(b) to claims under Alabama's deceptive practice statute, Ala. Code § 8-19-1).

For these reasons, the appropriate pleading standard to apply to the FTC's claims of misrepresentation and other deceptive acts against Mr. Leon is the heightened standard under Rule 9(b).

## II.     THE COMPLAINT FAILS TO PROVIDE PARTICULARIZED ALLEGATIONS SHOWING WRONGFUL CONDUCT BY MR. LEON.

To state a claim under the heightened pleading standard of Rule 9(b), a complaint must plead the elements of the claim with particularity. *See Rombach*, 355 F.3d at 170. This requires that "a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (citations omitted). Here, all of the allegations against Mr.

Leon are either impermissible group pleading, conclusory, or fail to allege facts with sufficient particularity.

As demonstrated below, the conclusory and group-pled allegations offered by the FTC fail to even meet the pleading threshold of this more lenient standard for both claims.

### A.      The Complaint Fails to Allege a Claim Under Section 5(a) of the FTC Act.

To state a claim under Section 5(a) of the FTC Act for deceptive acts or practices, the FTC must allege a "material representation, omission or practice that is likely to mislead consumers acting reasonably under the circumstances." *F.T.C. v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479, 495 (S.D.N.Y. 2004) (citation omitted); *see also F.T.C. v. Minuteman Press*, 53 F. Supp. 2d 248, 258 (E.D.N.Y. 1998).  "An act or practice is unfair if it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *F.T.C. v. Crescent Publ'g. Grp., Inc.,* 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001).

Where, as here, a violation of Section 5(a) is alleged against an individual actor for the deceptive acts or practices of a corporation, the FTC must set forth sufficient allegations to show that the individual (1) "participated directly in the deceptive acts or had the authority to control them;" and (2) "had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551 ILG RLM, 2012 WL 1890242, at *5 (E.D.N.Y. May 23, 2012) (internal quotations and citation omitted); *see also F.T.C. v. RCG Advances, LLC*, No. 20 Civ. 4432, 2023 WL 6281138, at *6 (S.D.N.Y. Sept. 27, 2023).

1.    **The Complaint Pleads No Facts Demonstrating that Mr. Leon Controlled the Alleged Misrepresentations.**

The FTC's theory of purported liability under Section 5(a) of the FTC Act for deceptive acts asserts that "Defendants [] misrepresented Celsius's products and services."  Compl. ¶¶ 33-68.  In the sole factual allegation offered to show that Mr. Leon controlled or had the authority to control the alleged deceptive acts, the FTC recites only conclusory boilerplate that "[a]cting alone or in concert with others, [Mr. Leon] has . . . controlled, had the authority to control . . . the acts and practices of Celsius, including the acts and practices set forth in this Complaint." Compl. ¶ 21.[10]

Federal courts have repeatedly rejected this very language (which appears to be routinely recycled by the FTC across jurisdictions) as "conclusory" and insufficient to establish the "authority to control" prong of Section 5(a)'s liability standard.  *See, e.g.*, *Swish Mktg*., 2010 WL 653486, at *5 ("The Commission's conclusory assertions of authority—untethered to virtually any supportive facts—do not support an inference of [the individual defendant's] involvement."); *F.T.C. v. Wellness Support Network, Inc*., No. C-10-04879 JCS, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011).

Likewise, Mr. Leon's role as a corporate officer alone cannot suffice to show that he controlled or had the authority to control the alleged misrepresentations or misappropriation.  *See Neubauer v. Eva-Health USA, Inc*., 158 F.R.D. 281, 285 (S.D.N.Y. 1994) ("[B]are allegation[s] of control would not suffice either, as the Court need not accept as true on a motion to dismiss allegations which amount simply to legal conclusions."); *see also F.T.C. v. J.K. Publ'ns, Inc.*, 99

---

[10]    The FTC has not alleged any facts to support the assertion that Mr. Leon "act[ed] alone" in connection with the identified misrepresentations or alleged acts of misappropriation.  Compl. ¶ 21.  As noted above, the Court need not accept conclusory assertions as true on a motion to dismiss.  *See Amimon*, 2023 WL 2478159, at *7.

F. Supp. 2d 1176, 1208 (C.D. Cal. 2000) (finding that the individual defendant's role as an officer or director on paper, without more, did not sufficiently show authority to control); *F.T.C. v. QT, Inc*., 448 F. Supp. 2d 908, 973–74 (N.D. Ill. 2006), *amended on reconsideration in part*, 472 F. Supp. 2d 990 (N.D. Ill. 2007) (declining to "limit its inquiry to whether an individual defendant was or was not a corporate officer" and requiring "a broader inquiry and evaluat[ion] [of] the individual's level of corporate involvement.").

The allegations in the Complaint, read as a whole, actually highlight the absence of any particularized facts to suggest that Mr. Leon exercised control over the alleged misrepresentations.  For example, the FTC characterizes certain alleged misrepresentations as statements made by "Mr. Mashinsky, personally" and concedes that "[s]ince at least 2019, . . . Mr. Mashinsky made many of the [alleged] representations underlinedindependently."  Compl. ¶ 31 (emphasis added).[11]

The Complaint further confirms Mr. Mashinsky's primary and extensive role in Celsius' advertisement efforts as the creator of the AMA live video series.  *See id.* ¶ 32.   The video series was named after Mr. Mashinsky ("Ask Mashinsky Anything") and Mr. Mashinsky appeared in all AMA episodes as of June 2022.  Compl. ¶ 32.  The Complaint proceeds to cite to four specific AMA episodes and allege that statements that Mr. Mashinsky made during those episodes were misleading.  *Id.* ¶¶ 35-39; *see also* Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 236 (Mr. Mashinsky describing AMA as a platform where he "just went on a show for an hour once a week to tell people how I feel.").

---

[11]      Moreover, the Bankruptcy Proceeding record contains statements from Celsius' customers attributing the statements made during the AMAs solely to Mr. Mashinsky, not Mr. Leon or other Celsius executives.  *See, e.g*., Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 253 ("A third customer wrote, 'I was tricked into thinking Celsius was as safe as a bank account, by watching Alex's AMAs . . . I ended up having 75% of my savings in there.'") (emphasis added).

In addition to his self-titled AMA YouTube series, Mr. Mashinsky also frequently conducted interviews with various media outlets to discuss updates regarding Celsius' business activities, further evidencing that he served as the designated (and arguably, sole) conduit between Celsius, its consumer base, and the larger cryptocurrency community.[12]  In stark contrast, the Complaint asserts no factual allegations against Mr. Leon that come close to demonstrating actual control and authority over the alleged misrepresentations.  Indeed, the lone allegations against Mr. Leon are that he appeared.  Compl. ¶¶ 35, 82.  Neither of these allegations demonstrates control or authority, but instead highlights Mr. Leon's passive role.  Accordingly, this Court should reject the FTC's conclusory assertions regarding Mr. Leon's purported authority to control the alleged misconduct.

> **2.      The Complaint Fails to Allege Facts to Demonstrate Knowing, Direct Participation by Mr. Leon in the Alleged Misrepresentations.**

Unable to establish Mr. Leon's control or involvement in the alleged deceptive acts through his corporate office, the FTC must point the Court to particularized facts showing that Mr. Leon "directly participated" in the alleged misrepresentations and possessed the requisite knowledge of the deceptive acts.  Despite its lengthy investigation, and presumably aided by collaboration with other agencies, the FTC offers no such factual assertions demonstrating Mr. Leon's <u>direct</u> participation in the alleged scheme.  *See generally* Compl.  Allegations of incidental or passive involvement will not suffice.  *See F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158, 170 (2d Cir. 2016) ("the FTC Act does not [] provide for aiding and abetting liability."); *see also Rider v. Uphold HQ Inc*., No. 22CV1602 (DLC), 2023 WL 2163208, at *8 (S.D.N.Y. Feb. 22, 2023) (granting motion to dismiss claim of misrepresentation where the

---

[12]      *See, e.g., supra* note 7; *see also* Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 245 (noting that "the Examiner reviewed more than 350 articles in which Mr. Mashinsky was quoted").

complaint "failed to identify any false representation [the defendant] made that he should have known was incorrect" and finding "vague allegations" that the "[defendant] adopted [corporate] statements[,]" "made statements on his own personal Twitter" account or "approv[ed] . . . blog posts which appeared on the [corporate] website," insufficient to meet the pleading standard).

This Court, in *Federal Trade Commission v. Quincy Bioscience Holding Co., Inc.*, granted an individual defendant's motion to dismiss under similar circumstances. 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019). In *Quincy Bioscience*, the Court determined that the FTC failed to adequately allege participation and knowledge of the alleged deceptive acts based solely on boilerplate allegations that the individual defendant "participated in the acts and practices of [the corporate entity]" and other assertions of passive involvement such as "giv[ing] media interviews, sign[ing] research agreements, pre-approv[ing] research proposals, and review[ing] Defendants' advertising" which did not "show that [the individual defendant] knew the results of the research or participated in the false advertising." *Id.* at 221 (internal quotations omitted). In comparison, the FTC has alleged far less against Mr. Leon.

The FTC seeks to attribute to Mr. Leon five discrete "misrepresentations" alleged to have been made by "Defendants": (1) Celsius did not make unsecured loans; (2) Celsius maintained sufficient liquid crypto assets to satisfy its consumer obligations; (3) consumers could withdraw the cryptocurrency they deposited at any time; (4) Celsius maintained a $750 million insurance policy for consumer deposits; and (5) consumers could earn "up to 17% APY and up to 18.63% APY." *Id.* ¶ 33.

The Complaint, however, contains no facts to showing that Mr. Leon directly participated in these misrepresentations. As the FTC concedes, the alleged misstatements were uttered by Mr. Mashinsky. *See id.* ¶ 31. In fact, the Bankruptcy Proceeding record reflects that during the

16

course of Mr. Mashinsky's AMA series, Celsius' Chief Risk Officer required that the Company include disclaimer language on AMA videos, expressly ascribing all representations made in any AMAs solely to Mr. Mashinsky.  *See* Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 266.

Further, with respect the alleged misrepresentation that "Celsius did not make unsecured loans," Compl. ¶¶ 34-42, the FTC's sole factual assertion of support demonstrating Mr. Leon's participation is his appearance in a single episode of Mr. Mashinsky's AMA video series in 2020, during which Mr. Mashinsky made a statement relating to "non-collateralized loans." *Id.* ¶ 35 (emphasis added).  The FTC contends that Mr. Leon's mere appearance (compelled at Mr. Mashinsky's direction) on a single AMA episode equates to a tacit agreement by Mr. Leon to the substance of the statements made by Mr. Mashinsky during the broadcast.  This allegation falls far short of what Rule 9(b) requires.  Moreover, adoption of the FTC's theory would implicate every guest who appeared on one of the hundreds of live AMA sessions hosted by Mr. Mashinsky.

With respect to the four remaining representations, the Complaint lacks any particularized factual allegations demonstrating that Mr. Leon was even aware of these alleged misrepresentations, let alone directly participated in them.

The Complaint also fails to allege any facts showing that Mr. Leon possessed "knowledge of the particular deception at issue." *RCG Advances, LLC*, 2023 WL 6281138, at *6 ("[K]nowledge may be established by showing that the individual defendant had actual knowledge of the deceptive conduct, or was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning []the truth.") (citation omitted).

The Complaint is devoid of any factual assertion demonstrating that Mr. Leon had "actual knowledge" of Mr. Mashinsky's utterance of the alleged misstatements or that they were factually inaccurate.  Nor does it assert that he was "indifferent" to the impact of dissemination of false information on the Celsius community (he was not).[13]  Further, Mr. Leon was not involved in the business affairs relating to promoting, marketing, and advertising of Celsius' services and products online and on social media—beyond a single blog post and a silent appearance in a single AMA video.  *See id.* at 237 (Mr. Mashinsky stated "that an hour prior to each live AMA beginning, he met with Marketing, Legal, and Compliance to discuss the agenda for the upcoming AMA.").

Even those employees who were involved in Celsius' marketing, production, and advertising activities were often unable to verify the truth and falsity of Mr. Mashinsky's statements in real-time or after filming.  As the internal production team noted in the summer of 2021, Celsius employees often struggled to identify the source of the information Mr. Mashinsky shared during his live AMAs.[14]  Given Mr. Leon's limited role in the business development aspect of the Company, the generalized allegations asserted do not show that he possessed knowledge of the alleged misrepresentation, let alone knowledge sufficient to discern the falsity of Mr. Mashinsky's various statements in real-time or prior to their dissemination to the public.

---

[13]      *See* Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 191 ("Mr. Leon, commented on the need for better processes, signing things, approving things, [and] putting a foundation in place.").

[14]      *See* Wuertz Decl., Ex. 3 (Examiner's Rpt.) at 266-67 (Celsius' Head of Production and Video Producer and analytics team referring to the need for "fact checking" and "greater visibility" on the source of the information disseminated by Mr. Mashinsky during the AMA video series and acknowledging that data was "scattered" throughout the Company).

Finally, the Complaint fails to provide any factual support demonstrating that Mr. Leon possessed knowledge regarding the alleged "financial realities" of the Celsius operation.  Compl. ¶ 76.  The sole assertion made by the FTC relating to the Individual Defendants' knowledge of purported financial distress is a truncated quotation from page 86 of the May 2022 Board presentation.  *See* Compl. ¶ 75; *see also* Ex. 1 to Weitzman Decl. at 87.  The full quotation is "Although our capital currently sits near zero-we have a clear path to build up our capital position[.]"  Ex. 1 to Weitzman Decl. at 87 (emphasis added).  The complete text further demonstrates that Mr. Leon lacked the requisite knowledge of the falsity of the alleged misrepresentations relating to the Company's financial status.  *See* Ex. 1 to Weitzman Decl. at 87.

As the Bankruptcy Proceeding record shows, during the May 2022 Board meeting, Board members heard from consultants who painted an optimistic picture for the Company.  *See generally id*.  The presentation, incorporated by reference in the Complaint, reflects that, in April and May of 2022, the Company was in position to rebuild its capital, had retained adequate reserves, and intended to take Celsius' mining business public as another revenue generator.  *Id.*

Accordingly, the same conclusion drawn by the Court in *Quincy Bioscience* must be drawn here.  The scant factual allegations contained in the Complaint relating to Mr. Leon do not show that he had knowledge of the purported falsity of Mr. Mashinsky's statements at the time they were made, was indifferent to the alleged deception, or should have otherwise known of the alleged misrepresentations.

### 3.    The Complaint Fails to Allege Unfair Misappropriation Under Section 5(a) Against Mr. Leon.

The three paragraphs which make up the FTC's claim of misappropriation against Mr. Leon do not sufficiently allege unfair conduct under Section 5(a) of the FTC Act.  The

Complaint lacks any factual assertion demonstrating that Mr. Leon misappropriated consumers' cryptocurrency deposits or that any consumer was harmed as a result of any conduct exhibited by him.  Pleadings like these, which assert nothing more than "labels and conclusions or [constitute] a formulaic recitation of the elements of a cause of action [,] will not do" and cannot survive a motion to dismiss.  *See Swish Mktg.*, 2010 WL 653486, at *4.  Count Two of the Complaint does not even incorporate the prior factual recitation by reference.  Given the absence of a single factual assertion beyond a recitation of the elements of a claim of unfair acts and practices under Section 5(a), Count Two should be dismissed.[15]

### B.  The FTC Fails to Allege a Claim Under the GLBA.

Section 521 of the GLBA, in relevant part, makes it unlawful for "any person to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."  15 U.S.C. § 6821.

The statutory language reflects that the intended purpose of the GLBA is to address the "privacy of [] consumers[,]" "insure the security and confidentiality of consumer records and information" and "protect against unauthorized access to or use of such records or information . . . ." *Id.* § 6801.  Here, the FTC's allegations make no mention whatsoever of infringement on consumer privacy or unauthorized access or use of Celsius customers' financial information by the Individual Defendants.

The legislative history of the GLBA makes clear that Congress' aim in enacting this privacy statute was to give consumers "the power to choose whether their personal information

---

[15]    Even if the Court were to consider the substance of the factual assertions offered in connection with Count Two, the FTC fails to demonstrate that the alleged misrepresentations caused or were likely to cause "substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

will be shared by financial institutions[,]" not to regulate the volitional exchange of information between customers and financial service providers incidental to use of a financial services platform like Celsius. *See N.Y. State Bar Ass'n v. F.T.C*, 276 F. Supp. 2d 110, 112 (D.D.C. 2003); *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 459 (D.C. Cir. 2005) (citing 145 Cong. Rec. H11,544 (daily ed. Nov. 4, 1999)). In a clear deviation from the statute's aim and stated purpose, the FTC seeks to enforce the GLBA to seek monetary relief against an individual officer who did not utter a single alleged misstatement and did not participate in obtaining consumer financial information from Celsius customers. Indeed, the FTC seeks to distort the application of the GLBA in an effort to sidestep the Supreme Court's ruling in the *AMG* case that the FTC lacks authority to obtain monetary relief under Section 13(b) of the FTC Act.

This Court should reject the FTC's GLBA claim in this case, as an application of the statute on these facts, falls outside the bounds of the intended purpose of the statute and is incongruent with its legislative aim. *See United States v. Mitchell*, 328 F.3d 77, 81 (2d Cir. 2003) ("In determining the scope of the statute and the persons to whom it is applicable, we must consider not only the plain meaning of the language used in the statute, but also must interpret that language in light of the purposes Congress sought to serve by promulgating the relevant laws.").

The GLBA claim should be dismissed for the separate and independent reason that the FTC has not adequately alleged individual liability under the GLBA. As this Court recently opined in *RCG Advances, LLC*, the "same individual liability standard that applies under Section 5 of the FTC Act to determine if [a defendant] is individually liable" applies to an inquiry into individual liability for a corporation's violations of the GLBA. 2023 WL 6281138, at *10.

Under the individual liability standard, the Complaint fails to adequately allege a violation of the GLBA against Mr. Leon.

Here, other than a recitation of the legal standard, the FTC makes no showing of individual culpability as to Mr. Leon.  The Complaint lacks any <u>factual</u> assertion to demonstrate that Mr. Leon controlled, had authority to control, or directly participated in the alleged misrepresentations, or that he (or anyone at Celsius for that matter) misused the financial information consumers provided in connection with their use of the Celsius platform.  Further, as the FTC acknowledges, when monetary relief is sought, the FTC must allege facts that demonstrating scienter.  *See* FTC Opposition to Motion to Dismiss of Hanoch Goldstein, ECF No. 50 at 7, n. 2.  But the FTC pleads no facts showing that Mr. Leon had knowledge of the alleged misrepresentation or use of consumer information for a misrepresented purpose.

In the absence of any allegation that Mr. Leon obtained and misused customer financial information by making false representations relating to Celsius' products and services, this case is easily distinguished from the sole case cited by the FTC sanctioning the application of Section 521 of the GLBA.  Unlike the individual defendant in *RCG Advances, LLC*, who "negotiat[ed] and approv[ed]" agreement terms regarding customer information and "directly participated in over-withdrawing from customers' bank accounts," 2023 WL 6281138, at *10, here, the FTC fails to provide a single fact demonstrating that Mr. Leon obtained customer information through false or deceptive means or misused such information.

Where there are no particularized factual allegations demonstrating misconduct exhibited by Mr. Leon or authority to control the misrepresentations of others, the FTC fails to state a claim against Mr. Leon in his individual capacity for a violation of the GLBA.[16]

---

[16]     The Complaint also fails to satisfy Rule 8(a)'s general pleading standard.  Rule 8(a) requires a party to allege "enough facts to nudge[ ] [his] claims across the line from conceivable to plausible."  *Bell*

III.     THE FTC IS NOT ENTITLED TO THE RELIEF IT SEEKS.

A.     The FTC Has Not Demonstrated an Ongoing or Imminent Violation of Any
Law Enforced by the FTC to Warrant Injunctive Relief Under Section 13(b).

Injunctive relief can be obtained under Section 13(b) of the FTC Act but only where the

FTC has "reason to believe" defendant "is violating, or is about to violate, any provision of law

enforced by the [FTC]" at the time of its suit.  15 U.S.C. § 53(b); *see also F.T.C. v. Vyera

Pharms., LLC*, 479 F. Supp. 3d 31, 44 (S.D.N.Y. 2020).  "Section 13(b) contemplates only 'relief

that is prospective, not retrospective.'"  *F.T.C. v. Facebook, Inc.*, 581 F. Supp. 3d 34, 59 (D.D.C.

2022) (quoting *AMG Cap. Mgmt., LLC, v. F.T.C.*, 141 S. Ct. at 1348)).  A "temporal gap

between the complained-of conduct and [the] lawsuit is fatal to the agency's claim for injunctive

relief under Section 13(b) []."  *Id.* (citing *F.T.C. v. Facebook, Inc.*, 560 F. Supp. 3d 1 (D.D.C.

2021) (internal quotations omitted).

Here, the FTC includes a single boilerplate paragraph in its Complaint alleging that

"Defendants are violating or are about to violate laws enforced by the FTC."  Compl., ¶ 94.  In

*Federal Trade Commission v. Shire ViroPharma, Inc.*, the Third Circuit opined that "Section

13(b) does not permit the FTC to bring a claim based on long-past conduct without some

evidence that the defendant 'is' committing or 'is about to' commit another violation."  917 F.3d

147, 156 (3d Cir. 2019).  In so holding, the court rejected the FTC's contention that the more

liberal common law standard for injunctive relief governed Section 13(b).  *Id.*

---

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "asks for more than a sheer possibility that
a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that "pleads
facts that are merely consistent with a defendant's liability" or "offers labels and conclusions or a
formulaic recitation of the elements of a cause of action" does not meet Rule 8(a)'s standard.  *Ashcroft*,
556 U.S. at 678; *Swish Mktg.*, 2010 WL 653486, at *4.  The handful of conclusory assertions and two
allegations that Mr. Leon appeared in an AMA video and contributed to and retweeted a blog post do not
meet this standard.

Further, it is publicly known that the corporate Celsius Defendants reached a settlement with the FTC to "permanently ban the companies from offering, marketing, or promoting any product or service that could be used to deposit, exchange, invest, or withdraw any assets." Wuertz Decl., Ex. 1 (FTC Press Release, dated July 13, 2023). Celsius is now defunct and enjoined from marketing or promoting activities; Mr. Leon, who currently resides abroad, has resigned from all Celsius entities. Unlike Mr. Mashinsky, who has noted an intention to continue operations in the cryptocurrency market, the FTC does not contend that Mr. Leon has made any similar indication of intent to re-enter the cryptocurrency sector as a service provider, exchange, or other related business. Indeed, the only allegation regarding Mr. Leon is a conclusory one that he "maintain[s] the means, ability, and incentive to resume [his] unlawful conduct." Compl. ¶ 94.

Various courts have deemed similar allegations insufficient to meet the Section 13(b) standard, including the Third Circuit in *Shire ViroPharma* and the Ninth Circuit in *F.T.C. v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985). In *Evans*, the allegation of an on-going violation was held inadequate under the traditional common law injunction standard. *Id.* at 1088-89 (rejecting FTC's Section 13(b) argument because the alleged misrepresentations occurred years prior, and the defendant had filed for bankruptcy). Accordingly, the FTC has not met the Section 13(b) standard as to Mr. Leon, regardless of whether the court applies the *Shire ViroPharma* literal interpretation of Section 13(b) or the traditional standard for injunctive relief.

**B.    The FTC Has Not Alleged a Violation of a Promulgated Rule to Warrant Monetary Relief Under Section 19.**

To the extent the FTC seeks monetary relief in connection with Count Three (violation of the GLBA) of the Complaint, Mr. Leon adopts and incorporates into this memorandum of law the arguments contained in Section III.A. of Defendant Goldstein's Motion to Dismiss, ECF No.

41, and Section II.B. of Defendant Goldstein's Reply, ECF No. 54, that the FTC is not entitled to monetary relief in connection with its claim under the GLBA under Section 19.[17]

## **CONCLUSION**

For the reasons set forth herein, Mr. Leon respectfully requests that the Court dismiss the claims asserted against him in the Complaint with prejudice.

Dated: October 11, 2023          **HOGAN LOVELLS US LLP**

                                         Respectfully submitted

                                         */s/ Allison M. Wuertz*
                                         Allison M. Wuertz
                                         William M. Regan
                                         Maya S. Jumper
                                         390 Madison Avenue
                                         New York, NY 10017
                                         Tel: (212) 918-3733
                                         Fax: (212) 918-3100
                                         allison.wuertz@hoganlovells.com
                                         william.regan@hoganlovells.com
                                         maya.jumper@hoganlovells.com

                                         *Counsel for Defendant Shlomi Daniel Leon*

---

[17]       In a case of first impression, the Court in *RCG Advances, LLC* permitted the FTC to seek monetary relief under Section 19 for a violation of the GLBA, concluding that "the GLB Act is deemed to be a provision of the FTCA for purposes of its enforcement and can be treated as a rule violation." 2023 WL 6281138, at *11-13. Defendant Leon acknowledges the Court's recent decision in *RCG Advances, LLC*, but maintains his objection to the Court's interpretation of the GLBA violation as a violation of a promulgated "rule" that entitles the FTC to monetary relief under Section 19 and preserves the argument for appeal.