**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

CELSIUS NETWORK INC., et al.,

      Defendants.

**Case No. 1:23-cv-6009-DLC**

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**
**DEFENDANT S. DANIEL LEON'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    FACTS ............................................................................................................... 1

III.   LEGAL STANDARDS ..................................................................................... 3

IV.   ARGUMENT ..................................................................................................... 3

     A.    Rule 8(a), not Rule 9(b), applies to the FTC's claims. ........................... 4

     B.    The FTC alleges sufficient facts to state its claims against Leon. .......................... 6

          1.    The Complaint alleges plausible violations of the FTC Act. .................... 7

          2.    The Complaint alleges plausible violations of the GLB Act. ................. 10

          3.    The FTC plausibly alleges that Leon is liable for Celsius's FTC Act and GLB Act violations. .......................................................... 11

               a.    Leon had authority to control Celsius, directly participated in its misconduct, and possessed the requisite knowledge……………12

               b.    Leon's extraneous factual allegations are improper and not a basis for dismissal…………………………………………………...17

     C.    The FTC has a legal basis to seek both injunctive and monetary relief. .............. 18

          1.    Injunctive relief is available under Section 13(b). .................................... 18

          2.    Relief is available for GLB Act violations under Section 19. ................. 22

V.    CONCLUSION................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*American Financial Services Association v. FTC*,
   767 F.2d 957 (D.C. Cir. 1985) .................................................................... 7

*Anderson News, LLC v. American Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ...................................................................... 3

*Angermeir v. Cohen*,
   14 F. Supp. 134 (S.D.N.Y. 2014) ........................................................... 4, 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 3

*Bensch v. Estate of Umar*,
   2 F.4th 70 (2d Cir. 2021) ........................................................................ 23

*City of Perry v. Procter & Gamble Co.*,
   188 F. Supp. 3d 276 (S.D.N.Y. 2016) ...................................................... 4

*Cooper v. Parsky*,
   140 F.3d 433 (2d Cir. 1998) .................................................................... 17

*DiFolco v. MSNBC L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) .................................................................... 17

*ESPN, Inc. v. Quiksilver, Inc.*,
   586 F. Supp. 2d 219 (S.D.N.Y. 2008) ...................................................... 3

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000) ...................................................................... 17

*FTC v. 1263523 Ontario, Inc.*,
   205 F. Supp. 2d 218 (S.D.N.Y. 2002) .................................................... 12

*FTC v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) .............................................................. 20

*FTC v. American Financial Benefits Center*,
   324 F. Supp. 3d 1067 (N.D. Cal. 2018) .................................................. 12

*FTC v. Amazon, Inc.*,
   71 F. Supp. 3d 1158 (W.D. Wash. 2014) ............................................. 8, 9

*FTC v. Amazon.com, Inc.*,
   2016 WL 10654030 (W.D. Wash. July 22, 2016) .................................... 9

*FTC v. Amy Travel Service, Inc.*,
   875 F.2d 564 (7th Cir. 1989) .................................................................. 11

*FTC v. Cantkier*,
  767 F. Supp. 2d 147 (D.D.C. 2011) ........................................................................ 6

*FTC v. Consumer Health Benefits Association*,
  2012 WL 1890242 (E.D.N.Y. May 23, 2012) ...................................... 4, 5, 11, 15

*FTC v. Electronic Payment Solutions of America, Inc.*,
  2019 WL 4287298 (D. Ariz. Aug. 28, 2019) .................................................. 19, 20

*FTC v. Evans Products Co.*,
  775 F.2d 1084 (9th Cir. 1985) ...................................................................... 20, 21

*FTC v. Facebook, Inc.*,
  581 F. Supp. 3d 34 (D.D.C. 2022) ................................................................ 20, 21

*FTC v. Fleetcor Techs., Inc.*,
  620 F. Supp. 3d 1268 (N.D. Ga. 2022) .............................................................. 8, 9

*FTC v. Freedom Communications, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ............................................................................ 12

*FTC v. Hornbeam Special Situations, LLC*,
  308 F. Supp. 3d 1280 (N.D. Ga. 2018) ................................................................ 12

*FTC v. Hoyal & Associates, Inc.*,
  859 Fed. App'x 117 (9th Cir. 2021) ..................................................................... 20

*FTC v. Ideal Financial Solutions, Inc.*,
  2015 WL 4032103 (D. Nev. June 30, 2015) ........................................................... 9

*FTC v. Inc21 Corp.*,
  745 F. Supp. 2d 975 (N.D. Cal. 2010) ................................................................... 8

*FTC v. Ivy Capital, Inc.*,
  2011 WL 2118626 (D. Nev. May 25, 2011) ......................................................... 12

*FTC v. J.K. Publications, Inc.*,
  99 F. Supp. 2d 1176 (C.D. Cal. 2000) .............................................................. 8, 16

*FTC v. Johnson*,
  96 F. Supp. 3d 1110 (D. Nev. 2015) ...................................................................... 8

*FTC v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016) ..................................................................... 11, 13, 15

*FTC v. Lights of America, Inc.*,
  2011 WL 1515158 (C.D. Cal. 2011) ..................................................................... 12

*FTC v. Medical Billers Network, Inc.*,
  543 F. Supp. 2d 283 (S.D.N.Y. 2008) .............................................................. 5, 18

*FTC v. Minuteman Press*,
  53 F. Supp. 2d 248 (E.D.N.Y. 1998) .................................................................... 18

*FTC v. Moses*,
  913 F.3d 297 (2d Cir. 2019) ......................................................................... passim

*FTC v. Neovi, Inc.*,
   604 F.3d 1150 (9th Cir. 2010) ................................................................. 7

*FTC v. Primary Group, Inc.*,
   713 F. App'x 805 (11th Cir. 2017) ........................................................ 11

*FTC v. Publishing Clearing House, Inc.*,
   104 F.3d 1168 (9th Cir. 1997) ............................................................... 12

*FTC v. QT Inc.*,
   448 F. Supp. 2d 908 (N.D. Ill. 2006) .................................................... 16

*FTC v. Quincy Bioscience Holding Co.*,
   389 F. Supp. 3d 211 (S.D.N.Y. 2019).............................................. 15, 16

*FTC v. RCG Advances, LLC*,
   2023 WL 6281138 (S.D.N.Y. Sept. 27, 2023) ............................... passim

*FTC v. Roomster Corp.*,
   2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023)........................................... 18

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019)............................................................. 20, 21

*FTC v. Shkreli*,
   581 F. Supp. 3d at 579 (S.D.N.Y. 2022) ............................................... 18

*FTC v. SPM Thermo-Shield, Inc.*,
   2022 WL 833644 (M.D. Fla. Mar. 21, 2022) ........................................ 20

*FTC v. Sterling Precious Metals, LLC*,
   2013 WL 595713 (S. D. Fla. Feb. 15, 2013) ......................................... 12

*FTC v. Swish Marketing*,
   2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ......................................... 16

*FTC v. Tax Club, Inc.*,
   994 F. Supp. 2d 461 (S.D.N.Y. 2014)........................................ 4, 5, 11, 12

*FTC v. Verity International, Ltd.*,
   335 F. Supp. 2d 479 (S.D.N.Y. 2004)...................................................... 7

*FTC v. Walmart Inc.*,
   2023 WL 2646741 (N.D. Ill. Mar. 27, 2023).................................... 9, 20

*Hudak v. Berkley Group, Inc.*,
   2014 WL 354676 (D. Conn. Jan. 23, 2014) ............................................ 4

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................... 6

*In re Bayou Hedge Fund Litigation*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007)..................................................... 3

*In re Celsius Network LLC*,
   No. 22-10964-mg, Dkt. 973 (Bankr. S.D.N.Y. Oct. 5, 2022).............. 19

*In re Enron Corp.*,
  379 B.R. 425 (S.D.N.Y. 2007) .................................................................... 19

*International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998) ........................................................................ 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
  797 F.3d 160 (2d Cir. 2015) ........................................................................ 7

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ...................................................................... 23

*Neubauer v. Eva-Health USA, Inc.*,
  158 F.R.D. 281 (S.D.N.Y. 1994) ................................................................ 16

*Oklahoma v. Castro-Huerta*,
  142 S. Ct. 2486 (2022) .............................................................................. 10

*POM Wonderful, LLC v. FTC*,
  777 F.3d 478 (D.C. Cir. 2015) .................................................................. 12

*Rider v. Uphold HQ Inc.*,
  2023 WL 2163208 (S.D.N.Y. Feb. 22, 2023) ...................................... 16, 17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ........................................................................ 6

*SEC v. Commonwealth Chem.*,
  574 F.2d 90 (2d Cir. 1978) .............................................................. 18, 19, 20

*SEC v. Opulentica, LLC*,
  479 F. Supp. 2d 319 (S.D.N.Y. 2007) ........................................................ 18

*U.S. Bank National Association v. Ables & Hall Builders*,
  582 F. Supp. 2d 605 (S.D.N.Y. 2008) .......................................................... 3

*United States v. MyLife.com, Inc.*,
  499 F.Supp.3d 757 (C.D. Cal. 2020) ........................................................ 19

*Utts v. Bristol-Myers Squibb Co.*,
  226 F. Supp. 3d 166 (S.D.N.Y. 2016) .......................................................... 6

*Weisshaus v. Port Authority of New York & New Jersey*,
  814 F. App'x 643 (2d Cir. 2020) .......................................................... 17, 18

*Winter v. American Institute of Medical Sciences & Education*,
  242 F. Supp. 3d 206 (S.D.N.Y. 2017) .......................................................... 4

**Statutes**

15 U.S.C. § 45(a) ........................................................................................ 1, 7

15 U.S.C. § 45(n) ............................................................................................ 7

15 U.S.C. § 57b(a) ........................................................................................ 22

15 U.S.C. § 57b(b) ........................................................................................ 22

iv

15 U.S.C. § 6821 ............................................................................................... 1, 5, 10

15 U.S.C. § 6821(a)(2) ........................................................................................... 10

15 U.S.C. § 6822 ..................................................................................................... 5

15 U.S.C. § 6822(a) ........................................................................................... 22, 23

15 U.S.C. § 6823 ..................................................................................................... 5

15 U.S.C. §§ 6801 ................................................................................................. 10

15 U.S.C. § 1692*l*(a) ........................................................................................ 22, 23

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 4, 6

Fed. R. Civ. P. 9(b) ................................................................................... 5, 6, 7, 16

Fed. R. Civ. P. 15(a)(2) ........................................................................................ 23

## I.    INTRODUCTION

S. Daniel Leon ("Leon") was a co-founder and senior corporate officer of Celsius Network LLC and its affiliates (collectively, "Celsius"). The FTC sued Celsius after it misappropriated nearly $4.7 billion in consumer assets, following years of deceptive advertising that tricked thousands of consumers into entrusting cryptocurrency and financial information to the care of Leon and his partners. The FTC has alleged that the conduct of Celsius and its leadership violated the FTC Act, 15 U.S.C. § 45(a), and the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6821 *et seq.*

Leon now seeks dismissal of the FTC's claims against him. Pointing the finger at his co-defendant Alexander Mashinsky, Leon asks the Court to disregard the FTC's allegations that he had control over Celsius's business operations, personally participated in Celsius's decision to freeze consumer deposits, and was directly involved in creating misleading marketing content for the Celsius website. But as the FTC's complaint shows, Leon was a key player in Celsius's extensive, multi-billion-dollar fraud. Leon's unsupported legal arguments, distortions of precedent, and improper factual submissions do not show otherwise. His motion should be denied.

## II.    FACTS

Leon was a founder of Celsius and served as Chief Operating Officer ("COO") and Chief Strategy Officer ("CSO") for multiple Celsius entities. Compl. ¶ 21. With Leon and his co-defendants in control of the company, Celsius falsely promised consumers that (1) it did not engage in unsecured lending when, in fact, it lent out billions of dollars' worth of customers' digital assets in uncollateralized or undersecured loans, *id.* ¶¶ 34-42; (2) it maintained sufficient reserves to satisfy customer obligations when, in reality, it maintained only a fraction of that, *id.*

1

¶¶ 43-46; (3) consumers could withdraw their crypto "at any time" when that promise lacked basis or when on-demand withdrawals were not possible, *id.* ¶¶ 47-57; (4) it maintained a $750 million insurance policy for deposits when it had never purchased or maintained such a policy, *id.* ¶¶ 58-62; and (5) consumers could earn "up to 17%" or "up to 18.63%" annual percentage yield ("APY") on deposits when the average customer APY was around 5%, *id.* ¶¶ 63-68.

Celsius disseminated these misrepresentations via advertising, including banners and blog posts on its website, emails to consumers, and marketing videos posted on its YouTube channel. *Id.* ¶ 32. Celsius's marketing videos, including some in which Leon personally appeared, were a popular venue, though not an exclusive one, for Celsius's executives to lie about Celsius's business practices. *Id.* With Leon's oversight, Celsius also used its blog to misrepresent its practices. *Id.* ¶ 44.

Celsius's deceit lured consumers to the platform and enticed them to entrust Celsius with their digital assets and financial information. *Id.* ¶¶ 69-70. After taking possession of billions of dollars' worth of consumers' digital assets, Celsius squandered those assets through unsecured institutional lending, poor investments, and other extravagant expenditures—exactly what it broadcast to consumers that it would not do. *Id.* ¶¶ 71-87.

By May of 2022, Celsius's balance sheet was in disarray, but the company and its leadership—including Leon—continued to boast falsely about Celsius's financial health and encourage consumers to transfer their savings to the platform. *Id.* ¶¶ 75-84, 92. For example, a June 7, 2022, blog post that Leon helped create claimed that Celsius was processing withdrawals "without delay" (even though many consumers were facing delays) and that Celsius had "the reserves (and more than enough ETH) to meet obligations" even though it didn't. *Id.* ¶ 82. Behind the scenes, Celsius's leadership, including Leon, were quietly withdrawing large sums of

cryptocurrency from the platform. *Id.* ¶ 91.

Then, on June 12, 2022, with no warning and despite Celsius's promises that it had plenty of liquidity available, Celsius froze consumer accounts and denied consumers access to their assets. *Id.* ¶¶ 85-90. Overnight, consumers lost access to approximately $4.7 billion in cryptocurrency. *Id.* Celsius filed for bankruptcy on July 13, 2022, and most consumers have yet to regain access to their crypto.

## III.   LEGAL STANDARDS

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008) (quoting *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility" when the plaintiff alleges facts allowing the "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 608-09 (S.D.N.Y. 2008). Courts at this stage do not settle factual disputes, weigh evidence, or evaluate witness credibility. *See Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").

## IV.   ARGUMENT

Leon's arguments lack merit. First, consistent with other courts in this circuit, the Court

should evaluate the FTC's claims under the liberal Rule 8(a) standard rather than the heightened 9(b) standard. Because Leon does not contend that the Complaint fails to satisfy Rule 8, the arguments in Section II of his brief should be rejected. Second, under either pleading standard, the FTC has alleged facts making plausible that Leon will be held liable for Celsius's corporate wrongdoing: his authority to control the company, as former COO and CSO; his participation in corporate wrongdoing; and his knowledge of the ongoing misconduct. Next, because the FTC has alleged years of deliberate misconduct for which Leon accepts no responsibility and which he has the means and motive to resume, the FTC has plausibly alleged a basis to seek injunctive relief. Finally, the plain language of the GLB Act and the FTC Act entitle the FTC to seek relief under Section 19 of the FTC Act.

### A.       Rule 8(a), not Rule 9(b), applies to the FTC's claims.

Courts in the Second Circuit evaluate FTC complaints under Rule 8(a). *See, e.g.*, *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469-71 (S.D.N.Y. 2014); *FTC v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *3, 6-7 (E.D.N.Y. May 23, 2012). Under this standard, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 is a "liberal" standard. *Winter v. Am. Inst. of Med. Sci. & Educ.*, 242 F. Supp. 3d 206, 228 (S.D.N.Y. 2017).

"[N]othing in Rule 8 prohibits collectively referring to multiple defendants where, as here, the complaint alerts defendants that identical claims are asserted against each one." *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 285-86 (S.D.N.Y. 2016) (quoting *Hudak v. Berkley Grp., Inc.*, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014). At the pleading stage, before discovery, the FTC need not explain in great detail each defendant's role in the planning and execution of the joint scheme. *See, e.g.*, *Angermeir v. Cohen*, 14 F. Supp. 134, 144-45

4

(S.D.N.Y. 2014) (collecting cases) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (quotation marks omitted)); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *9 n.14 (rejecting group pleading arguments and denying motion to dismiss).

Leon argues that the FTC's complaint fails to state a claim under Rule 9(b)'s heightened pleading standard, Br. at 2, 9-11, 17, but Rule 9(b) does not apply to any of the FTC's claims. *See Tax Club, Inc*, 994 F. Supp. 2d at 471 (rejecting the argument that Rule 9(b) applies to Section 5 claims); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7 (concluding that Rule 9(b) does not apply to Section 5 claims); *accord FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314–15 (S.D.N.Y. 2008) (concluding that the argument that Rule 9(b) applies "is likely without merit"). The reason for this is simple: Neither Section 5 claims nor GLB Act claims "require proof of the same essential elements of common law fraud." *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7. Unlike common law fraud claims, Section 5 claims do not require proof of scienter, reliance, or injury. *Id.* And Section 5 "covers a broad[er] range of deceptive practices" than common law fraud. *Id.*

The GLB Act likewise requires no proof of scienter for civil violations. *Compare* 15 U.S.C. §§ 6821-6822 (lack of scienter for civil violations) *with* 15 U.S.C. § 6823 (criminal provision of the GLB Act providing that "[w]hoever *knowingly and intentionally violates, or knowingly and intentionally attempts to violate*, section 6821 of this title shall be fined . . . or imprisoned . . . or both") (emphasis added). And it does not require proof of reliance or injury; only that defendant made the false statement "*to obtain or attempt to obtain* . . . customer information of a financial institution relating to another person[.]" *Id.* § 6821 (emphasis added). Nor is it limited to common law fraud; any "*false, fictitious, or* fraudulent" statement will do. *Id*.

Leon does not cite any Second Circuit case applying Rule 9(b) to these statutes or to claims brought by any government agency, let alone the FTC. Rather, he cites only cases that concern non-FTC Act or non-GLB Act fraud claims brought by private parties. Br. at 9 (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 189 (S.D.N.Y. 2016); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 459 (E.D.N.Y. 2013)). This suit, by contrast, is brought by the FTC, a federal government agency, to enforce the FTC and GLB Acts. *See Hughes*, 930 F. Supp. 2d at 456 (distinguishing case brought by private party from those brought by the FTC under Section 5 of the FTC Act). The only other cases on which Leon relies are from the Ninth Circuit where, unlike in the Second Circuit, courts sometimes use the 9(b) standard. Br. at 9-11.[1]

Leon does not seriously argue that the FTC has not pled sufficient facts to satisfy Rule 8(a)—the standard by which courts in this circuit evaluate the FTC's claims.[2] Because Rule 9(b) does not apply to the FTC's claims, Leon's motion to dismiss must be denied.

**B.   The FTC alleges sufficient facts to state its claims against Leon.**

Under either Rule 8(a) or 9(b), the FTC has alleged sufficient facts to state its claims against Leon. Contrary to Leon's arguments, the Complaint contains allegations sufficient to show (1) corporate violations of the FTC Act and the GLB Act and (2) that Leon had the authority to control Celsius's business practices, directly participated in the misconduct, and possessed requisite knowledge of the violations. *See FTC v. Moses*, 913 F.3d 297, 307-08 (2d Cir. 2019) (affirming individuals' liability for corporate acts). The Complaint also specifies the

---

[1] Leon also cites one case from the District Court for the District of Columbia, Br. at 10, but the court in that case "d[id] not need to rule on the applicability of Rule 9(b) to Section 5 actions." *FTC v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011).

[2] Leon raises this position in a footnote, wholly lacking in legal support, on page 22 of his brief.

misrepresentations for which Leon is liable, states where and when the misrepresentations were made, and explains why the misrepresentations were likely to mislead a reasonable consumer (i.e., they were false)—enough to satisfy even Rule 9(b). *See* Fed. R. Civ. P. 9(b); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) ("group pleading" satisfied Rule 9(b) standard where the complaint also gave grounds for attributing the statements to the group).

### 1.    The Complaint alleges plausible violations of the FTC Act.

Leon does not dispute whether Count I of the Complaint adequately alleges that Celsius engaged in deceptive business practices under Section 5 of the FTC Act. *See* 15 U.S.C. § 45(a) (prohibiting unfair or deceptive acts and practices). Casting aside the 15-plus pages detailing Defendants' misconduct, Leon argues that the unfair misappropriation claim, Count II, lacks factual basis and, in a footnote, insists the claim would not satisfy the unfairness standard even if the Court were to consider the FTC's well-pled facts. Br. at 20, n. 15. These arguments fall flat.

A practice is unfair and violates Section 5 of the FTC Act where, as here, it "causes or is likely to cause substantial injury to consumers [that] is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n); *see FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479, 498 (S.D.N.Y. 2004) (quoting 15 U.S.C. § 45(n)). Substantial injury may be "a small harm to a large number of people, or . . . raising a significant risk of concrete harm." *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (quoting *American Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985). When evaluating whether consumers' injuries were reasonably avoidable, "courts look to whether the consumers had a free and informed choice." *Id.* at 1158. Finally, an injury is not outweighed by other benefits when there are "clear adverse consequences for consumers that are not

accompanied by an increase in services or benefits to consumers or by benefits to competition." *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1151 (D. Nev. 2015) (quoting *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000)).

The Complaint alleges facts supporting each element of unfairness. First, Defendants' conduct was likely to cause—and did cause—substantial injury to consumers. ¶¶ 72-75, 86-90 (describing consumer harm). Defendants, including Leon (both through his control of the enterprise and his participation in particular acts, *see infra*), took title to consumers' cryptocurrency immediately upon deposit, and without sufficient liquidity, insurance, or other protections to ensure consumers would be able to recover their funds. Compl. ¶ 71. Celsius then used those funds as the company's piggy bank to pay its bills, fund ongoing operations, and make high risk investments. Compl. ¶¶ 71, 92. Five days after promising consumers that Celsius had sufficient funds available to meet obligations, Defendants halted all withdrawals, leaving thousands of consumers without access to over $4 billion worth of crypto. Compl. ¶¶ 6, 85. Courts have routinely held that monetary injury constitutes substantial injury. *FTC v. RCG Advances, LLC*, 2023 WL 6281138, at *8 (S.D.N.Y. Sept. 27, 2023) (unauthorized withdrawals causing "substantial financial injury" were unfair); *FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1315-16 (N.D. Ga. 2022); *FTC v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1166-67 (W.D. Wash. 2014) (describing substantial harm caused by unfair billing practices); *FTC v. Inc21 Corp.*, 745 F. Supp. 2d 975, 1004-05 (N.D. Cal. 2010) ($37 million in consumer losses was "substantial injury to consumers").

Second, consumers could not reasonably avoid the injury. Defendants took title to their deposits while misleadingly assuring consumers that their cryptocurrency would remain "yours legally" and be "safe forever," giving consumers no reason to expect they would lose ownership

of or access to their crypto. *Id.*; *cf. RCG Advances*, 2023 WL 6281138, at *8 (unauthorized withdrawals unfair where defendant gave consumers no reason to expect the withdrawals would occur); *Fleetcor Techs.*, 620 F. Supp. 3d at 1326-28 (charges were unfair where consumers could not avoid them because company "misled" consumers about them). Consumers had no expectation that Celsius would deploy their assets in a manner that risked their ability to access their cryptocurrency later, including by using those funds as the company's stash to pay its bills, fund ongoing operations, and make high risk investments; again, especially since Celsius had promised to keep their assets "safe." Compl. ¶¶ 71, 92. *Cf. Amazon*, 71 F. Supp. 3d at 1166-67 (practice was unfair where consumers lacked "free and informed choice to submit themselves to the risk" of losing money to unauthorized charges).

Finally, there was no countervailing benefit associated with deceiving consumers, taking their assets without authorization, dissipating the assets, and locking the assets onto the platform. *See Fleetcor*, 620 F. Supp. 3d at 2337 ("The cost-benefit prong . . . is easily satisfied where a practice produces clear adverse consequences to consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition.") (quoting *FTC v. Amazon.com, Inc.*, 2016 WL 10654030, at *11 (W.D. Wash. July 22, 2016)) (cleaned up); *see also FTC v. Ideal Fin. Sols., Inc.*, 2015 WL 4032103, at *8 (D. Nev. June 30, 2015) (no countervailing benefits where harm to consumers was "plainly substantial" and consumers were unable to mitigate harm due to company's "obstruct[ion]"). These facts, alleged throughout the Complaint and under a heading titled "Defendants misappropriated consumers' cryptocurrency deposits," sufficiently allege the violation. Compl. ¶¶ 6, 71-93. *See Amazon*, 71 F. Supp. 3d at 1167 (denying motion to dismiss unfairness claim); *see also, e.g.*, *FTC v. Walmart Inc.*, 2023 WL 2646741, at *19 (N.D. Ill. Mar. 27, 2023) (motion to dismiss unfair conduct claim denied

where FTC alleged that defendant's failure to prevent fraud resulted in $200 million loss to

consumers, who had no reason to anticipate the loss or means to avoid the injury).

### 2.    The Complaint alleges plausible violations of the GLB Act.

The FTC also alleges facts sufficient to establish violations of the GLB Act, Count III of

the Complaint. The GLB Act makes it unlawful to "obtain or attempt to obtain . . . customer

information of a financial institution relating to another person . . . by making a false, fictitious,

or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C.

§ 6821(a)(2). The Complaint alleges that Celsius obtained or attempted to obtain consumers'

financial information (crypto wallet information and bank account details, Compl. ¶¶ 69-70) by

making "false, fictitious, or fraudulent statements" (its many misrepresentations, *see supra* Part

II; Compl. ¶¶ 33-70). As a court in this District recently held, using misrepresentations to obtain

customers' financial information violates the GLB Act and, therefore, Section 19 of the FTC

Act. *RCG Advances*, 2023 WL 6281138, at *9-10.

Leon cites the wrong provision of the GLB Act, Subchapter I, 15 U.S.C. §§ 6801-6809,

to argue that the FTC's allegations are deficient. The actual violation alleged, of Subchapter II,

15 U.S.C. §§ 6821-6827, does not require an infringement on consumer privacy or unauthorized

access or use of Celsius customers' financial information. Br. at 20. Leon grasps at legislative

history to assert that Congress did not intend the words of the statute to mean what they say, *id.*,

but "the text of a law controls over purported legislative intentions unmoored from any statutory

text." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022). With respect to Section 6821,

"the plain text reaches 'false, fictious, or fraudulent statement[s]' full stop." *RCG Advances*,

2023 WL 6281138, at *10. Like the defendants in *RCG Advances* who made false statements to

entice consumers to enter into agreements, obtained consumers' account information, and

withdrew funds, *id.* at *5, Defendants here made false statements to persuade consumers to hand over their bank account and cryptocurrency wallet information and deposit their cryptocurrency with Celsius. The Complaint states a claim for violations of the GLB Act.

### 3.   The FTC plausibly alleges that Leon is liable for Celsius's FTC Act and GLB Act violations.

A court may impose upon an individual injunctive relief deriving from a corporation's unlawful acts if the individual either participated directly in the practices or acts or had authority to control them. *See Moses*, 913 F.3d at 308. The FTC need not allege that the individual carried out each unlawful act so long as the Complaint alleges that the individual "had the authority to control the corporate defendants" engaged in the alleged misconduct. *Tax Club*, 994 F. Supp. 2d at 471. Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policies, including, as here, assuming the duties of a corporate officer. *Moses*, 913 F.3d at 306-07 (citing *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989)); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *5 ("[A]n individual's status as a corporate officer . . . can be probative of control.").

An individual may be held liable for monetary relief if, in addition to direct participation or authority to control, the individual had at least "some knowledge," *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 169-70 (2d Cir. 2016), of the practices, meaning: (1) actual knowledge of the misconduct, (2) reckless indifference to it, or (3) an awareness of a high probability of deceptiveness and intentional avoidance of learning the truth. *Moses*, 913 F.3d at 307 (citing *FTC v. Primary Grp., Inc.*, 713 F. App'x 805, 807 (11th Cir. 2017)).[3] The same standard for

---

[3] Recent Second Circuit cases have collapsed the distinct standards for liability for injunctive and monetary relief, but in those cases, the parties (and the Court) were addressing monetary relief only—not injunctive relief. *See Moses*, 913 F.3d at 307; *LeadClick Media*, 838 F.3d at 169. Many courts have acknowledged that the knowledge requirement pertains only to claims for

individual liability applies to both the FTC Act and GLB Act. *See, e.g.*, *Moses*, 913 F.3d at 307

(explaining that where the FTC enforces other statutes pursuant to its authority under the FTC

Act, the FTC Act individual liability standard applies). The FTC meets that standard.

> a.   **Leon had authority to control Celsius, directly participated in its misconduct, and possessed the requisite knowledge.**

The Complaint alleges facts plausibly showing that Leon *both* had authority to control

Celsius's business *and* directly participated in misconduct (even though only participation *or*

control is required), as well as Leon's knowledge. Courts across the country have held that

similar allegations of authority to control and knowledge plausibly alleged individual liability

under the FTC Act. *See, e.g.*, *Tax Club*, 994 F. Supp. 2d at 473 (finding that the FTC "adequately

allege[d] authority to control" based on defendant's officer title and signature authority on bank

accounts); *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221, 224 (S.D.N.Y. 2002)

(granting a default judgment against individuals where FTC alleged that they "formulated,

directed, controlled, or participated in the acts and practices of" the corporate defendant.[4]

***Authority to control.*** First, the Complaint is replete with facts showing Leon's active

involvement in corporate affairs for the common enterprise. He assumed the duties of a corporate

---

monetary relief. *See, e.g.*, *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 498-99 (D.C. Cir. 2015); *FTC v. Freedom Comm'ns, Inc.*, 401 F.3d 1192, 1204-07 (10th Cir. 2005); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997).

[4] *See also, e.g.*, *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1072, 1080-81 (N.D. Cal. 2018) (FTC sufficiently pled authority to control where defendant was alleged to be a founder of, held multiple high-ranking corporate roles in, and signed contracts for the common enterprise); *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1288-89 (N.D. Ga. 2018) (allegations that individual defendants were corporate officers who served on high-level committees sufficiently demonstrated authority to control); *FTC v. Sterling Precious Metals, LLC*, 2013 WL 595713, at *4-5 (S. D. Fla. Feb. 15, 2013); *FTC v. Ivy Capital, Inc.*, 2011 WL 2118626, at *5-6 (D. Nev. May 25, 2011); *FTC v. Lights of Am., Inc.*, 2011 WL 1515158, at *3-4 (C.D. Cal. 2011).

officer, serving as COO and CSO for multiple Celsius entities. *See* Compl. ¶ 21. He was a co-founder, served as President for one of the entities, and sat on the Board of Directors for multiple participants in the common enterprise. *Id.* He also served on numerous committees with direct relevance to the misconduct alleged in the Complaint, including the Assets and Liabilities Committee, Risk Committee, and Investment Committee. *Id.*

Leon's attack on the FTC's allegations of his authority to control, Br. at 13, ignores these detailed allegations. Instead, Leon incorrectly claims that the FTC's allegations turn on his "role as a corporate officer alone." Leon does not even address the allegations that he held numerous officer positions, served on committees, and was involved in the decision to freeze accounts. *See id.* Leon also urges the Court to focus on the allegations about Mashinsky, as though extensive allegations about someone else's wrongdoing could exonerate Leon of his own. *See* Br. at 14. But the presence of dozens of damning facts about Mashinsky does not absolve Leon of his role in Celsius's misdeeds, nor does it diminish the sufficiency of the allegations about Leon.

Leon presses the Court to ignore all allegations that refer to conduct by "Defendants" and focus only on the paragraphs that reference him by name. Br. at 15-17. But this is not the proper framework to assess individual liability for corporate wrongdoing. Instead, taking as true the FTC's allegations that Leon described above that evidence his authority to control Celsius's activities and knowledge of its misconduct, Leon may be held liable for corporate wrongdoing. The FTC does not *also* need to allege that he *personally* made misstatements (though the FTC alleges he did), obtained customer financial information, or misappropriated assets. *See LeadClick Media*, 838 F.3d at 168 (noting that there is no requirement to show deceptive conduct all is attributable to a particular defendant). The Complaint therefore properly alleges that Leon is individually liable for Celsius's FTC Act and GLB Act violations based on his authority to

control the company.

**Direct participation.** Leon's authority to control suffices to hold him liable. *Moses*, 913 F.3d at 308. But Leon did not merely exercise control over the enterprise. The FTC alleges that he personally participated in the misconduct, too. As a board member, Leon was directly involved in the decision to freeze consumer accounts on June 12, 2022. *Id.* ("Mr. Leon . . . participated in the decision to freeze withdrawals, swaps, and transfers from the Celsius platform."). Leon crafted and publicized misleading content for Celsius's blog, which Celsius used to bait consumers to transfer digital assets and financial information to Celsius. *Id.* ¶¶ 81-82 (alleging that Leon "helped craft" a false blog post in which Celsius touted the availability of withdrawals and reserves, and retweeted the post). Leon also personally appeared in Celsius's marketing videos, one of the primary vehicles for Celsius's misrepresentations, and he used his personal Twitter to proliferate falsehoods about Celsius's financial strength. *Id.* ¶¶ 32 (alleging that Leon appeared in AMA videos and "used [his] own personal social media accounts to promote and market Celsius's products and services"), 44 ("In 2022, Mr. Leon helped craft a blog post falsely stating that Celsius had more than enough reserves to meet its obligations.").

Leon downplays the FTC's allegations of his direct participation. He minimizes his role in the creation of a blog post that fraudulently represented Celsius's financial health, as well as his participation in AMAs. The post in question contained significant, crucial misrepresentations when Celsius was facing critical financial distress—only five days before Leon participated in a decision to freeze consumer accounts (an allegation that Leon does not address). And contrary to Leon's arguments regarding the FTC's unfair misappropriation claim, the FTC has alleged that Leon was involved in the decision to capture cryptocurrency on Celsius's platform, and that thousands of consumers were harmed by Celsius's false statements and misappropriation of their

14

cryptocurrency assets. Leon has not shown that the FTC's allegations are deficient.

**_Knowledge._** The Complaint also alleges facts making clear that Leon had "some knowledge" of Celsius's misconduct. *LeadClick Media*, 838 F.3d at 169-70; *Moses*, 913 F.3d at 306-07. It is well-established that participation in corporate affairs for the common enterprise is probative of knowledge. *See, e.g.*, *Moses*, 913 F.3d at 309 ("The degree of participation in business affairs is a relevant factor in determining whether [a defendant] had knowledge of the Corporate Defendants' wrongful actions."); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *5. And it is more than "plausible" that an officer with Leon's responsibilities would know that Celsius was obtaining customers' financial information and squandering the consumer deposits stored on its platform—or at least have been aware of a high probability of wrongdoing and intentionally avoided learning the truth. *Moses*, 913 F.3d at 307. The Complaint also alleges that Leon joined Mashinsky in marketing videos that misrepresented core aspects of Celsius's service. *Id.* ¶ 35 (describing Leon's appearance in an AMA in which Mashinsky falsely claimed that Celsius did not make unsecured loans), 81-82. And, though the FTC need not allege that Leon actually knew these claims were false, the Complaint specifically alleges Leon's direct knowledge that several of Celsius's statements were misleading. Leon was "aware that Celsius's 'capital sits near zero' and that Celsius was having trouble satisfying customer withdrawal requests" when he helped create the June 7, 2022 blog post falsely promising that Celsius was satisfying customer withdrawals and had sufficient reserves. *Id.* ¶ 75.

Leon relies primarily on *FTC v. Quincy Bioscience Holding Co.*, 389 F. Supp. 3d 211 (S.D.N.Y. 2019), which he claims is "similar" to this case. It is not. In *Quincy Bioscience*, the court found that the defendant's former president had authority to control the company, but found that the FTC had not alleged the requisite knowledge. *See id.* at 221. Here, the FTC has

alleged that Leon knew that Celsius made misrepresentations (he was present for some of them,
and made some of them himself), knew about Celsius's financial health, knew that Celsius froze
deposits (because he participated in the decision to freeze them), and was in a position (due to his
corporate duties and committee involvement) to know about Celsius's practices with regard to
the collection of consumer financial information and the use of cryptocurrency assets deposited
with Celsius. In *Quincy Bioscience*, the FTC had not pled equivalent facts demonstrating the
former president's knowledge. *See* 389 F. Supp. 3d at 221.

Leon's other cases are also inapposite. First, *Neubauer v. Eva-Health USA, Inc.*, 158
F.R.D. 281 (S.D.N.Y. 1994) is not an FTC case, but to the extent it is relevant at all, it supports
the FTC's position, not Leon's. *See id.* at 284-85 (finding that "Rule 9(b) does not bear on" the
question whether an individual "controlled" a corporate defendant, "as the allegation of control is
not an averment of fraud and therefore need not be made with particularity"); *id.* at 283, 285
(finding defendant's "position as corporate secretary is sufficient to link her to the offering
memorandum" and "the allegation that she served as corporate secretary in our view is sufficient
at this pleading stage"). His remaining cases are immaterial because, unlike in those cases, the
FTC has made specific allegations bearing on Leon's culpability. *See FTC v. QT Inc.*, 448 F.
Supp. 2d 908, 973 (N.D. Ill. 2006) (deciding, after trial, that individual defendant (unlike Leon)
had "no involvement in the actions that led to corporate liability" and FTC had not proven
knowledge); *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1208 (finding, after discovery and depositions,
that the FTC lacked evidence that individual defendant "even knew any of the other defendants .
. . or communicated in any way with any of the other defendants"); *FTC v. Swish Mktg.*, 2010
WL 653486, at *4 (N.D. Cal. Feb. 22, 2010) (complaint included only one paragraph referencing
corporate officer); *Rider v. Uphold HQ Inc.*, 2023 WL 2163208, at *4 (S.D.N.Y. Feb. 22, 2023)

(private plaintiff failed to identify *any* misrepresentations by corporate entity or individual). Leon's handful of irrelevant cases provide no basis for dismissal.

> ### b. Leon's extraneous factual allegations are improper and not a basis for dismissal.

Lacking legal support for his arguments, Leon instead resorts to factual assertions not found in the Complaint. *See* Br. at 3-4 (describing white paper, blog posts, and other documents not cited in the Complaint), 5 (describing testimony from the Bankruptcy Court), 6-7 (unsupported facts about Leon's corporate role), 17-19 (unsupported facts and characterization about Leon's participation in misconduct and knowledge), 24 (unsupported facts about Leon's means and motive to continue in the crypto industry). In particular, Leon asks the Court to adopt as true the findings in the report filed by the court-appointed bankruptcy examiner. Br. at 4. Leon's superfluous facts should not be considered, but in any event, they do not alter the sufficiency of the FTC's pleading.

Leon's factual submissions are improper. *See Friedl v. City of New York*, 210 F.3d 79, at 83-84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." (cleaned up)); *see also DiFolco v. MSNBC L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998))). While the Examiner's Report contains many descriptions of Celsius's wrongdoing, it can hardly be deemed incorporated into the Complaint, which does not cite it or rely upon it. Nor is it evidence, and the mere fact of its having been filed in the bankruptcy does not convert it into evidence. *Weisshaus v. Port Auth. of N.Y. & N.J.*, 814 F. App'x 643, 646 (2d

17

Cir. 2020) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

### C. The FTC has a legal basis to seek both injunctive and monetary relief.

#### 1. Injunctive relief is available under Section 13(b).

To plead entitlement to a permanent injunction, the FTC need only allege facts showing "some cognizable danger of recurring violation," *Med. Billers Network*, 543 F. Supp. 2d at 323, or "some reasonable likelihood of future violations," *FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) (quotation and citations omitted). Past conduct can create a cognizable danger of recurrence. *See, e.g.*, *SEC v. Opulentica, LLC*, 479 F. Supp. 319, 329 (S.D.N.Y. 2007) (finding that defendant's "continuing course of wrongful conduct of more than eighteen months" created a likelihood of further violations). Indeed, to assess the likelihood of recurrence, courts consider (1) "whether the infraction is an isolated occurrence"; (2) "the degree of scienter involved"; (3) "whether defendant continues to maintain that his past conduct was blameless"; and (4) "whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated." *FTC v. Shkreli*, 581 F. Supp. 3d at 579, 638 (S.D.N.Y. 2022) (quoting *SEC v. Commonwealth Chem.*, 574 F.2d 90, 100 (2d Cir. 1978)).[5]

---

[5] Leon suggests the phrase "about to" in the FTC Act somehow heightens this standard. Br. at 23. But contrary to Leon's suggestion, the Second Circuit applies this same four-prong test to evaluate whether a defendant is "about to" violate the law. *Commonwealth Chem.*, 574 F.2d at 100 ("realistic likelihood of recurrence" standard applies to assess whether the federal agency has reason to believe defendant is "about to" violate the law); *FTC v. Roomster Corp.*, 2023 WL 1438718, at *7 (S.D.N.Y. Feb. 1, 2023) (applying the "realistic likelihood of recurrence" standard to assess whether the FTC has reason to believe defendant is "about to violate" the law).

The FTC easily meets this standard. First, the FTC alleges that Leon's law violations were far from an "isolated occurrence," but instead were legion, Compl. ¶¶ 3-6, 31-38, 43-44, 47-50, 58-60, 63-65, 82, took place over the course of three years, *id.* ¶¶ 3, 47, and ceased not because he decided to comply with the law, but because Celsius declared bankruptcy, *id.* ¶¶ 7, 87.[6] Second, the Complaint alleges that Leon had knowledge of the unlawful conduct at issue in this case. *Id.* ¶¶ 35, 44, 75, 82. Additionally, as his motion to dismiss makes clear, Leon purports to be "blameless" for his law violations. *Commonwealth Chem.*, 574 F. 2d at 100. The Complaint contains no acknowledgement from Leon regarding recognition of past wrongs or assurances that it will not happen again in the future. Finally, Leon is in a position where future violations may be anticipated. He was a co-founder, director, COO, CSO, and served on the board and other committees at Celsius, demonstrating that he has the qualifications to seek similar employment elsewhere. Compl. ¶ 21. He was paid handsomely for those roles. Global Notes and Statements at 14398, *In re Celsius Network LLC*, No. 22-10964-mg, Dkt. 973 (Bankr. S.D.N.Y. Oct. 5, 2022) (listing over $1,300,000 in salary, overtime, and bonuses for Leon between July 2021 and July 2022 alone).[7] He also withdrew $2,200,000 of USDC and $436,376 of BTC, transferred 8,000,000 CEL tokens to an account owned by a limited partnership that he controlled, and

---

[6] In addition, courts have repeatedly held that defendants' cessation of violations as a direct result of government intervention is treated as if the violations never stopped. *See, e.g.*, *United States v. MyLife.com, Inc.*, 499 F.Supp.3d 757, 767 (C.D. Cal. 2020) (citing *FTC v. Triangle Media Corp.*, No. 18cv1388-LAB(LL), 2018 WL 6305675, at *1 (S.D. Cal. Dec. 3, 2018)); *see also FTC v. Elec. Payment Solutions of Am. Inc.*, 2019 WL 4287298, at *9 (D. Ariz. Aug. 28, 2019) ("[C]ourts should be wary of a defendant's termination of illegal conduct when a defendant voluntarily ceases unlawful conduct in anticipation of formal intervention[.]"). Here, Leon resigned his positions after the FTC's investigation began.

[7] The court can take judicial notice of court filings in other related matters. *See In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007).

received (through his limited partnership) a $4 million USD loan immediately before Celsius declared bankruptcy. Compl. ¶ 91.

Nothing stops Leon from founding or joining another cryptocurrency or financial services company and making the same or similar misrepresentations to consumers as Celsius did here. *See FTC v. Elec. Payment Solutions of Am., Inc.*, 2019 WL 4287298, at *10 (D. Ariz. Aug. 28, 2019) (finding that because defendants were in the same professional occupation, "they could easily reengage in similar unlawful conduct in the future absent a permanent injunction"); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1202 (10th Cir. 2009) (finding past conduct likely to recur where the defendant remained in the same industry). Leon "maintain[s] the means, ability, and incentive to resume [his] unlawful conduct." Compl. ¶ 94.

Leon urges the Court to ignore the extensive misconduct alleged in the FTC's Complaint and focus only on whether there is an "ongoing" or "imminent" violation of the law to warrant injunctive relief under Section 13(b). Br. at 3, 23. In asking this Court to ignore the Second Circuit's decision in *Commonwealth Chemical*, he relies on three out-of-circuit cases: *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), *FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985), and *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 59 (D.D.C. 2022). Br. at 23-24. The first —*Shire ViroPharma*—is not the law of this Circuit, *see Commonwealth Chem.*, and has been roundly criticized for applying the wrong standard for injunctive relief. *See, e.g., FTC v. Hoyal & Assocs., Inc.*, 859 Fed. App'x 117, 120 (9th Cir. 2021) (rejecting *ViroPharma* arguments and affirming injunction issued under "reasonable likelihood of recurrence" standard); *Walmart Inc.*, 2023 WL 2646741, at *20-21 ("I disagree with the Third Circuit's approach, and decline to distinguish between the requirements of § 13(b)(1) and the common law standard for injunctive relief."); *FTC v. SPM Thermo-Shield, Inc.*, 2022 WL 833644, at *2-3 (M.D. Fla. Mar.

21, 2022) (rejecting *ViroPharma* standard in favor of traditional "reasonable likelihood of further violations" standard).

Moreover, all three cases are readily distinguishable. In *Shire ViroPharma*, the FTC sued a company, stating it submitted sham petitions to the FDA to prevent competition against its product. *Shire ViroPharma*, 917 F.3d at 152. Five years had elapsed since the defendant stopped the conduct, and the defendant had divested itself from the product at issue in the case. *Id.* at 159-60. The court rejected the suit, stating that the FTC's pursuit of "long-past petitioning ha[d] the potential to discourage lawful petitioning activity." *Id.* at 161. This case, unlike *Shire*, does not involve petitioning the government. In *Evans*, the court found that the district court had made no findings regarding likelihood of recurrence, nor had the FTC requested that it do so, even though the conduct had ceased years earlier. *Evans*, 775 F.2d at 1088. Thus, the court distinguished that action from other cases involving past violations, where courts had found the conduct was likely to occur – which the FTC alleges is the case here, too. 775 F.2d at 1088-89; Compl. ¶ 94. And in rejecting one part of one count in *Facebook*, the court noted that the "temporal gap between the complained-of conduct and [the] lawsuit" was seven years. 581 F. Supp. 3d at 59.

Here, by contrast, the FTC has alleged that Leon engaged in misconduct for a period of several years, Compl. ¶ 94, knew or should have known that the conduct was deceptive, *id.* ¶¶ 35, 44, 75, 82, was paid handsomely, *supra* at 19-20, withdrew significant sums of cryptocurrency from Celsius, Compl. ¶ 91, and maintains the means and incentive to found or join a new cryptocurrency or financial services company and go right on violating the law, *id.* ¶ 94. Moreover, while *Celsius* has filed for bankruptcy,[8] that does not negate the FTC's allegations

---

[8] Under the restructuring provisions of the Bankruptcy Code, Celsius's bankruptcy would not

that *Leon*'s violations are likely to recur—particularly since, up to the eve of Celsius's bankruptcy filing, he and the other individual defendants were racing to extract their assets while assuring Celsius consumers that their deposits were safe and sound. *Id.* ¶¶ 91-92. Thus, the FTC has adequately pled a basis for injunctive relief.

### 2.    Relief is available for GLB Act violations under Section 19.

Leon incorporates by reference Defendant Goldstein's arguments that the FTC is not entitled to monetary relief pursuant to Section 19 in connection with its claim under the GLB Act. Br. at 24-25. For the reasons set out in the FTC's opposition to the motions filed by Goldstein and Mashinsky, this argument fails. *See* Dkt. 50 at 16-19.

In short: The GLB Act provides that "compliance . . . shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [("FDCPA")] to enforce compliance with such Act." 15 U.S.C. § 6822(a). The FDCPA, in turn, authorizes the FTC to enforce compliance as if FDCPA violations are rule violations:

> For purpose of the exercise by the Federal Trade Commission of its functions and powers under the [FTC Act], a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the [FTC Act] are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the [FTC Act], including the power to enforce the provisions of this subchapter, *in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule*.

15 U.S.C. § 1692*l*(a) (emphasis added); *see also Moses*, 913 F.3d at 307. Accordingly, the FTC may enforce the FDCPA under Section 19 of the FTC Act, including by bringing a claim for monetary relief. *See id.*; *see* 15 U.S.C. § 57b(a)-(b). Since the FTC may enforce the GLB Act

---

necessarily permanently put a stop to its business operations.

using "the same power and authority as [it] has under the [FDCPA]," 15 U.S.C. § 6822(a), the

FTC may also enforce GLB Act violations "as if the violation had been a violation of a Federal

Trade Commission trade regulation rule," 15 U.S.C. § 1692*l*(a). Nothing about this structure is

ambiguous, and the court in *RCG Advances* agreed that the FTC has the statutory authority to

seek monetary relief for violations of the GLB Act. *See RCG Advances*, 2023 WL 6281138, at

*11. This Court should follow suit.

## V.     CONCLUSION[9]

The Court should deny Leon's motion to dismiss because the FTC has alleged sufficient

facts to make plausible that Leon violated the law and is liable for injunctive and monetary relief.

But if the Court is inclined to dismiss the Complaint, it should be without prejudice. *See*

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("[L]eave to amend shall

be freely given when justice so requires.") (quoting Fed. R. Civ. P. 15(a)(2)). Leon has not

shown "good reason" why the district court should dismiss without leave to refile, let alone

"futility, bad faith, undue delay, or undue prejudice[.]" *See Bensch v. Est. of Umar*, 2 F.4th 70,

81 (2d Cir. 2021).

Dated: November 1, 2023

Respectfully submitted,

  /s/ Katherine M. Aizpuru
Katherine M. Aizpuru
Katherine Worthman
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop: CC 6316
Washington, D.C. 20580
202-876-5673
kaizpuru@ftc.gov;
kworthman@ftc.gov

---

[9] The FTC does not consider oral argument necessary to resolve the issues in this case but takes
no position on Leon's request for oral argument.