```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
FEDERAL TRADE COMMISSION,                 :
                                          :
                              Plaintiff,  :    23cv6009 (DLC)
                                          :
                    -v-                   :    OPINION AND ORDER
                                          :
CELSIUS NETWORK INC., et al.,             :
                                          :
                              Defendants. :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff Federal Trade Commission:
Katherine Worthman
Katherine Marie Aizpuru
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

For defendant Alexander Mashinsky:
Benjamin R. Allee
Cassandra M. Vogel
Jonathan Ohring
Yankwitt LLP
140 Grand Street, Suite 705
White Plains, NY 10601

For defendant Hanoch Goldstein:
Avi Weitzman
Joshua Evan Kahane
Rita A Fishman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Leo Rin Tsao
Paul Hastings LLP
2050 M Street, N.W.
Washington, DC 20036

For defendant Shlomi Daniel Leon:
William Michael Regan
Allison Michele Wuertz
Hogan Lovells US LLP
390 Madison Ave.
New York, NY 10017

Maya Jumper
Freedman Normand Friedland LLP
99 Park Avenue, 19th Floor
New York, NY 10016

DENISE COTE, District Judge:

The individual defendants named in this action, each of whom has been charged with continuing violations of § 5 of the Federal Trade Commission Act ("FTC Act") and the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6821 et seq. in connection with the defendants' marketing and sale of cryptocurrency lending and custody services, move, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint. For the following reasons, their motions to dismiss are denied.

## Background

The following facts are taken from the complaint. For the purposes of deciding this motion, the complaint's factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.

Celsius Network LLC ("Celsius")[1] is a cryptocurrency financial services provider. Celsius provided a variety of

---

[1] For ease of reference, the Court refers collectively to all the Celsius entities as "Celsius."

cryptocurrency products and services to its customers, including earning interest, or "rewards," on cryptocurrency deposits, issuing loans secured by their deposits, and storing their cryptocurrency on the platform.  It also provided customers with the ability to swap, buy and transfer certain cryptocurrencies.  When Celsius users create an account, they are required to provide personal information like a social security number and a copy of a government-issued identification.  In many instances, Celsius also obtained consumers' bank account information.

The three individual defendants, Alexander Mashinsky, Shlomi Daniel Leon, and Hanoch Goldstein, were, respectively, Celsius' Chief Executive Officer; Chief Operating Officer and Chief Strategy Officer; and Chief Technology Officer.  Mashinsky and Leon co-founded the company in 2017.

Plaintiff, the Federal Trade Commission ("FTC"), alleges that the company and its top executives deceived users by misrepresenting the benefits of using Celsius services and the safety of consumer funds.  Specifically, the complaint asserts that the defendants falsely claimed that:

> (1) Celsius did not make unsecured loans; (2) Celsius maintained sufficient liquid crypto assets to satisfy its consumer obligations; (3) consumers could withdraw the cryptocurrency they deposited at any time; (4) Celsius maintained a $750 million insurance policy for consumer deposits; and (5) consumers could earn "up to 17% APY" and "up to 18.63% APY."

The complaint alleges that the representations the company and executives made were false or misleading in the following ways. Contrary its executives' representations, the FTC asserts that Celsius routinely made unsecured loans, totaling $1.2 billion as of April 2022, maintained only a small capital reserve that would have allowed only a fraction of its customers to withdraw their crypto within one week, and did not hold a $750 million insurance policy for deposits as advertised.

Celsius and its executives also failed to deliver the annual percentage yield ("APY") they promised on consumers' cryptocurrency deposits. The complaint asserts that during the period that Celsius advertised APY up to 17% or more, less than 1% of Celsius customers earned rewards of 17%. The highest promised APYs were available only to customers who were enrolled in Celsius' "CEL Loyalty Program."

The FTC further alleges that Celsius took title to and transferred consumer cryptocurrency deposits into Celsius' pooled account. The company then used consumer deposits to fund its operations, pay rewards to other customers, and to stake or pledge collateral from other institutions.

Mashinsky, Leon, and Goldstein each withdrew significant sums of cryptocurrency from Celsius in April and May 2022. By May 2022, the FTC asserts that Celsius was insolvent. The company's top executives concealed this information from the

4

public, telling consumers that customers' deposits were safe and soliciting new customers.

On June 12, 2022, Celsius froze consumer accounts and denied consumers access to their assets. Celsius filed for bankruptcy on July 13. Most consumers have yet to regain access to their cryptocurrency.

The FTC filed this action on July 13, 2023, bringing claims against Celsius, its related corporate entities, and the three individual defendants.[2] The corporate defendants have resolved this action. On September 11, defendants Mashinsky and Goldstein moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. On October 11, Leon moved to dismiss the complaint. The motions became fully submitted on November 8. This Opinion addresses the three motions to dismiss.

## Discussion

The FTC brings three claims against the individual defendants -- two for deception and unfair misappropriation of cryptocurrency deposits under § 5(a) of the FTC Act, and the third for a violation of the GLB Act. The defendants have moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] Also on July 13, Indictment 23cr347 (JGK) (S.D.N.Y.) was unsealed, bringing criminal charges against Mashinsky and a fourth Celsius employee.

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Hamilton v. Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted).

I. Violations of the FTC Act

The defendants move to dismiss the claims for violation of the FTC Act on the ground that (1) the FTC has not plausibly alleged individual liability and (2) the FTC has failed to show a basis for injunctive relief. The defendants' arguments fail.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). To show a deceptive act or practice, the FTC must allege: "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." F.T.C. v. LeadClick Media, LLC, 838 F.3d 158, 168 (2d Cir. 2016) (citation omitted). "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." F.T.C. v. Moses, 913 F.3d 297, 306 (2d Cir. 2019) (citation omitted). Section 5(n) further states that a practice is unfair when it "causes or is likely to cause substantial injury to consumers [that] is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

Individuals may be held liable for unfair or deceptive acts and practices when they "participated directly in the practices or acts or had authority to control them" and "had or should have had knowledge or awareness" of the misconduct. Moses, 913 F.3d at 307 (citation omitted). "Authority to control the company can be evidenced by active involvement in business

affairs and the making of corporate policy, including assuming the duties of a corporate officer." Id. (citation omitted).

### A. Pleading Standard

As an initial matter, the parties disagree as to whether claims under § 5 of the FTC Act are subject to Federal Rule of Civil Procedure 8(a)'s liberal pleading standard or the heightened pleading standard of Rule 9(b). Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). By contrast, Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 8(a) applies.

A § 5 claim is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b). By its terms, Rule 9(b) applies to "all averments of fraud." Fed. R. Civ. P. 9(b). The Second Circuit has not directly addressed this issue. Its decision in Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005), however, is instructive. There, the court considered whether claims brought under § 349 of the New York General Business Law -- part of the New York Consumer

Protection Act -- are subject to Rule 9(b).[3]  The Second Circuit found that

> because § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b).

Id. at 511 (citation omitted).

Likewise, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation.  Moses, 913 F.3d at 306.  Courts in this district have thus consistently held that the FTC need only meet the bare-bones pleading requirements of Rule 8(a), Fed. R. Civ. P.  See, e.g., F.T.C. v. Tax Club, Inc., 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014); F.T.C. v. Consumer Health Benefits Ass'n, 10cv3551 (ILG) (RLM), 2012 WL 1890242, at *6-7 (E.D.N.Y. 2012); F.T.C. v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 314-15 (S.D.N.Y. 2008).

The defendants cite two cases from this circuit in support of their argument.[4]  Neither is applicable here.  In Utts v.

---

[3] Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

[4] The defendants also cite several cases from district courts in the Ninth Circuit.  Those decisions are not persuasive on the issues at stake here.

9

Bristol-Myers Squibb Co., 226 F. Supp. 3d 166 (S.D.N.Y. 2016), the parties "agree[d] that the plaintiffs' fraud, negligent misrepresentation, and fraudulent concealment claims [under California law] all sound in fraud and are therefore subject to the heightened pleading standards of Rule 9(b)." Id. at 189. Similarly, in Hughes v. Ester C Co., 930 F. Supp. 2d 439 (E.D.N.Y. 2013), the court applied Rule 9(b) to the plaintiffs' New York common law claims of intentional and negligent misrepresentation. While the Second Circuit has not determined whether claims for misrepresentation are subject to the heightened pleading standard under Rule 9(b), district courts in this circuit have tended to hold that the rule does apply to misrepresentation claims. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004).

B.   Application

The complaint alleges sufficient factual content to support individual liability for the FTC Act violations against both Leon and Goldstein.[5]  The complaint adequately alleges that Leon and Goldstein each had the "authority to control" and "had or should have had knowledge or awareness" of the misconduct. Moses, 913 F.3d at 306-07.

---

[5] Mashinsky does not dispute that the FTC has sufficiently alleged his individual liability for the FTC Act violations.

10

Leon is alleged to be a co-founder of the company and an executive officer of multiple Celsius entities. He served as President for one of the entities, and director of six Celsius entities. Leon is also alleged to have served on numerous committees relevant to the misconduct alleged in the complaint, including the Assets and Liabilities Committee, Risk Committee, and Investment Committee. Goldstein is also alleged to have served as the company's Chief Technology Officer and sat on both the Executive Committee and Risk Committee. Moreover, Goldstein appeared in Celsius' marketing videos, one of the primary vehicles for Celsius' alleged deceptive practices.

The complaint also alleges "some knowledge" on the part of both Leon and Goldstein. LeadClick Media, 838 F.3d at 169. The FTC asserts that Leon was involved in and oversaw the crafting of advertisements about Celsius' products and services, and participated in the decision to freeze withdrawals, swaps, and transfers from the Celsius platform. Goldstein is alleged to have direct knowledge that several of Celsius' statements were misleading. He also participated in marketing videos and was highly involved in business affairs. Accepting these allegations as true, the complaint adequately pleads that Leon and Goldstein were aware of Celsius' misconduct or, at the very least, were recklessly indifferent to the truth or falsity of its representations. Accordingly, the defendants' motions to

dismiss the FTC Act claims with respect to the individual defendants are denied.

C.   Injunctive Relief

Defendants next assert that the FTC has inadequately pled its request for injunctive relief under § 13(b) of the FTC Act. This argument fails.

Section 13(b) of the FTC Act authorizes the FTC to pursue permanent injunctive relief in federal court only "in proper cases . . . and after proper proof." 15 U.S.C. § 53(b). To plead entitlement to a permanent injunction, the FTC must plead that each of the defendants "is violating" or "is about to violate" the law.  Id. § 53(b)(1)-(2).

A permanent injunction is appropriate where a plaintiff shows that

> there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) (Clayton Act).  To assess the likelihood of recurrence, courts consider:

> the fact that defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his

professional occupation, the defendant might be in a
position where future violations could be anticipated.

Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 100 (2d Cir. 1978) (citation omitted).

The facts alleged here are sufficient to plead entitlement to injunctive relief. The complaint details a years' long effort of the defendants to entice consumers to transfer cryptocurrency assets onto their platform. As alleged, defendants failed to maintain sufficient reserves to meet customer obligations, misappropriated consumer funds, and concealed the company's financial trouble from the public while withdrawing their own funds from the platform. The complaint thus alleges egregious conduct and serious harm to consumers. Moreover, each of the defendants continue to deny their role in the misconduct and maintain the means, ability, and incentive to resume their unlawful conduct. The FTC has adequately pled its request for injunctive relief.

II. Violations of the GLB Act

The GLB Act makes it unlawful, in part, "for any person to obtain or attempt to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C. § 6821(a). "Customer" is statutorily defined as "any person (or authorized

13

representative of a person) to whom the financial institution provides a product or service, including that of acting as fiduciary." 15 U.S.C. § 6827(1). "Customer information of a financial institution" is defined as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer." 15 U.S.C. § 6827(2).

  A. Failure to State a Claim

  The complaint alleges that the defendants violated this provision of law by making false representations about Celsius' financial services offerings -- including that Celsius earned profits at no risk to consumers and maintained "billions of dollars in liquidity" -- in order to obtain customers' bank account and cryptocurrency wallet information. Defendants assert that the FTC has not adequately alleged individual liability for these actions.

  As the Honorable Jed S. Rakoff recently opined in RCG Advances, the "same individual liability standard that applies under Section 5 of the FTC Act" applies to an inquiry into individual liability for individual violations of the GLB Act. F.T.C. v. RCG Advances, LLC, 20cv4432 (JSR), 2023 WL 6281138, at *10 (S.D.N.Y. Sept. 27, 2023). Thus, for the same reasons as those discussed above, the FTC has adequately alleged that the

14

individual defendants had both the "authority to control" and "knowledge or awareness" of the alleged GLB Act violation. Moses, 913 F.3d at 306-07.

B. Compensatory Damages

Finally, the defendants dispute whether the FTC has the statutory authority to seek monetary relief for violations of the GLB Act. Relying on unambiguous statutory language, Judge Rakoff recently addressed this question and held that the FTC has the statutory authority to seek monetary relief for violations of the GLB Act. RCG Advances, 2023 WL 6281138, at *10. This Court adopts the reasoning in RCG Advances.

## Conclusion

The defendants' September 11 and October 11, 2023 motions to dismiss are denied.

Dated: New York, New York
December 12, 2023

_____
DENISE COTE
United States District Judge