```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
Federal Trade Commission,                :
                    Plaintiff,           :
                                         :   23v6009 (DLC)
            -v-                          :
                                         :   OPINION AND
Celsius Network Inc., et al,             :      ORDER
                    Defendants.          :
                                         :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Katherine Worthman
Stephanie Elizabeth Liebner
Katherine Marie Aizpuru
Federal Trade Commission
600 Pennsylvania Avenue, NY
Washington, DC 20580

For defendant Shlomi Daniel Leon:
Allison Michele Wuertz
William Michael Regan
Maya S. Jumper
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017

For defendant Hanoch "Nuke" Goldstein:
Avi Weitzman
Joshua Evan Kahane
Rita A Fishman
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Leo Rin Tsao
Paul Hastings LLP
2050 M Street, N.W.
Washington, DC 20036

DENISE COTE, District Judge:

The Federal Trade Commission seeks to strike all affirmative defenses from the answers of two defendants, Hanoch "Nuke" Goldstein and Shlomi Daniel Leon. For the following reasons, the motion is granted in part.

## Background

This action arises out of alleged violations of § 5 of the Federal Trade Commission Act ("FTC Act") and § 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6821 et seq. in connection with the defendants' marketing and sale of cryptocurrency lending and custody services. Defendant Celsius Network LLC ("Celsius") was a cryptocurrency financial services provider. The three individual defendants, Alexander Mashinsky, Shlomi Daniel Leon, and Hanoch Goldstein, were officers of Celsius. The Federal Trade Commission ("FTC") alleges that the company and its top executives deceived users by misrepresenting the benefits of using Celsius services and the safety of consumer funds and that they misappropriated consumers' cryptocurrency deposits.

The FTC filed this action on July 13, 2023, bringing claims against Celsius, its related corporate entities, and the three individual defendants. The corporate defendants have resolved this action through a stipulated order for permanent injunction,

a monetary judgment in the amount of $4,720,000,000, and other relief.

The individual defendants moved to dismiss the FTC's claims against them, arguing <u>inter alia</u> that the complaint failed to plead individual liability or a basis for injunctive relief and that the FTC did not have the statutory authority to seek monetary relief for violations of the GLB Act.  Those motions were denied.  <u>F.T.C. v. Celsius Network Inc.</u>, No. 23CV6009 (DLC), 2023 WL 8603064 (S.D.N.Y. Dec. 12, 2023) (the "Motion to Dismiss Opinion").  On January 9, 2024, discovery in this action was stayed through November 1, 2024, due to a parallel criminal action against Mashinsky and another Celsius employee that is pending in the Southern District of New York.

Mashinsky filed his answer on January 22, 2024.  On January 26, Leon and Goldstein filed their Answers.  Mashinsky did not assert any affirmative defenses and instead asserted his Fifth Amendment right against self-incrimination.  Leon asserted fifteen affirmative defenses (the "Leon Defenses"), while Goldstein asserted eleven (the "Goldstein Defenses").  On February 16, 2024, the FTC moved to strike each of Leon and

Goldstein's affirmative defenses.  The motion to strike became fully submitted on March 8.

## Discussion

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8. "An affirmative defense is a defense that will defeat the plaintiff's claim, even if all allegations in the complaint are true, rather than an attack on the truth of the allegations, or a rebuttal of a necessary element of the claim."  <u>Utica Mut. Ins. Co. V. Munich Reins. Am. Inc.</u>, 7 F.4th 50, 63 (2d Cir. 2021) (citation omitted).  A core purpose of the pleading requirement is "to place the opposing parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice."  <u>Saks v. Franklin Covey Co.</u>, 316 F.3d 337, 350 (2d Cir. 2003).

A court may strike from a pleading "any insufficient defense."  <u>GEOMC Co., Ltd. v. Calmare Therapeutics Inc.</u>, 918 F.3d 92, 95 (2d Cir. 2019) (citing Fed. R. Civ. P. 12(f)).  A motion to strike an affirmative defense for legal insufficiency, however, is "not favored."  <u>William Z. Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp.</u>, 744 F.2d 935, 939 (2d Cir. 1985), <u>vacated on other grounds</u>, 478 U.S. 1015 (1986).  This is particularly true when it would require a determination of

4

issues more properly "determinable only after discovery and a hearing on the merits." Id. (citation omitted). A motion to strike an affirmative defense will therefore "not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." Id. (citation omitted).

There is no dispute that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." GEOMC, 918 F.3d at 98. Where the defense is insufficient as a matter of law, "the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." F.T.C. v. Vyera Pharmaceuticals, LLC, No. 20CV706 (DLC), 2020 WL 7695828, at *2 (S.D.N.Y. Dec. 28, 2020) (citation omitted). To succeed on a motion to strike an affirmative defense, the movant must show that: (1) applying the plausibility standard from Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and considering the relevant context, "there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." GEOMC, 918 F.3d at 96 (citation omitted).

In their oppositions to the motion to strike, Leon and Goldstein consented to withdraw several of their affirmative defenses. Leon consented to withdraw his defense that the FTC's claims are barred "by the doctrine of unclean hands"; that the FTC's claims are barred because the customers' alleged damages were proximately caused "by persons and/or entities that are neither agents nor employees of Leon"; and that Leon is immune from liability "pursuant to Section 230(c) of the Communication Decency Act." Goldstein consented to withdraw his defense that any damages sustained by consumers "resulted from the acts or omissions of others and were not proximately caused by the actions of Mr. Goldstein." Although the FTC has moved to strike every one of the remaining affirmative defenses asserted by Leon and Goldstein, it is only necessary to discuss at this stage of the litigation those defenses that may impact the scope of discovery and thus may prejudice the plaintiff and impose unnecessary burdens on all the parties. Using that standard, this Opinion will discuss five of the remaining affirmative defenses.

I.   Intervening Causes:  Leon Defenses 7 and 11

Leon Defense 7 states that the FTC's claims are barred, in whole or in part, because any injuries suffered by the customers were caused "by the conduct of third parties for whom Leon was not responsible, through forces of the marketplace over which

Leon has no control, or through acts or omissions on the part of the customers." Leon Defense 11 states that, in the event that customers sustained damages, the FTC's claims are barred in whole or in part "by the misuse, abuse, modification, alteration, acts, or omissions of individuals, third parties, or intervening parties." As noted, Goldstein has consented to the dismissal of a similar affirmative defense.

These two Leon Defenses are nothing more than denials of liability. The assertion that there was an intervening cause that is responsible for an injury or violation is a challenge to "an integral part" of the causation element of a plaintiff's damages claim. Utica Mut. Ins. Co, 7 F.4th at 63. Thus, it is "no affirmative defense to assert that an intervening cause broke the chain of causation;" rather, such a defense merely asserts "that the plaintiff cannot prove a necessary element of its claim." Id. (citation omitted). Furthermore, these defenses "introduce vague allegations regarding the actions of unnamed third parties, raising concerns of both legal sufficiency and prejudice." GEOMC, 918 F.3d at 99 (citation omitted). Litigating these defenses threatens to expand the scope of discovery and introduce unnecessary delay, expense and burden for the parties.

7

Leon does not make any developed argument to support retention of these affirmative defenses. Thus, Leon Defenses 7 and 11 are stricken.

II.  Consumer Authorization:  Leon Defense 3

Leon Defense 3 asserts that "the consumer transactions alleged in the Complaint were authorized." The FTC argues that a defense of consumer authorization, while recognized in private actions, is unavailable in government consumer protection actions and that the defense is in any event inapplicable to the claims it brings in this particular action.

The FTC is not required to prove that the transactions alleged in the complaint were not "authorized" by consumers. The FTC Act prohibits both unfair and deceptive acts or practices. 15 U.S.C. § 45(a). The FTC's first claim asserts that the defendants made five false representations. To succeed on that claim under the FTC Act, it must demonstrate "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." F.T.C v. LeadClick Media, LLC, 838 F.3d 158, 168 (2d Cir. 2016) (citation omitted).

The second claim brought by the FTC asserts that the defendants engaged in unfair practices by misappropriating consumers' cryptocurrency deposits. An unfair practice is

defined in § 5(n) as one that causes or is "likely to cause substantial injury to consumers [that] is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Id. (citing 15 U.S.C. § 45(n)).

The third and final claim brought by the FTC is for a violation of § 521 of the GLB Act. In that claim the FTC asserts that the defendants falsely represented, inter alia, that consumers retained ownership of their cryptocurrency deposits and could withdraw their cryptocurrency at any time. To succeed on this claim, the FTC must show that the defendants obtained or attempted to obtain "customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C. § 6821(a).

Therefore, the issue in this litigation is not whether consumers authorized transactions, but whether authorization was obtained through representations that were misleading or false and whether the defendants wrongfully appropriated consumers' funds after those funds were left in the defendants' custody. Authorization, of course, when "secured by deception," is not an applicable defense. Exposition Press, Inc. v. FTC, 295 F.2d 869, 873 (2d Cir. 1961) (discussing violations of the FTC Act).

Leon does not suggest that a consumer's authorization is relevant to the FTC's first claim. He does argue, however, that it is relevant to its second and third claims. He points out that, in connection with an unfair practice claim, the FTC must show that the practice was one which "is not reasonably avoidable by consumers." 15 U.S.C. § 45(n). As a consequence, he argues that it is relevant to explore whether consumers "had a free and informed choice" and whether consumers were "reasonably capable of mitigating injury" after the fact. See F.T.C. v. RCG Advances, No. 20CV4432 (JSR), 2023 WL 6281138, at *7 (S.D.N.Y. Sept. 27, 2023). But a defense that the transactions were "authorized" is not a defense to Celsius' alleged misappropriation of deposited funds. If the authorized transaction to which Leon is pointing is the act of depositing cryptocurrency with Celsius, that authorization is not a defense to misappropriation of funds following the deposit. If the authorized transaction to which he is referring is Celsius' alleged wrongful transfer of deposited funds, then this defense is nothing more than an assertion that the FTC cannot carry its burden of proving the misappropriation. This same analysis applies to the GLB Act claim. In either event, the defense must be stricken as inadequately pleaded and as prejudicial.

Next, Leon argues that the affirmative defense of customer authorization is relevant to the calculation of damages. Leon explains that he will have an opportunity to contest the FTC's reasonable estimate of consumer damages by showing that the FTC's estimate is inaccurate or unreasonable. See F.T.C. v. Braun, No. 20CV4432(JSR), 2023 WL 6281138, at *11.

It is difficult to see how customer authorization will be relevant to the calculation of damages. In any event, an affirmative defense is not a vehicle for describing evidence that may be relevant to requested relief. Thus, the opportunity to be heard on the amount of damages does not render Leon's assertion of customer authorization an affirmative defense. Therefore, Leon Defense 3 is stricken.

   III. Industry Standard:  Leon Defense 8

Leon Defense 8 states that the FTC's "claims are barred, in whole or in part", because Leon "acted reasonably and within applicable industry standards." The FTC argues that dismissal is warranted because none of the claims requires proof on an intent to deceive and because compliance with an industry standard is not a defense to any of the claims.

This defense must be stricken. The FTC is correct that it need not prove that Leon acted with an intent to deceive in order to prevail on its claims, and Leon does not contend otherwise. Nor has Leon explained how compliance with an

11

industry standard is relevant, much less a defense, to claims of misrepresentation and misappropriation. Because this defense is not adequately pleaded, is irrelevant, and would impose unnecessary burdens on the parties to pursue, Leon Defense 8 is stricken.

VI. Good Faith: Goldstein Defense 10

Goldstein Defense 10 states that the FTC's claims are barred because Goldstein "acted in good faith." The FTC argues that there is no good faith defense to claims for violations of § 5 of the FTC Act or of § 521 of the GLB Act because neither statute requires proof of intent to deceive.

The FTC is correct that it need not prove a defendant's wrongful intent in order to prevail on its claims. In opposition to this motion to strike, Goldstein does not argue that his intent, whether innocent or not, provides a defense to any of the three claims. Instead, he argues that his good faith is relevant to the issuance of injunctive relief.

As already explained, the pleading of affirmative defenses is not the occasion for an attack on the truth of the allegations in the complaint, a rebuttal of a necessary element of a claim, or the description of evidence relevant to requested relief. Should Goldstein be found liable for engaging in misrepresentations and/or misappropriation, the degree of his

12

scienter may indeed be relevant to the scope of any injunction. See Sec. & Ech. Comm'n v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 100 (2d Cir. 1978) (factors to assess in weighing injunctive relief). But that relevance does not convert his purported good faith into an affirmative defense. Accordingly, Goldstein Defense 10 is stricken.

### Conclusion

The plaintiff's February 16, 2024 motion to strike is granted in part. Goldstein Defenses 9 and 10 are stricken from his Answer. Leon Defenses 3, 5, 6, 7, 8, 10, and 11 are stricken from his Answer.

Dated: New York, New York
April 12, 2024

_____
DENISE COTE
United States District Judge